UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-60312-CIV-SINGHAL

DVASH AVIATION HOLDINGS, LLC,

    Plaintiff,

v.

AMP LEASING LIMITED, and
SIDERAL LINHAS AEREAS LTDA,

    Defendants.
_____/

### SIDERAL LINHAS AEREAS LTDA.'S MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, AND TO QUASH SERVICE OF PROCESS AND INCORPORATED MEMORANDUM OF LAW

Defendant Sideral Linhas Aereas Ltda. ("Sideral"), by and through its undersigned counsel who makes a special appearance in this matter for purposes of contesting personal jurisdiction and service of process, files this motion to (1) dismiss the Complaint [DE 1] filed by the Plaintiff Dvash Aviation Holdings, LLC ("Plaintiff" or "Dvash") (a) pursuant to Fed. R. Civ. P. 12(b)(2) based on a lack of personal jurisdiction over Sideral, and (b) pursuant to Fed. R. Civ. P. 12(b)(6) based on the failure to state a claim against Sideral and (2) quash service of process upon Sideral pursuant to Fed. R. Civ. P. 12(b)(4) and (5) (the "Motion"). For the reasons set forth below and the accompanying Affidavit of Christian Pegoraro, which is being submitted herewith solely for the purposes of the special appearance in connection with this Motion and without waiver of any objections to service of process and/or jurisdiction, the Motion should be granted.

### PRELIMINARY STATEMENT

The Complaint relates to a dispute between the Defendant AMP Leasing Limited ("AMP") and Dvash over the $408,016.00 initial payment (the "Initial Payment") made by in connection

with an Engine Lease-Purchase Agreement (the "Lease-Purchase Agreement"), entered into between AMP and Dvash, relating to a CFM56-3C-1 aircraft engine bearing serial number 721509 (the "CFM Engine").[1] Dvash acknowledges that $951,984.00 of the $1.36 million purchase price was paid by AMP to Dvash (Complaint, at ¶¶ 15, 25), but alleges that the Initial Payment of $408,016.00, was improperly sent by AMP to Savanna Leasing LLC ("Savannah") instead of Dvash, and thereafter Savanna absconded with the money. Complaint, at ¶¶ 2-3, 18.

However, Dvash and AMP are the only parties to the Lease-Purchase Agreement (Complaint, at ¶ 15) and although Dvash alleges that the Lease-Purchase Agreement was "for the benefit of AMP's parent, Sideral", as shown below, Sideral is not the parent of AMP. Moreover, the Lease-Purchase Agreement specifically acknowledged that AMP accepted the CFM Engine "to be subleased by Sideral Linhas Aereas Ltda., a Brazilian Certified 121 Airline." [CITE] (emphasis added). Sideral was not a party to the original Lease-Purchase Agreement and not subject to personal jurisdiction in the State of Florida. Any sublease would be between AMP (an Irish entity) (Complaint, at ¶ 7) and Sideral (a Brazilian entity) (*id.*, at ¶ 8), neither company having a presence in Florida.

Dvash has not alleged in the Complaint, nor can it establish, either specific or general personal jurisdiction over Sideral regarding the claims asserted and therefore the Complaint should be dismissed as to Sideral. Moreover, the purported service of process on Sideral by way of the Florida Secretary of State is defective for the same reasons that Sideral is not subject to personal jurisdiction in the State of Florida.

---

[1] Co-defendant AMP is filing an Answer and Affirmative Defenses to the claims contained in the Complaint.

**FACTUAL BACKGROUND**

**I.     ALLEGATIONS IN THE COMPLAINT ABOUT SIDERAL**

The Complaint [DE 1] alleges that Sideral is the parent company of AMP, the sole beneficiary of the business conducted by AMP, and an entity existing pursuant to the laws of Federative Republic of Brazil, with its principal place of business in São José dos Pinhais, Brazil. Complaint, at ¶ 8.  Sideral is not registered to conduct business in the United States. *Id.* ¶ 9.  It does not maintain a registered agent in any state of the union. *Id.*  The Complaint also alleges that Sideral regularly conducts business in the United States by "acquiring aircraft parts – in Florida on many occasions." *Id.* ¶ 10.

The Complaint alleges that Dvash owns the CFM Engine and in or about January 2020 "Dvash and AMP entered into [an] Agreement, whereby Dvash agreed to lease and sell the [CFM] Engine to AMP, for the benefit of AMP's parent, Sideral, in exchange for, *inter alia*, (i) AMP making the Initial Payment at closing; and (ii) AMP thereafter making eighteen (18) equal monthly payments of $52,888.00 to Dvash." Complaint, at ¶ 15.

It is alleged that the Agreement provided for payments to be made "by wire transfer to Lessor's bank account" and that such wire information was set forth in the body of the Agreement. *Id.* ¶ 16.  The Complaint alleges that despite this wire information, the Initial Payment was tendered to Savannah, an entity which is not an affiliate of Dvash. *Id.* ¶¶ 18-19.

The Complaint alleges that "[w]hile Dvash did formerly utilize the services of persons believed to be affiliated with Savannah Leasing, the Agreement is express that neither party thereto owes any brokerage commission." *Id.* ¶ 22.  Moreover, "[u]pon information and belief, Savannah Leasing converted the Initial Payment and has expended the monies in connection with other, unrelated purposes." *Id.* ¶ 24.

3

Dvash made a demand upon AMP for the Initial Payment, but AMP stated that it "does not believe it was obligated to tender the monies directly to Dvash" and "provided evidence of the payment instead being made to Savanna Leasing." *Id.* ¶¶ 26-27.

Count I of the Complaint asserts a breach of contract claim against AMP. *Id.* ¶¶ 29-34. Count II of the Complaint asserts a breach of contract claim against Sideral (*id.* ¶¶ 35-39) based upon the allegation that "Sideral is the parent company of AMP" and that it "is expressly identified in the Agreement, multiple times, including as the entity to which the Engine is 'to be subleased.'" Complaint, at ¶ 36; Complaint Exh. A, at § 8.1.  In the alternative, to its breach of contract claim against AMP (Count I), Dvash asserts an unjust enrichment claim against Sideral (Complaint, at Count III).

## II.   FACTS REGARDING THE BUSINESS OF SIDERAL IN BRAZIL

Sideral is a company incorporated in Brazil with its principal place of business located in São José dos Pinhais-PR, BRASIL (Affidavit of Christian Pegoraro ("Pegoraro Aff."), at ¶ 3). Sideral is independently owned and is not the parent company of AMP, an Irish company (*Id.* ¶¶ 4-5). Sideral primarily is in the air cargo business, however the business now includes passenger transportation as well (*Id.* ¶ 6.)  Sideral operates out of fourteen (14) airports, all located in Brazil (*Id.* ¶ 7). Sideral does not have any office, mailing address, or telephone number in Florida (*Id.* ¶ 8).  All of Sideral's business is transacted out of Brazil (*Id.* ¶ 9).  Sideral does not own, lease, or otherwise occupy any real property in Florida.  (*Id.* ¶ 10.). Sideral does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida.  (*Id.* ¶ 11). Sideral has not contracted to insure any person, property, or risk located in Florida.  (*Id.* ¶ 12). Sideral does not own, use, possess, or hold a mortgage or other lien on any

real property located in Florida. (*Id.* ¶ 13).

Sideral has not engaged in substantial or significant solicitation or services within Florida. (*Id.* ¶ 14). Sideral has not entered into any contract to be performed in Florida. (*Id.* ¶ 15). Sideral does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida. (*Id.* ¶ 16). Sideral has not engaged in substantial and not isolated activity within Florida, either interstate or intrastate. (*Id.* ¶ 17). In the course of its business Sideral purchases parts from sellers in many countries, including the United States. On many occasions, Sideral purchase spart from companies located in Florida, but all such parts are then delivered for use in Brazil (*Id.* ¶ 18). Sideral has never sold any products or performed any of its services in the State of Florida. (*Id.* ¶ 19).

Sideral has entered agreements which were governed by the laws of the State of Florida and selected Florida as the location for any lawsuit arising from such agreements, but those agreements neither required performance in Florida, nor resulted in any dispute (*Id*. ¶ 20).

Sideral has not entered into any contract with Dvash in which it agreed to submit to the jurisdiction of the courts of Florida. (*Id.* ¶ 21).

Although Sideral received approval from the United States Department of Transportation regarding potential future flights into the United States (not specifically Florida), it has not received the other required permission from the Federal Aviation Administration ("FAA"), Transportation Safety Administration ("TSA"), and Customs and Border Protection ("CBP"), necessary to fly into the United States. (*Id.* ¶ 22). To date, Sideral has not made any flights into the United States. (*Id.* ¶ 23).

For the reasons set forth below, the Motion should be granted.

**MEMORANDUM OF LAW**

**I.     THE STANDARD FOR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(2)**

"To establish personal jurisdiction over a nonresident defendant, a plaintiff 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Catalyst Pharmaceuticals, Inc. v. Fullerton,* 748 Fed. Appx. 944, 946 (11th Cir. 2018) (citations omitted); *see also Guarini v. Doe*, 634 F. Supp. 3d 1100, 1103 (S.D. Fla. 2022) (same); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) ("[i]nitially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts."). "The Eleventh Circuit has described the standard for satisfying the prima facie case is the presentation of 'enough evidence to withstand a motion for directed verdict.'" *Guarini*, 634 F. Supp. 3d at 1103 (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)).

"When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Guarini*, 634 F. Supp. 3d at 1103 (citation omitted). The plaintiff, in order to justify the exercise of jurisdiction, must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citations omitted); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (finding that once the burden shifts back, a plaintiff must substantiate jurisdictional allegations with affidavits, testimony, or other evidence).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state

6

long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) (citation omitted). "The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984) (citation omitted). "Only if both prongs of the analysis are satisfied can a federal or state court exercise personal jurisdiction over a non-resident defendant." *Madara,* 916 F.2d at 1514.

The Plaintiff fails to satisfy either prong in this case.

## II. THIS COURT LACKS GENERAL PERSONAL JURISDICTION OVER SIDERAL

### A. <u>Standard to Assert General Personal Jurisdiction over a Defendant</u>

While not setting forth a particular Florida long-arm statute, the Complaint alleges that "[u]pon information and belief, both Defendants regularly conduct business in the United States, with AMP leasing and purchasing engines – and Sideral acquiring aircraft parts – in Florida on many occasions." Complaint, at ¶ 10. There does not appear to be any other jurisdictional allegation with respect to Sideral, although as to AMP the Complaint alleges that "the contract underling this case – to which AMP is a party – was to be performed in Florida." *Id.* ¶ 11.

General long-arm personal jurisdiction in Florida is governed by Fla. Stat. 48.193(2), which states as follows:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

*Id.* To satisfy the "substantial and not isolated activity within this state" portion of this standard, "the trial court must consider 'whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and

substantial justice.'" *Piazenko v. Pier Marine Interiors GmbH*, 314 So. 3d 438, 444-45 (Fla. 3d DCA 2020) (quoting *Venetian* Salami, 554 So. 2d at 502).

In addition, the enacting of a statute by the legislature may have "determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned" however "[i]t has not specifically addressed whether the federal constitutional requirements of minimum contacts have been met." *Venetian Salami*, 554 So. 2d at 500. "As a practical matter, it could not do so because each case will depend upon the facts." *Id.*

"Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." *Piazenko*, 314 S. 3d at 445 (quoting *Venetian* Salami, 554 So. 2d at 502); *see also Travel Ins. Facilities, PLC v. Naples Community Hosp., Inc.*, 367 So. 3d 611, 616-17 (Fla. 6th DCA 2023) (no finding of purposeful availment).

In *Daimler AG v. Bauman*, the United States Supreme Court concluded that, in regard to a corporation, the "paradigm bases for general jurisdiction" are its "place of incorporation and principal place of business." 571 U.S. 117, 137 (2014) (citation and quotation marks omitted). The Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping." *Id.* at 138. The Supreme Court stated it will be an "exceptional case" where a corporation's operations in a state other than its formal place of incorporation or principal place of business render it "at home" in that state; that exceptional case occurs only where the defendant's operations are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

### B.     Sideral Is Not "At Home" in Florida

There is no factual basis for Dvash to claim that Sideral is "at home" in Florida.

Sideral is a company incorporated in Brazil with its principal place of business located in São José dos Pinhais-PR, BRASIL (Pegoraro Aff., at ¶ 3). Sideral operates out of fourteen (14) airports, all located in Brazil (*Id.* ¶ 7). Sideral does not have any office, mailing address, or telephone number in Florida (*Id.* ¶ 8). All of Sideral's business is transacted out of Brazil (*Id.* ¶ 9). Sideral does not own, lease, or otherwise occupy any real property in Florida. (*Id.* ¶ 10.). Sideral does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida. (*Id*. ¶ 11). Sideral has not contracted to insure any person, property, or risk located in Florida. (*Id.* ¶ 12). Sideral does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida. (*Id.* ¶ 13).

Sideral has not engaged in substantial or significant solicitation or services within Florida. (*Id.* ¶ 14). Sideral has not entered into any contract to be performed in Florida. (*Id.* ¶ 15). Sideral does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida. (*Id.* ¶ 16). Sideral has not engaged in substantial and not isolated activity within Florida, either interstate or intrastate. (*Id.* ¶ 17). In the course of its business Sideral purchases parts from sellers in many countries, including the United States. On many occasions, Sideral purchase spart from companies located in Florida, but all such parts are then delivered for use in Brazil (*Id.* ¶ 18). Sideral has never sold any products or performed any of its services in the State of Florida. (*Id.* ¶ 19).

Although Sideral received approval from the United States Department of Transportation regarding potential future flights into the United States (not specifically Florida), it has not received the other required permission from the FAA, TSA, and CBP, necessary to fly into the

United States. (*Id.* ¶ 22). To date, Sideral has not made any flights into the United States. (*Id.* ¶ 23).

These undisputed facts make it clear that sufficient minimum contacts do not exist between Sideral and Florida and it would not be foreseeable that this conduct by Sideral will result in Sideral being subject to personal jurisdiction in Florida. Sideral did not purposefully avail itself of the privileges and protections of the State of Florida. *Piazenko*, 314 S. 3d at 445 (quoting *Venetian Salami*, 554 So. 2d at 502); *see also Travel Ins. Facilities, PLC*, 367 So. 3d at 617 (no purposeful availment of conducting activities in Florida because defendant had no offices, employees, or property in Florida).

As to the allegation in the Complaint that Sideral acquires aircraft parts in Florida on many occasions (Complaint, at ¶ 11), ordering goods from a Florida corporation is insufficient to subject Sideral to personal jurisdiction in Florida. *See Alan Richard Textiles, Ltd. V. Vertilux, Inc.,* 627 So. 2d 529, 530 (Fla. 3d DCA 1993) ("fact that Alan Richard ordered goods from a Florida corporation is not sufficient to establish minimum contacts with Florida so as to allow Alan Richard to be sued in Florida"). "[P]urchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those transactions." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 418.

Dvash fails to set forth a *prima facie* case of general jurisdiction over Sideral in Florida. Because Sideral is not "at home" in Florida, and because this is not an exceptional case, this Court lacks general personal jurisdiction over Sideral.

### III. THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER SIDERAL

#### A. Standard to Assert Specific Personal Jurisdiction over a Defendant

"A Florida court may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida." *Piazenko*, 314 So. 3d at 443. "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida.'" *Id.* (citations omitted).

The Complaint is does not specifically reference a specific jurisdiction long-arm statute.

Specific long-arm jurisdiction in Florida is governed by Fla. Stat. 48.193(1)(a):

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself…to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> * * *
>
> 9. Entering into a contract that complies with § 685.102.

Fla. Stat. § 48.193(1)(a). "The long-arm statute must be strictly construed; therefore, any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists. *See, e.g., Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014) (citation omitted).

#### B. The Complaint Fails to Satisfy The Requirements for Specific Jurisdiction in Florida

As to Fla. Stat. § 48.193(1)(a)(1), Sideral is not engaging in any business venture in Florida

11

and does not have any office in Florida (Pegoraro Aff., at ¶¶ 10-17, 19-20). All of Sideral's business is transacted out of Brazil (*Id.* ¶¶ 3, 7, 9, 18-20, 22-23).

It is settled law that specific jurisdiction requires allegations that the defendant did one of the enumerated actions within Florida <u>and</u> that the plaintiff's cause of action arises from such actions – which is "known as the statute's connexity requirement." *Piazenko*, 314 So. 3d at 443-44. The undisputed facts make it clear that Dvash failed to satisfy the requirements of Fla. Stat. § 48.193(1)(a)(1). Dvash failed to demonstrate a connection between any such business venture or office/agency of Sideral in Florida and the claim asserted by Dvash regarding the failure of AMP to have made the Initial Payment to Dvash.

As to Fla. Stat. § 48.193(1)(a)(9), the Complaint does not take the position that Sideral is the party that entered into the Lease-Purchase Agreement with Dvash in which it "agree[d] to submit to the jurisdiction of the courts of this state." Fla. Stat. § 605.102(1).

The Lease-Purchase Agreement was entered between Dvash and AMP and it stated that it was governed by the laws of the State of Florida and those parties agreed that any actions or proceedings initiated by Dvash or AMP against the other and arising out of the Lease-Purchase Agreement shall be subject to the exclusive jurisdiction of the Florida state courts (*Id.* ¶ 13; Complaint Exh. A, at § 13.4). At best, the exhibit to the Complaint provides that Sideral entered into a separate sublease with AMP, the Irish entity.

Accordingly, the Complaint fails to provide a sufficient basis for this Court to conclude the long-arm statute is satisfied and to assert specific personal jurisdiction over Sideral. Because the facts, as they exist now, would not survive a motion for a directed verdict on personal-jurisdiction grounds, this Court should conclude it lacks specific personal jurisdiction over Sideral.

### IV. EXERCISING JURISDICTION OVER SIDERAL WOULD OFFEND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Even if this Court could conclude that Sideral's alleged conduct falls within the scope of Florida's long-arm statute (which it does not), it should still decline to assert jurisdiction.

As the United States Supreme Court explained in *Walden v. Fiore*, for a state to exercise jurisdiction consistent with due process, "the *defendant's* suit-related conduct must create a substantial connection with the forum State." 571 U.S. 277, 284 (2014) (emphasis added). The Court in *Walden* articulated two rules for a district court's minimum contacts analysis that are important here.

First, the relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (citation omitted) (emphasis in original). There are no such allegations in the Complaint and there are no facts which would support such allegations.

Second, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citation omitted). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (citation omitted). "These same principles apply when intentional torts are involved." *Id.* In that context, too, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

The allegations in the Complaint concerning Sideral's alleged conduct do not satisfy any prong of the minimum-contacts test as established by the United States Supreme Court.

First, Dvash failed to allege any action taken by Sideral to transact business *in Florida*. Indeed, as to any of the bare-bones allegations with regard to Sideral, none of them constitute a purposeful decision to avail itself of the privileges of conducting business in Florida.

Moreover, Dvash fails to satisfy the second test in *Walden* because the connections it attempts to infer between Sideral and Florida arise almost entirely out of alleged dealings with individuals or entities who may have some contact with the State of Florida, but not between Sideral and the State of Florida itself.

The factors considered by a court in determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice are:

> [1] the burden on the defendant in defending the lawsuit, [2] the forum state's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies and [5] the shared of the states in furthering fundamental substantive social policies.

*Madara*, 916 F.2d at 1517 (citation omitted).

Sideral would face a large financial burden if forced to defend a lawsuit in Florida, a continent away from its place of incorporation and its principal place of business. Witnesses and documents relating to the business of Sideral are located outside of Florida. Moreover, Florida has little interest in resolving a dispute between a Maryland corporation and a Brazilian company regarding an aircraft engine located in Brazil, to the extent Dvash can come up with factual allegations to even allege a basis for jurisdiction pursuant to the Florida long-arm statute.

**V.     SERVICE OF PROCESS UPON SIDERAL SHOULD BE QUASHED BECAUSE SIDERAL DOES NOT TRANSACT BUSINESS IN FLORIDA**

Rather than complete the process for service upon Sideral through the Hague Convention on service of process abroad, Dvash delivered the Summons and Complaint to the Florida Secretary of State pursuant to Fla. Stat. § 48.181. *See* Proof of Service [DE 13], filed on May 25, 2024. This statute provides as follows:

> The acceptance by . . . any foreign business entity of the privilege extended by law to nonresidents to operate, conduct, engage in, or carry on a business or business venture in this state, or to have an office or agency in this state, is deemed to constitute an appointment by the . . . foreign business entity of the Secretary of State of this state as its agent on whom process in any action or proceeding against the . . . foreign business entity . . . arising out of any transaction or operation connected with or incidental to the business or business venture may be served as substituted service in accordance with this chapter.

Fla. Stat. § 48.181(2). "A Plaintiff may only invoke the court's jurisdiction over a nonresident defendant by means of substituted service pursuant to section 48.181, Florida Statutes (1983), when the defendant engages in business activities within the state." *W.C.T.U. Railway Co. v. Szilagyi*, 511 So.2d 727, 728 (Fla. 3d DCA 1987).

> When serving process under statutes authorizing service on nonresidents of Florida, the plaintiff must plead the actual statutory language, or allegations of the ultimate facts that invoke the statute. . . . It is well settled that "[t]o support substituted service of process on a defendant, the complaint must allege the jurisdictional requirements prescribed by statute. If it fails to do so then a motion to quash process should be granted."

*CI Int'l Fuels, Ltda. v. Helm Bank, S.A.,* 2010 WL 11597660, at *3 (S.D. Fla. Apr. 26, 2010) (*quoting Farouki v. Attel et Cie*, 682 So. 2d 1185, 1186 (Fla. 4th DCA 1996) (citations omitted)).

As shown above, the (a) failure to have alleged sufficient ultimate facts supporting jurisdiction (*see* Factual Background Point I, pp. 3-4, *supra*), together with (b) the lack of any evidence that Sideral was transacting business in the State of Florida (*see* Points II(B) and III(B),

15

*supra*), prevent Dvash from utilizing Fla. Stat. § 48.181 as the method for service on Sideral. Service of process on Sideral should be quashed. *See, e.g., Biscayne Athletic Club v. Iacono*, 367 So. 2d 275, 276 (Fla. 3d DCA 1979) (trial court erred in denying motion to quash because the allegations were insufficient to support long-arm jurisdiction).

## VI. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST SIDERAL

### A. Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).

Pursuant to Federal Rule of Civil Procedure § 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. § 12(b)(6). The purpose of Rule 12(b)(6) is to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Birdette v. Capitol One Bank (USA), N.A.*, 2012 WL 8319317, at *1 (11th Cir. July 25, 2012). As the Eleventh Circuit has held, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that a plaintiff is required to plead factual allegations sufficient to state a plausible claim. It is not enough to plead the elements of a cause of action in a conclusory fashion, and then attempt to obtain discovery to fill in the blanks. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Thus, neither "a formulaic recitation of the elements of a cause of action," nor "'naked assertion[s]' devoid of 'further factual enhancement,'" will suffice to satisfy the requirements of Rule 8. *Id.*

It is within this framework that the Court should address the dismissal of Counts II and III of the Complaint [DE 1].

### B. Dvash Cannot Claim Breach of Contract Against A Non-Signatory To The Contract.

Count II of the Complaint seeks to recover against Sideral based on breach of contract. Complaint [DE 1], at ¶¶ 35-29. This count must fail.

First, the Complaint fails to allege that Sideral breached the contract with Dvash. The allegation of a breach is one of the elements of such a claim for relief. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) ("The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."). The failure to make such an allegation necessitates dismissal of the claim.

Second, the Complaint fails to allege that Sideral is a party to the Lease-Purchase Agreement. In fact, the Complaint recognizes that "Florida law does not recognize a claim for breach of contract *against* a third party beneficiary . . . ." Complaint [DE 1], at ¶ 38. The Plaintiff then maintains that existing law should be "extended or modified to permit a claim for breach of contract against a third party beneficiary where, as here, the subject beneficiary is also the parent company of the counterparty in direct contractual privity." *Id.* ¶ 39. However, this argument is contrary to *Anago Franchising, Inc. v. Shaz, LLC*, 2012 WL 12860742 (S.D. Fla. Nov. 27, 2012) (Rosenbaum, J.), which specifically rejected the efforts of a plaintiff to assert breach of contract claims against non-signatories to an agreement. *Id.* at *3.

In that case, the plaintiff attempted to assert a breach of contract claim against three parties who were non-signatories to a settlement agreement. *Id.* at *1. Like here, the plaintiff in that case "argues that the individual Defendants are intended third-party beneficiaries of the Settlement agreement and may accordingly be sued for its breach." *Id.* at *2. In rejecting the claim, the court

17

stated that "the Court need not decide whether the individual Defendants are in fact third-party beneficiaries to the [agreements at issue] . . . they are not parties to either contract. Thus, even if Defendants are third-party beneficiaries, they cannot breach a contract to which they are not parties." *Id.* *3.

Similarly here, even if the allegation is accepted that AMP entered into the Lease-Purchase Agreement "for the benefit of AMP's parent, Sideral" (Complaint [DE 1], at ¶ 15), such an allegation does not alter the fact that Sideral is not a party to the Lease-Purchase Agreement and therefore Count II of the Complaint should be dismissed as against Sideral. *Anago Franchising, Inc.*, 2012 WL 12860742, at *3.

Accordingly, the breach of contract count against Sideral must be dismissed.

### C.  Dvash Cannot Claim Unjust Enrichment Against Sideral.

Count III of the Complaint seeks to recover against Sideral based on unjust enrichment. Complaint [DE 1], at ¶¶ 35-29.  The Complaint specifies that this Count "is pleaded in the express alternative to Count I [the count against AMP]." *Id.* ¶ 41.  This count must fail.

It is settled law that "upon a showing that an express contract exists, the quasi-contract claim fails." *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (citation omitted).  AMP admits that it entered into the Lease-Purchase agreement with Dvash, although it denies that it is liable for breach of that agreement. Answer and Affirmative Defenses, at ¶ 15.  Accordingly, since there is an express contract with AMP, there can be no quasi-contract claim asserted in the alternative against Sideral.

Moreover, "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Webster,* 124 F. Supp. 2d at 1326 (citation omitted).  "Plaintiff in this case has failed to allege that an adequate remedy at law does not exist,

18

and nothing in the Amended Complaint or arguments of the parties indicates that such a situation exists." *Id.* at 1326-27. Similarly here, there is no allegation in the Complaint that an adequate remedy at law does not exist.

Accordingly, the unjust enrichment count against Sideral must be dismissed.

## CONCLUSION

WHEREFORE, the Defendant Sideral Linhas Aereas Ltda. respectfully requests that this Court grant the Motion and (1) dismiss the complaint based on a lack of personal jurisdiction and failure to state a claim against Sideral and (2) quash service of the Complaint on Sideral, together with granting attorneys' fees and costs to the maximum amount permitted by law, and such other and further relief as to this Court appears just and proper.

Respectfully submitted,

/s/ *Seth P. Robert*
Seth P. Robert
Florida Bar No. 145696
Connis O. Brown, III
Florida Bar No. 641960
**BROWN ROBERT, LLP**
150 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954.832.9400
Facsimile: 954.832.9430
E-mail: srobert@brownrobert.com
E-mail: cbrown@brownrobert.com

*Attorneys for Defendant Sideral Linhas Aereas Ltda.*

**Certificate of Service**

I hereby certify that on May 31, 2024 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served a copy of the foregoing upon the following:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Pkwy., #665
Henderson, Nevada 89012
Telephone: 301-444-4600
E-mail: mac@mbvesq.com
*Attorney for Plaintiff*

/s/ *Seth P. Robert*
Seth P. Robert
Florida Bar No. 145696