IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | | |
|---|---|---|
| DVASH AVIATION HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 0:24-cv-60312-AHS |
| | ) | |
| AMP LEASING LIMITED, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO SIDERAL LINHAS AEREAS LTDA.'S MOTION
TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND
FAILURE TO STATE A CLAIM, AND TO QUASH SERVICE OF PROCESS**

Comes now Dvash Aviation Holdings, LLC ("Dvash" or the "Plaintiff"), by and through

undersigned counsel, pursuant to Local Rule 7.1(c)(1), and in opposition to Sideral Linhas Aereas

Ltda.'s Motion to Dismiss Based on Lack of Personal Jurisdiction and Failure to State a Claim,

and to Quash Service of Process (the "Motion," as found at DE #15, with the proponent thereof

being known as "Sideral" or the "Defendant")[1] states as follows:

I.      **Introduction**

Dvash sold an airplane engine to AMP, for the benefit of Sideral. Pursuant to the underlying

agreement, some payments were properly made to Dvash but, critically, an initial payment of

$408,016.00 was not made in accord with the contractual provisions. Accordingly, Sideral now

has an engine that once belonged to Dvash while Dvash does not have the funds for which it

bargained in parting with the engine. As such, Dvash has brought suit against AMP and Sideral.

The former entity has filed an answer; the latter entity has filed the Motion.

---

[1] The term "Defendant" is defined to solely refer to Sideral, with the other defendant in this case—
AMP Leasing Limited ("AMP")—having filed an answer, DE #17, and thusly not being a party to
the Motion.

At core, the Motion raises three arguments: (i) Dvash cannot sue Sideral for unjust enrichment because the conveyance of the airplane engine occurred pursuant to a written contractual agreement; (ii) Dvash cannot sue Sideral for breach of contract because Sideral is not a party to the subject agreement; and (iii) Sideral may not be sued in this venue because it is not subject to personal jurisdiction and any proceeding would offend constitutional notions of due process. The first contention is misplaced as a matter of law. The second contention is the subject of an argument Dvash openly acknowledges to be designed to challenge and expand existing law. And the third contention necessitates the taking of jurisdictional discovery, for which Dvash is moving concurrently with the filing of this brief.

The Motion merits denial to the extent Sideral suggests Dvash has not stated a claim for which relief may be granted. The Defendant asserts the existence of a contract is a bar to recovery under a theory of unjust enrichment but, in so doing, overlooks precedent holding that prohibition is only pertinent when the correlative defendant is in contractual privity with the party bringing suit. Equally, while Sideral does correctly note that extant Florida law does not recognize a cause of action for breach of contract against a third-party beneficiary, Dvash urges equitable notions applied to the facts alleged in the Complaint support an expansion of the existing body of case law. This urged expansion of current law comes with acute focus on both Sideral being an insider of AMP and the opportunity for mischief otherwise occasioned by permitting contractual liability to be offloaded onto intermediaries.

As to the jurisdictional issues (which, in turn, also subsume a challenge to the sufficiency of service of process), Dvash believes—based on its pre-suit investigation of facts and the contours of the Motion itself—that Sideral is likely subject to at least specific jurisdiction in the Southern District of Florida. It appears Sideral directly received the airplane engine in Miami. It also appears

Sideral may regularly be in the business of purchasing airplane parts in the United States, taking delivery in the United States, and then ferrying the parts off to Brazil. And unrelated litigation, in state court, shows at least one other transaction, involving Sideral and the sale of an airplane component, has given a Florida entity cause to be aggrieved. If two transactions involving Sideral's acquisition of airplane parts in Florida have invited litigation, one necessarily wonders how many other transactions have been undertaken in Florida without an ensuing publicly-available docket to evidence their consummation. But Dvash is cognizant of the rigors of Rule 11 and the need to only affirmatively plead facts when there exists a sufficient good faith basis for the correlative allegations. As such, it is hoped that jurisdictional discovery may bring these matters into sharper relief and permit a more fulsome briefing of the propriety of Sideral being sued in this Honorable Court.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied as to the asserted failure of Dvash to state a claim for relief, with consideration of the jurisdictional arguments being deferred until topical discovery may be completed and supplemental briefing appropriately filed.

## II.     Argument: The Complaint Properly States a Claim for Relief

### a.   Standard: Rule 12(b)(6)

Familiarly, "[t]o survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'' This plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing a challenge under Federal Rule of Civil Procedure 12(b)(6), "[t]he Court's consideration is limited to the allegations presented. All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor." *Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1144 (S.D. Fla. 2019) (citing *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993); *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998)).

### b. A Claim of Unjust Enrichment is Appropriate Since Sideral and the Plaintiff are Not Alleged to be in Contractual Privity

The Motion posits that Dvash cannot succeed on a claim for unjust enrichment, against Sideral, insofar as the subject-matter of the claim is governed by a contract between Dvash and AMP. This argument is unavailing, however, because the familiar prohibition on equitable recovery in the prism of a contractual relationship is limited to claims brought against parties in contractual privity. Here, should Dvash not prevail on its second cause of action (seeking to hold Sideral liable for breach of contract on a theory of third-party beneficiary liability), Sideral will not be obligated under the contract and, as such, Dvash may not have contract-based recourse against Sideral. At the pleading phase of these proceedings, this possibility is sufficient to permit Dvash to pursue a claim for unjust enrichment.

The Defendant correctly observes that under Florida law, the existence of an express contract limits—and sometimes fully obviates—the availability of relief under any quasi-contractual theories, including unjust enrichment. *See* Motion, DE #15, at § VI(C), pp. 18-19. *See also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.") (citing *Ocean*

*Commc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007); *Kovtan v. Frederiksen*, 449 So.2d 1 (Fla. 2d DCA 1984); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005)).

Critically, however, that limitation is only applicable where the plaintiff and defendant are both parties to the subject contract and thusly in privity with one another. Applying Florida law, the United States Court of Appeals for the Eleventh Circuit has made this meaningful distinction in a case where an insurer sued an unlicensed chiropractic clinic for unjust enrichment, seeking to recover monies paid for patient care on the theory that such services were not "lawfully provided," and, ergo, were not properly compensable in nature. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 582 (11th Cir. 2013). The chiropractic clinic, in turn, asserted a claim of unjust enrichment to be improper since "some of the patients executed assignments of benefits to State Farm, allowing Silver Star to bill State Farm directly for the cost of the treatment," thereby allegedly creating a prism wherein "the two entities were in privity of contract." *Id.* at 584. Yet the Eleventh Circuit roundly rejected this assertion, noting, *inter alia*, "[b]ecause Silver Star did not assume any contractual duty to State Farm, there was no privity of contract between the two and State Farm would not have a cause of action against Silver Star for breach of contract." *Id.* at 584.

Nor is *State Farm* an outlier. The First District Court of Appeal held similarly in a 2005 case where a teaching hospital agreed to participate in a preferred provider organization ("PPO") network, offering reduced rates to parties contracting with the PPO administrator. *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1224 (Fla. 1st DCA 2005). A state-selected entity ("Unisys") proceeded to enter into a subcontract with the PPO administrator, with the subcontract being "an integral part of Unisys's proposal to the State." *Id.* at 1226. Unisys

then fell behind in making payments to the teaching hospital, prompting the teaching hospital to sue Unisys for unjust enrichment. *Id.* at 1226-27.

Reversing the trial court in *Shands*, the First District Court of Appeal noted, *inter alia,* "[t]here is no express contract between Shands and Unisys." *Id.* at 1227. The unjust enrichment claim was accordingly proper in nature, even though the services in question were provided pursuant to an express contract with a third-party actor that, in turn, was in contractual privity with the defendant. *Id.*

This Honorable Court has also held similarly in a dispute concerning the disposition of life insurance proceeds. *Kowalski v. Jackson Nat'l Life Ins. Co*., 2013 WL 11941583 (S.D. Fla. Aug. 30, 2013). There, through a topically-irrelevant and complicated procedural posture, an individual sued both an insurer and the administrator of a decedent's estate, to recover monies pursuant to a policy of life insurance. The administrator of the decedent's estate asserted the plaintiff "cannot state a claim for unjust enrichment because a contract governs the Estate's receipt of the policy proceeds." *Id.* at *2. Judge Cohn rejected that notion, writing, *inter alia,* "[w]hile the Estate is correct that Florida cases have held that an unjust enrichment claim cannot proceed where an express contract regarding the same subject matter exists, the case law is equally clear that the contract must be between the parties to the unjust enrichment claim." *Id.* at *3 (citing *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Diamond "S" Dev. Corp*., 989 So. 2d at 697; *Shands*, 899 So. 2d at 1227) (internal citation omitted).

Here, the contract in question is between Dvash and AMP. Complaint, DE #1, at ¶ 15. While Dvash does allege Sideral to be a third-party beneficiary of the subject agreement, *Id.* at ¶ 38, there is no dispute but that Sideral is not an express signatory to the document, Motion, DE #15, at § VI(B), pp. 17-18.

Accordingly, under *State Farm*, *Shands*, and *Kowalski*, Dvash may maintain an action for unjust enrichment, against Sideral, since the two parties are not in direct contractual privity. That both parties are in contractual privity with the same third party (AMP) is immaterial; as noted above, *Sands* presented a pact pattern where there was, too, a mutuality of privity with a common third party, but such was not there (and ought not be here) a bar to pursuing a claim for unjust enrichment.

Critically, Sideral does not challenge that the elements of a claim for unjust enrichment have otherwise been pleaded. *See* Motion, DE #15, at § VI(C), pp. 18-19. The basis for proposed dismissal, rather, is solely that there exists an express contract and, as such, that there exists an adequate remedy at law. *Id.* But the adequacy of Dvash's claim for breach of contract against Sideral (discussed below) necessarily turns not merely on an urged expansion of existing case law but, too, success in obtaining a judgment.[2] Until such comes to pass, Dvash is certainly permitted to plead in the alternative, Fed. R. Civ. P. 8(a)(3), and the claim for unjust enrichment should accordingly proceed.

### c. Permitting a Breach of Contract Claim Against a Controlling Third Party is an Appropriate Extrapolation of Existing Law

As both Dvash acknowledges in the Complaint and Sideral notes in the Motion, Florida law does not presently expressly recognize a claim for breach of contract against a third-party beneficiary. The Defendants accordingly urges that Dvash's claim for breach of contract, against

---

[2] To the extent the Motion posits that having recourse against AMP constitutes an adequate remedy at law, the assertion is similarly misplaced because (i) such is a remedy against AMP, not Sideral; and (ii) while Dvash certainly has faith in the bona fides of its claim against AMP, it is premature to assume success thereupon so long as AMP continues to defend this litigation and so long as the collectability of any judgment against AMP remains unknown. Of course, if AMP were to confess liability on the claim of Dvash and promptly pay an ensuing judgment, Dvash would gladly acknowledge there to have existed an adequate remedy (as well as that mootness thereafter vitiates any remaining causes of action). But Dvash well respects that such a course of action is unlikely to ensue.

7

Sideral, merits dismissal. But an examination of extant case law shows a compelling absence of topical authority where the contracting party is seemingly a mere conduit for the third-party beneficiary, with well-defined notions of equity supporting an expansion of current law to permit such a cause of action.

The seminal case on point is *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016), where the Supreme Court of Florida held, *inter alia*, "the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around. The third-party beneficiary doctrine does not permit two parties to bind a third— without the third party's agreement—merely by conferring a benefit on the third party." *Mendez*, 203 So. 3d at 149 (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1380 (Fla. 1993); *Shingleton v. Bussey*, 223 So. 2d 713, 715 (Fla. 1969)).

In reaching this holding, the *Mendez* Court acknowledged that third-party beneficiaries can be bound by contractual provisions in certain circumstances, such as where an agreement contains pre-litigation notice requirements. *Mendez*, 203 So. 3d at 149 (citing *Nat'l Gypsum Co. v. Travelers Indem. Co.*, 417 So.2d 254, 256 (Fla. 1982)). And, as noted *supra*, the *Mendez* holding expressly turns on equities stemming from a scenario where a contract is entered into "without the third party's agreement." *Mendez*, 203 So. 3d at 149.

Here, Sideral, while not a signatory thereto, is expressly named in the contract. *See* Engine Lease-Purchase Agreement (the "Lease-Purchase Agreement"), attached hereto as Exhibit A, at § 8.1, p. 14 ("Lessor hereby accept the Engine to be subleased by Sideral Linhas Aéreas Ltda. a Brazilian Certified 121 Airline."). And the identification of Sideral as the subleasing party makes contextually apparent that an agreement already existed between Sideral and AMP for the provision of the engine being conveyed by Dvash. AMP was not entering into the contract to

acquire an engine for its own use; AMP was entering into the contract to acquire an engine for the use and enjoyment of Sideral, with there being a good faith belief that economic terms would have been arranged between AMP and Sideral in advance of the contract with Dvash being signed.

Moreover, Sideral and AMP are not legal strangers. If this cause of action is permitted to proceed, Dvash reasonably believes evidence adduced will show (i) Sideral and AMP to be controlled by biological relatives of one another; (ii) Sideral and AMP to share one or more employees; (iii) the majority—if not whole—of AMP's leasing business to be for the benefit of Sideral; (iv) AMP to copy Sideral on myriad e-mail communications concerning the procurement of airplane engines to be acquired for subleasing to Sideral; and (v) the two entities to be insiders of one another under almost any legal definition of the word "insider."

Dvash accordingly posits that the doctrine set forth in *Mendez* merits expansion and/or alteration, so as to permit a claim for breach of contract against a third-party beneficiary where (i) the beneficiary is aware of the contract, and the terms thereof, prior to the contract being executed; (ii) the beneficiary urges and/or helps facilitate the execution of the contract, for its own benefit; (iii) the beneficiary is an insider of one of the contracting parties; and (iv) the contract would not be entered into but for the actions of the beneficiary.

Transparently, the solvency, *vel non*, of AMP is unknown to Dvash. And the rationale for seeking this extrapolation and/or alteration of existing law is born of the same equitable interests that permit Dvash to pursue a claim for unjust enrichment against Sideral: if there exists an adequate remedy against AMP, and a judgment thereupon can be satisfied, there is likely no need to seek recourse from Sideral. But if AMP is not a readily-collectible entity, and is being used by Sideral to shoulder liability in transactions undertaken exclusively for the benefit of Sideral, then equity well dictates that Sideral should share in liability in such transactions. *See, e.g.*, *Cain &*

*Bultman, Inc. v. Miss Sam, Inc.*, 409 So. 2d 114, 119 (Fla. 5th DCA 1982) ("A maxim of equity is to the effect that equity treats that as being done which should be done."); *Henderson v. Leatherman*, 163 So. 310, 314 (Fla. 1935) ("A court of equity, when appealed to, should require that to be done by parties who are brought into the litigation which equity and good conscience require should be done."); *Arsali v. Chase Home Fin. LLC*, 121 So. 3d 511, 518 (Fla. 2013) ("When it is necessary, Florida courts have powers at their disposal to provide equitable remedies to litigants.") (citing *Torres v. K–Site 500 Associates*, 632 So.2d 110, 112 (Fla. 3d DCA 1994); *White v. Brousseau*, 566 So.2d 832, 835 (Fla. 5th DCA 1990); *Cain & Bultman*, 409 So.2d at 119; *Wildwood Crate & Ice Co. v. Citizens Bank of Inverness*, 123 So. 699 (Fla. 1929)).

### III. Argument: Sideral is Subject to the Personal Jurisdiction of this Court

#### a. Standard: Rule 12(b)(2)

The standard governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is notably different than that governing a motion to dismiss premised upon a failure to state a claim for which relief may be granted. In assessing a jurisdictional challenge, this Honorable Court "must hear and decide the issue 'before trial unless the court orders a deferral until trial.'" *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021) (quoting Fed. R. Civ. P. 12(i)).

If an evidentiary hearing is conducted on the motion before trial, the governing standard is a preponderance of the evidence "[b]ecause the court is making factual determinations and reaching a final decision on jurisdiction. . ." *AcryliCon*, 985 F.3d at 1364. If, however, adjudication is deferred until trial, then the Motion is to be adjudicated "under a prima facie standard," in which this Honorable Court "accepts as true all unchallenged facts in the plaintiff's complaint, and then considers all affidavit evidence proffered by the parties." *Id*. Where a conflict exists in the evidence, under a prima facie standard, such conflict is resolved in favor of the Plaintiff. *Id.*

### b. Adjudication of the Motion Should be Stayed Pending Jurisdictional Discovery

Prior to bringing suit, Dvash undertook extensive due diligence on AMP and Sideral, in an effort to not merely ensure compliance with the rigors of Federal Rule of Civil Procedure 11 but, too, in an effort to glean as much as possible about the ties of Sideral to the United States and, more specifically, the state of Florida. Dvash believes Sideral received, in Miami, the airplane engine at issue in this case. Dvash also knows Sideral has apparently engaged in at least one other Florida-centric transaction that recently gave rise to litigation in state court. And, courtesy of the Motion, Dvash now knows that "Sideral has entered agreements which were governed by the laws of the State of Florida and selected Florida as the location for any lawsuit arising from such agreements, but those agreements neither required performance in Florida, nor resulted in any dispute." Motion, DE #15, at § II, p. 5. The Motion also reveals that Sideral has now received clearance from the United States Department of Transportation in connection with future potential flights to the Unites States, even though no such flights have been made as of yet. *Id.*

Dvash is not presently alleging that Sideral is subject to general jurisdiction in Florida. However, as discussed *infra*, it appears Sideral is subject to specific jurisdiction in Florida in connection with this case. And, as Sideral properly notes in the Motion, such then necessarily raises the question of whether or not the exercise of specific jurisdiction would offend due process. *See* Motion, DE #15, at § IV.

As noted in the Complaint, the aforementioned separate litigation in state court (to which Dvash was not a party) beget an assertion, by AMP, that "AMP has not entered into any contract to be performed in Florida." Complaint, DE #1, at ¶ 11. *See also* Motion to Dismiss Based on Lack of Personal Jurisdiction (the "State Court Motion to Dismiss"), attached hereto as Exhibit B ("Ex. B"), at pp. 9-10. That case also involved the relationship between AMP and Sideral, including

allegations that AMP consigned airplane engine for sale through Sideral. *See* State Court Motion to Dismiss, Ex. B, at pp. 11-12.

Yet it is known that AMP *has* entered into a contract to be performed in Florida—the Lease-Purchase Agreement implicated in this case. And there necessarily follows a question as to why AMP would have asserted a lack of contractual activity in Florida, in connection with a dispute concerning personal jurisdiction, unless AMP viewed the Lease-Purchase Agreement with Dvash as being performed by Sideral in Florida.

To more fully gauge the extent of Sideral's contacts with the United States and Florida, Dvash is respectfully moving for limited jurisdictional discovery. Dvash has gleaned all it can through a pre-suit investigation and, not surprisingly, is not privy to other contracts in which Sideral is to retrieve goods or perform services in Florida, nor even to the numerosity of such other contracts. It appears these factors will weigh heavily on the due process analysis in this case.

Accordingly, while this opposition brief is being timely filed so as to fully preserve the rights of Dvash, it is respectfully urged that adjudication of the Motion be stayed pending the conclusion of jurisdictional discovery and the filing of supplemental memoranda by the parties, with such supplemental memoranda to be supported by evidence obtained through the jurisdictional discovery process.

### c.  It Appears There Exist Facts Sufficient to Establish Specific Jurisdiction

Assuming Sideral retrieved an airplane engine from Dvash, in Miami, Florida, pursuant to the Lease-Purchase Agreement, the Defendant conducted business in Florida and subjected itself to the specific jurisdiction of this Honorable Court in connection with any claims stemming therefrom. While Dvash is not presently contending that Sideral is subject to the general jurisdiction of courts sitting within Florida, the law well holds that an entity transacting business

in a given state may, in turn, be sued in the courts of that state (or, as here, federal courts sitting

within that state) in connection with matters related to the relevant business conduct.

Under Eleventh Circuit precedent, a two-step analysis controls questions of the proper

exercise of personal jurisdiction over defendants domiciled outside of a given state:

> . . . a federal court generally undertakes a two-step analysis to determine whether
> there is personal jurisdiction over a nonresident defendant. First, the court must
> determine whether the plaintiff has alleged sufficient facts to subject the defendant
> to the forum state's long-arm statute. Second, if the court determines that the forum
> state's long-arm statute has been satisfied, it must then decide whether the exercise
> of jurisdiction comports with the Due Process Clause of the Fourteenth
> Amendment.

*Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (citing *Sculptchair, Inc. v.*

*Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).

Here, the Florida statutory scheme sets forth a "long-arm" statute that provides, in relevant

part:

> A person, whether or not a citizen or resident of this state, who personally or
> through an agent does any of the acts enumerated in this subsection thereby submits
> himself or herself . . . to the jurisdiction of the courts of this state for any cause of
> action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture
> in this state or having an office or agency in this state. . .

Fla. Stat. § 48.193(1)(a).

The activities of Sideral fall within the scope of this statute. Specifically, it appears Sideral

transacted business in the State of Florida when the jet engine at issue in this case was delivered

"FOB Miami NDT facility in Miami, Florida." Lease-Purchase Agreement, Exhibit A, at § 3.7, p.

7. And the Defendant acknowledges that "Sideral purchases parts from sellers in many countries,

including the United States." Motion, DE #15, at § II, p. 5.

There is, to be sure, seemingly precise verbiage in both the Motion and the supporting

affidavit, where Sideral acknowledges purchasing aircraft parts in the United States but indicates

13

"all such parts are then delivered for use in Brazil." *Id.*; Affidavit, DE #16-1, at ¶ 18. Sideral does not expressly indicate if the delivery "for use in Brazil" is by Sideral or by a third-party actor (such as AMP). And this matters a great deal.

If Sideral truly never retrieves aircraft parts in the United States, and did not retrieve the airplane engine at issue *sub judice* in Florida, then the jurisdictional analysis may well tilt in favor of Sideral. But Dvash believes, in good faith, that Sideral retrieved the subject engine in Florida and then caused the part to be transported to Brazil. If so, coming to Florida to acquire the product would certainly constitute "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state. . ." Fla. Stat. § 48.193(1)(a). And, as noted *supra*, there is thusly an appropriate need for jurisdictional discovery to ascertain the specifics of this situation.

Vis a vis the latter step of the jurisdictional analysis under *Del Valle*, jurisdictional discovery is again appropriate to ascertain the extent of Sideral's contacts with Florida and, as a necessary byproduct of such, whether or not permitting Sideral to be sued in this Honorable Court would offend due process. As explained by the Eleventh Circuit:

> At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has fair warning that it may be subject to suit there. In specific jurisdiction cases like this one, we examine whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice."

*Del Valle*, 56 F.4th at 1275 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–77 (1985); quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

Notably, in assessing whether this suit would offend due process, and in applying the three foregoing criteria, the burden for the former two criteria is on Dvash but, once those factors are

established, the burden for showing an absence of "fair play and substantial justice" falls to Sideral. *Del Valle*, 56 F.4th at 1275 (citing *Louis Vuitton*, 736 F.3d at 1355).

Here, the issues in this case certainly "arise out" of a transaction undertaken in the State of Florida. There is no dispute but that Dvash delivered the airplane engine in Miami and, as discussed above, it at least appears that Sideral retrieved the airplane engine in Miami, even if only to then transport the part to Brazil. So the first factor for assessing due process is seemingly satisfied.

As to the second factor, Sideral certainly "purposefully availed" itself of the privilege of conducting business in Florida. This prong is controlled by its own three-part test to assess the existence of requisite minimum contacts:

> The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. In performing the minimum contacts analysis, we identify all contacts between the nonresident defendant and the forum state and ask whether, individually or collectively, those contacts satisfy the relevant criteria. As noted earlier, the nonresident's contact with the forum need not give rise to the plaintiff's claim.

*Del Valle*, 56 F.4th at 1276 (citing *Louis Vuitton*, 736 F.3d at 1357; *Ford Motor Co.*, 592 U.S. 361-63).

Here, the contact with Florida—retrieving an airplane engine—is amply "related to" the cause of action in this case, insofar as Dvash is suing Sideral for unjust enrichment and breach of contract in connection with the same airplane engine. And, vis a vis the second "minimum contacts" prong, the retrieval of that engine in Florida accordingly consisted "some act by which the defendant purposefully availed [itself] of the privileges of doing business" in Florida. Assuredly, the engine was not retrieved in Miami by accident or under some accidental belief the transaction was occurring in a different state or country. This leaves only the third prong, and reason well dictates that by acquiring an airplane engine in Florida, retrieving the engine in Florida,

and knowing the engine was being provided by an American entity, Sideral should have reasonably anticipated that it might be haled into court in Florida should some liability arise in connection with the transaction.

The third due process consideration is fair play and substantial justice, "which considers (1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Del Valle*, 56 F.4th at 1277 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The burden on Sideral, of defending this case, is minor. The Defendant is an international airline that acknowledges having already commenced the process—and received the initial approval—requisite to operate in the United States. AMP, a related entity, is represented by the same counsel and, by filing an answer herein, has already committed to litigating this case. While there is, no doubt, some inconvenience to defending a lawsuit, such is true of domestic actors and foreign actors alike; nothing about the posture or facts herein suggests a disproportionate or undue burden on Sideral.[3]

Florida, meanwhile, has a compelling interest in adjudicating this dispute. Dvash is a domestic company that did business in Florida pursuant to an agreement with a Florida forum selection clause. Dvash performed fully in Florida. Dvash parted with its goods in Florida. And Dvash was then not paid the bargained-for sum of money by either AMP or the entity that ultimately ended up in possession of the airplane engine. There is a compelling interest in a federal

---

[3] To the extent Sideral posits that travel to Florida would constitute an inconvenience, it bears notation that (i) most pre-trial proceedings in this Honorable Court are conducted without a hearing; and (ii) there is some modicum of irony in an airline operator highlighting the inconvenience of travel.

16

court, situated in Florida, being permitted to adjudicate the ensuing dispute—especially since the claim against AMP is already proceeding in this forum. And Southern Florida in particular has an interest in this suit proceeding, with the region's informal title of "Gateway to the Americas" being well founded on the ease of transacting business with South American entities in the Miami/Fort Lauderdale region. To the extent such business may be transacted on Florida soil but not addressed by courts situated in Florida, such would no doubt hamper the viability of the region as a desirable locale in which to undertake commercial transactions with Latin American and South American businesses.

As to the third consideration, Dvash very much has an interest in obtaining convenient and effective relief. Pursuant to the contract, the dispute with AMP is to be litigated in this Honorable Court. Avoiding multiple cases, in differing forums, and the risk of inconsistent or dichotomized judgments, is a compelling reason for permitting the claim against Sideral to proceed herein. Dvash ultimately seeks to obtain, and collect upon, a unitary judgment; proceeding in a single forum is essential to allowing this to happen.

Finally, it certainly appears the judicial system has an interest in resolving this dispute—especially since the facts overlap, significantly, with Dvash's claims against AMP. Notably, Sideral does not address this factor substantively in the Motion, and the burden is on Sideral to show the absence of a judicial interest in resolution of the instant case in Florida. *Del Valle*, 56 F.4th at 1275 (citing *Louis Vuitton*, 736 F.3d at 1355).

At bottom, neither Dvash (a Maryland entity) nor competing Florida entities are alleged to have a monopoly on the provision of jet engines. Sideral could have acquired the airplane part in a different state just as Sideral could have acquired the airplane part in a different country. But, pursuant to an agreement of which Sideral was fully knowledgeable, and executed for the benefit

17

of Sideral, the acquisition occurred "FOB Miami NDT facility in Miami, Florida." Contract, Exhibit A, at § 3.7, p. 7. And acquiring an engine is, no doubt, a purposeful activity; as a general rule, companies do not tend to inadvertently or accidentally come into possession of such airplane components without a great modicum of purpose.

### IV.    Argument: The Propriety of Service of Process is Coterminous with the Existence of Personal Jurisdiction

Sideral also moves to quash service of process in this case, asserting an absence of jurisdiction and a lack of evidence of the Defendant conducting business in Florida. Motion, DE #15, at § V. In this regard, the argument appears to be coextensive with the jurisdictional argument discussed above; if Sideral is subject to the jurisdiction of this Honorable Court, such is almost assuredly due, in part, to Sideral having conducted business in Florida. Consequently, a finding of jurisdiction would, too, result in a finding that service of process was properly made.

Importantly, Sideral does not seek to quash service on any other theory. Dvash has been open about the fact that it has not, as of yet, effectuated service in accord with the Hague Convention. *See* Status Report, DE #14. Dvash has also indicated, however, that the Plaintiff does not believe Hague service to be necessary insofar as Sideral is conducting business in Florida. *Id.* Sideral does not take issue with this legal assertion, nor does Sideral assert service on the Florida Secretary of State to have been defective from a procedural perspective (though Sideral certainly alleges service to be substantively insufficient).

As such, and consistent with the foregoing, Dvash respectfully urges that this Honorable Court defer a ruling on quashing service until such time as jurisdictional discovery may be completed and supplemental briefs may be filed. If Sideral is subject to jurisdiction in Florida by reason of having transacted business in Miami, the Defendant essentially concedes the propriety of service. If, conversely, this Honorable Court finds Sideral to not be subject to personal

jurisdiction, the question of service will be *de facto* moot insofar as the suit may not proceed against Sideral without regard to whether or not service was proper.

**V. Conclusion**

At core, the Motion challenges whether Dvash has stated a claim for which relief may be granted and whether Sideral is subject to jurisdiction in the Southern District of Florida. The former issue is readily resolved in favor of Dvash; regardless of whether or not an expansion of existing law is appropriate to entertain a claim for breach of contract against a third-party beneficiary, the Plaintiff has most certainly stated a valid claim for unjust enrichment. And it necessarily follows that if Sideral may be sued in this venue, the instant case should proceed on the merits.

In assessing whether or not Sideral may be sued here, however, discovery is appropriate for those reasons stated in the accompanying motion for jurisdictional discovery. Dvash believes the known facts all militate in favor of finding specific jurisdiction to be extant and to not offend due process. But Dvash also knows discovery will permit insights greater than those that could be gleaned through pre-suit due diligence and the Defendant's own affidavit.

WHEREFORE, Dvash respectfully prays this Honorable Court (i) deny the Motion as to the assertion that the Complaint fails to state a claim for which relief may be granted; (ii) defer ruling on the Motion as to the questions of jurisdiction and sufficiency of service of process until such a time as jurisdictional discovery may be had and supplemental briefing completed; and (iii) afford such other and further relief as may be just and proper.

*[Signature and Certificate of Service on Following Page]*

Respectfully Submitted,

THE VERSTANDIG LAW FIRM, LLC

/s/ Maurice B. VerStandig
Maurice B. VerStandig
Bar No. 76723
1452 W. Horizon Ridge Pkwy., #665
Henderson, Nevada 89012
Telephone: (301) 444-4600
E-mail: mac@mbvesq.com
*Counsel for Dvash Aviation Holdings, LLC*

### Certificate of Service

I hereby certify that on this 14th day of June, 2024, I caused this document to be electronically filed via this Honorable Court's CM/ECF system which, in turn, caused a copy to be served upon:

Seth P. Robert, Esq.
Connis O. Brown, III, Esq.
BROWN ROBERT, LLP
150 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954.832.9400
Facsimile: 954.832.9430
E-mail: srobert@brownrobert.com
E-mail: cbrown@brownrobert.com
*Counsel for the Defendants*

/s/ Maurice B. VerStandig
Maurice B. VerStandig