IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2023-002860-CA-01

PREFERRED BANK, a California Banking Corporation,

        Plaintiff,

v.

SIDERAL LINHAS AEREAS LTDA., a foreign limited company; AMP LEASING LTD., a foreign limited company; DAVID ALAN BOYER, individually; and JOEL PLASCO, individually,

        Defendants.

_____/

## MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION

Defendant AMP Leasing Ltd. ("AMP"), by and through its undersigned counsel who makes a special appearance in this matter for purposes of contesting jurisdiction, files this motion to dismiss the Amended Complaint filed by the Plaintiff Preferred Bank ("Plaintiff" or "Preferred"), as to AMP, pursuant to Rule 1.140(b)(2) of the Florida Rules of Civil Procedure based on a lack of personal jurisdiction over AMP (the "Motion"). For the reasons set forth below and the accompanying Affidavits of Declan Fitzpatrick and Paulo Adorno, which are being submitted herewith solely for the purposes of the special appearance in connection with this Motion and without waiver of any objections to service of process and/or jurisdiction, the Motion should be granted.

## PRELIMINARY STATEMENT

This Complaint relates to a dispute between Preferred and Sideral Linhas Aéreas Ltda. ("Sideral") over the ownership of a CFM56-3C1 aircraft engine bearing serial number 856479 (the

"CFM Engine").[1] Preferred claims the CFM Engine was pledged to Preferred as collateral in connection with a loan from Preferred to non-party Odyssey Leasing, LLC ("Odyssey"). Sideral claims it owns the engine pursuant to an agreement it reached with JMD Aviation Holdings, LLC ("JMD"), the owner of the CFM Engine at the time it entered into the contract to sell the engine to Sideral.

However, this purported dispute over the CFM Engine has nothing to do with AMP – an Irish entity which is a stranger to the CFM Engine and over whom this Court does not have personal jurisdiction. AMP seeks dismissal of the Complaint for lack of personal jurisdiction. Simply put, and as set forth in more detail below, Preferred has not met, and cannot meet, its burden of establishing personal jurisdiction over AMP in Florida.  The Complaint contains insufficient allegations of fact establishing personal jurisdiction over AMP, AMP has not purposefully availed itself of the privilege of doing business in Florida, and it has not been engaged generally in "substantial and not isolated activity" within the state.  As a result, Preferred cannot establish either specific or general personal jurisdiction over AMP and this Court should dismiss the sole claim of "conspiracy" asserted against AMP.

## FACTUAL BACKGROUND

### I.   CONCLUSORY ALLEGATIONS ABOUT AMP.

The Amended Complaint alleges that AMP is an Irish company "affiliated with Sideral" and "engaged in the business of acquiring and leasing aircraft engines for export, including to Brazil for use in Sideral's air transport operations." Amended Complaint, at ¶ 13.

It alleges that "upon information and belief" one of the members of AMP is a citizen and resident of Miami-Dade County, Florida. *Id.* at ¶ 14-15.

---

[1]      Sideral Linhas Aéreas Ltda. has not been served with process in this case and therefore this Motion is made solely on behalf of AMP.

The Amended Complaint alleges that AMP entered into "numerous agreements and transactions with entities owned by or affiliate with Boyer, Plasco, and the Odyssey Group." Amended Complaint, at ¶ 27.  It is further alleged "upon information and belief" that the transactions involving AMP's purchase of the engines from Cross Ocean were negotiated on Cross Ocean's behalf by Boyer and/or Plasco in Miami, Florida (Amended Complaint, at ¶ 34).

The Amended Complaint also alleges that after AMP executed the purchase agreements with Cross Ocean, the engines purchase by AMP were serviced in Miami, Florida at Turbine Engine Center ("TEC") and that AMP consigned the engines to TEC and did not make payment in exchange for the work performed (Amended Complaint, at ¶¶ 35-38).

The Amended Complaint alleges that AMP "through Sideral, is consigning, or has recently consigned, to the Florida company AeroAcq Partners, LLC, two CFM56-B model engines affixed to a 1991 Boeing 737-300QC model aircraft offered for sale in Miramar, Florida." *Id.* at ¶ 39. It also alleges the consignment of three engines to TEC or another entity affiliated with Boyer or Plasco for storage or service in Miami Florida. *Id.*

The Amended Complaint alleges that Sideral "was in the process of working with a 'leasing company in Ireland' to transfer title of its assets to said Irish leasing company and further acquire or lease additional engines from Odyssey and/or its affiliates" and that Plasco testified about this potential business with the "leasing company in Ireland". Amended Complaint, at ¶¶ 79-80. It further alleges that "upon information and belief" that the Irish leasing company referenced during the deposition is AMP. Complaint, at ¶ 81.

The Amended Complaint alleges that AMP entered into an agreement to purchase a different engine (the "Synovus Engine") which was allegedly to be used in Sideral's fleet of

aircraft. Amended Complaint, at ¶ 83. It is further alleged that AMP did not pay the purchase price for the Synovus Engine. *Id.* ¶ 84.

The Complaint alleges that the CFM Engine and the Synovus Engine "were not the firsts converted through the efforts by Odyssey's principals and those of AMP Leasing" (Complaint, at ¶ 91).

Finally, in Count II of the Complaint, which is the only count to involve AMP, it is alleged in conclusory fashion that the CFM Engine and proceeds from the CFM Engine were diverted to Sideral (not AMP) by way of a Bill of Sale "executed by Boyer, in Miami, Florida in furtherance of the conspiracy at earliest one day before US$1,182,964.56 was transferred on AMP Leasing's and/or Sideral's behalf to pay off AB Financial's loan to Synovus . . . . " (Amended Complaint, at ¶ 117). It further alleges that the Bill of Sale was executed by Boyer and Plasco "in exchange for the $1,182,964.56 payment to release Synovus' lien on the Synovus Engine." (Amended Complaint, at ¶ 118).  None of these allegations are sufficient to establish long-arm jurisdiction over AMP.

## II.    FACTS REGARDING THE BUSINESS OF AMP.

AMP is a company incorporated in Ireland with its principal place of business located in Dublin, Ireland.   (Affidavit of Declan Fitzpatrick ("Fitzpatrick Aff.."), at ¶ 3). AMP is independently owned and is not a subsidiary of Sideral (a Brazilian company), nor is Sideral a subsidiary of AMP (*Id.* ¶¶ 4-5).  AMP is in the business of owning and leasing aircraft engines. (*Id.* ¶ 6.)  AMP has only one office and that is located in Dublin, Ireland (*Id.* ¶ 7). AMP does not have any office, mailing address, or telephone number in Florida (*Id.* ¶ 8).  All of AMP's business is transacted out of Dublin, Ireland (*Id.* ¶ 9).  AMP does not own, lease, or otherwise occupy any real property in Florida.  (*Id.* ¶ 10.). AMP does not have any offices in Florida, is not licensed or

authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida. (*Id.* ¶ 11). AMP has not contracted to insure any person, property, or risk located in Florida. (*Id.* ¶ 12). AMP does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida. (*Id.* ¶ 13).

AMP has not engaged in substantial or significant solicitation or services within Florida. (*Id.* ¶ 14). AMP has not entered into any contract to be performed in Florida. (*Id.* ¶ 15). AMP does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida. (*Id.* ¶ 16). AMP has not entered into any contract with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida. (*Id.* ¶ 26). AMP has not engaged in substantial and not isolated activity within Florida, either interstate or intrastate. (*Id.* ¶ 17). In the course of its business AMP acquires engines from sellers in many different countries. On a few occasions, AMP acquired engines from a seller based in Florida or had to arrange to pick up an engine in Florida, but has never sold any engines in Florida. (*Id.* ¶ 18). Michael Fereirra resides in the State of Florida and is a two percent (2%) owner of AMP, but does not act as for AMP as an agent or representative. (*Id.* ¶ 27).

AMP has no record of any purchase, sale, lease, sublease, or similar transaction of the CFM Engine. (*Id.* ¶ 19). AMP did not enter into any agreement with any person or entity with regard to the CFM Engine (*Id.* ¶ 20).

AMP did not consign to the Florida company AeroAcq Partners, LLC, two CFM56-B model engines affixed to a 1991 Boeing 737-300QC model aircraft offered for sale in Miramar, Florida. (*Id.* ¶ 21). Sideral is attempting to sell the 1991 Boeing 737-300QC model aircraft, not AMP. (Affidavit of Paulo Adorno ("Adorno Aff."), at ¶ 3). Prospective purchasers of the 1991

Boeing 737-300QC contact Sideral, in Brazil, by telephone or e-mail regarding the aircraft. (*Id.* ¶ 4).

AMP has not entered into agreements and transactions with entities owned or affiliated with Alan Boyer ("Boyer"), Joel Plasco ("Plasco"), or the Odyssey Group (Fitzpatrick Aff., at ¶ 28).

AMP purchased three CFM56-3C1 aircraft engines (CFM 858521, CFM 727187, or CFM 727433) from Cross Ocean Aviation Fund I (INTL) 5 Designated Activity Company ("Cross Ocean"), an Irish company with offices located in Dublin, Ireland and paid in full for each of those engines (*Id.* ¶¶ 29 - 34). Neither Boyer nor Plasco negotiated the transactions with AMP relating to the purchase by AMP from Cross Ocean of the CFM 858521, CFM 727187, or CFM 727433 Engines (the "Former Cross Ocean Engines"), nor did any such negotiations take place in Miami, Florida  (*Id.* ¶ 35).  After AMP purchased the Former Cross Ocean Engines, those engines and/or their components were not serviced by Turbine Engine Center in Miami, Florida (*Id.* ¶ 36).

AMP was not obligated to make any payment to Turbine Engine Center in connection with the Former Cross Ocean Engines (*Id.* ¶ 38).

AMP purchased a CFM56-3C1 aircraft engine bearing serial number 721509 (the "CFM 721509 Engine")[2] from Dvash Aviation Holdings, LLC ("Dvash"), a company based in Maryland. (Fitzpatrick Aff., at ¶ 22).  AMP paid Dvash in full for the CFM 721509 Engine. (*Id.* ¶ 23).  AMP had no involvement with the wiring of $1,182,964.56 to Synovus Bank on or about June 23, 2020 in connection with the CFM 721509 Engine. (*Id.* ¶ 24).

AMP never invested in any of the following entities: (a) Odyssey Real Estate Holding, LLC; (b) Odyssey Engines, LLC; (c) Savana Leasing, LLC; (d) Turbine Engine Center, Inc.; (e)

---

[2]  This engine is described as the "Synovus Engine" in the Complaint.

Miami NDT, Inc.; (f) JA Aerocell, LLC; (g) AB Financial Services, LLC; (h) 8130 Acquisition Corporation, LLC; or (i) Savana Leasing, LLC (collectively, the "Odyssey Affiliate Debtors"). (*Id.* ¶ 25).

## LEGAL ARGUMENT

### I.    LEGAL STANDARD.

#### A.    Motion to Dismiss for Lack of Personal Jurisdiction.

According to the Florida Supreme Court, "[i]nitially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of the motion." *Id.* Once such affidavits are filed by the defendant, "[t]he burden is then placed on the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." *Id.*

In cases where the affidavits can be harmonized, "the court will be in a position to make a decision based upon facts which are essentially undisputed." *Id.* at 503. However, when the affidavits cannot be reconciled the Florida Supreme Court held that "the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue." *Id.*

#### B.    Personal Jurisdiction Analysis.

It is settled law that "[i]n Florida, a well-established, two-pronged inquiry is used to determine whether personal jurisdiction is appropriate . . . . 'First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of' Florida's long-arm statute . . . '[I]f it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.'" *Meyer Werft GmbH & Co. v. Humain*, 305

So. 3d 657, 660 (Fla. 3d DCA 2020) (citing *Venetian Salami*, 554 So. 2d at 502); *see also Team Health Holdings, Inc. v. Caceres*, 357 So. 3d 746, 749 (Fla. 3d DCA 2023) (*citing Venetian Salami¸* 554 So. 2d at 501-02).

## II.     THIS COURT LACKS GENERAL PERSONAL JURISDICTION OVER AMP

### A.     <u>Standard to Assert General Personal Jurisdiction over a Defendant</u>.

Preferred claims a basis for personal jurisdiction over AMP based on Fla. Stat. 48.193(2), which states as follows:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

*Id.* To satisfy the "substantial and not isolated activity within this state" portion of this standard, "the trial court must consider 'whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.'" *Piazenko v. Pier Marine Interiors GmbH*, 314 So. 3d 438, 444-45 (Fla. 3d DCA 2020) (quoting *Venetian* Salami, 554 So. 2d at 502).

Similarly, Preferred claims that AMP is subject to general personal jurisdiction pursuant to newly-revised Fla. Stat. § 48.181(5), which provides that:

> Any . . . foreign business entity that sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any individual, corporation, or other business entity in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

*Id.* However, just like the Florida Supreme Court determined with regard to Fla. Stat. § 48.193, the enacting of a statute by the legislature may have "determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned" however "[i]t has not

specifically addressed whether the federal constitutional requirements of minimum contacts have been met." *Venetian Salami*, 554 So. 2d at 500. "As a practical matter, it could not do so because each case will depend upon the facts." *Id.*

"Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." *Piazenko*, 314 S. 3d at 445 (quoting *Venetian* Salami, 554 So. 2d at 502).

In *Daimler AG v. Bauman*, the United States Supreme Court concluded that, in regard to a corporation, the "paradigm bases for general jurisdiction" are its "place of incorporation and principal place of business."  571 U.S. 117, 137 (2014) (citation and quotation marks omitted). The Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping."  *Id.* at 138.  The Supreme Court stated it will be an "exceptional case" where a corporation's operations in a state other than its formal place of incorporation or principal place of business render it "at home" in that state; that exceptional case occurs only where the defendant's operations are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

**B.**       **The Complaint Fails to Demonstrate That AMP Is "At Home" in Florida.**

There is no basis for Preferred to claim that AMP is "at home" in Florida.

AMP is a company incorporated in Ireland with its principal place of business located in Dublin, Ireland.  (Fitzpatrick Aff., at ¶ 3). AMP is independently owned and is not a subsidiary of Sideral, nor is Sideral a subsidiary of AMP (*Id.* ¶¶ 4-5).  AMP is in the business of owning and leasing aircraft engines.  (*Id.* ¶ 6).  AMP has only one office and that is located in Dublin, Ireland (*Id.* ¶ 7). AMP does not have any office, mailing address, or telephone number in Florida (*Id.* ¶ 8).

All of AMP's business is transacted out of Dublin, Ireland (*Id.* ¶ 9).  AMP does not own, lease, or otherwise occupy any real property in Florida.  (*Id.* ¶ 10.). AMP does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida.  (*Id*. ¶ 11). AMP has not contracted to insure any person, property, or risk located in Florida.  (*Id.* ¶ 12). AMP does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida. (*Id.* ¶ 13).  Michael Fereirra resides in the State of Florida and is a two percent (2%) owner of AMP, but does not act as for AMP as an agent or representative. (*Id.* ¶ 27).  AMP has not engaged in substantial or significant solicitation or services within Florida. (*Id.* ¶ 14).  AMP has not entered into any contract to be performed in Florida.  (*Id.* ¶ 15).  AMP does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida.  (*Id.* ¶ 16).  AMP has not engaged in substantial and not isolated activity within Florida, either interstate or intrastate. (*Id.* ¶ 17).  In the course of its business AMP acquires engines from sellers in many different countries. On a few occasions, AMP acquired engines from a seller based in Florida or had to arrange to pick up an engine in Florida, but has never sold any engines in Florida. (*Id.* ¶ 18).

AMP has not entered into agreements and transactions with entities owned or affiliated with Boyer, Plasco, or the Odyssey Group (Fitzpatrick Aff., at ¶ 28).

AMP purchased three CFM56-3C1 aircraft engines (CFM 858521, CFM 727187, or CFM 727433) from Cross Ocean, an Irish company with offices located in Dublin, Ireland and paid in full for each of those engines (*Id.* ¶¶ 29 - 34). Neither Boyer nor Plasco negotiated the transactions with AMP relating to the purchase by AMP from Cross Ocean of the Former Cross Ocean Engines, nor did any such negotiations take place in Miami, Florida  (*Id.* ¶ 35).  After AMP purchased the

Former Cross Ocean Engines, those engines and/or their components were not serviced by Turbine Engine Center in Miami, Florida (*Id.* ¶ 36).

AMP was not obligated to make any payment to Turbine Engine Center in connection with the Former Cross Ocean Engines (*Id.* ¶ 38).

These undisputed facts make it clear that sufficient minimum contacts do not exist between AMP and Florida and it would not be foreseeable that this conduct by AMP will result in AMP being subject to personal jurisdiction in Florida.  AMP did not purposefully avail itself of the privileges and protections of the State of Florida.  *Piazenko*, 314 S. 3d at 445 (quoting *Venetian Salami*, 554 So. 2d at 502).  The fact that a two percent (2%) owner of AMP resides in the State of Florida does not create personal jurisdiction over AMP. *See, e.g., Henderson v. Elias*, 56 So. 3d 86, 90 (Fla. 4th DCA 2011) ("The fact that the corporation's two shareholders would be subject to personal jurisdiction in Florida in their individual capacities does not create personal jurisdiction over the corporation.").  Even ordering goods from a Florida corporation is insufficient to subject AMP to personal jurisdiction in Florida. *See Alan Richard Textiles, Ltd. V. Vertilux, Inc.,* 627 So. 2d 529, 530 (Fla. 3d DCA 1994) ("fact that Alan Richard ordered goods from a Florida corporation is not sufficient to establish minimum contacts with Florida so as to allow Alan Richard to be sued in Florida").

As to the allegation regarding the consignment of engines to a Florida entity (Complaint, at ¶ 23) in an effort to attempt to assert general long-arm jurisdiction based on Fla. Stat. § 48.181(5), the sworn facts are that AMP did not consign to the Florida company AeroAcq Partners, LLC, two CFM56-B model engines affixed to a 1991 Boeing 737-300QC model aircraft offered for sale in Miramar, Florida. (Fitzpatrick Aff., at ¶ 21).  Sideral is attempting to sell the 1991 Boeing 737-300QC model aircraft, not AMP. (Adorno Aff., at ¶ 3). Prospective purchasers of the

1991 Boeing 737-300QC contact Sideral, in Brazil, by telephone or e-mail regarding the aircraft. (*Id.* ¶ 4). Nor did AMP consign the Former Cross Ocean Engines to Turbine Engine Center or any other entity affiliated with Boyer or Plasco for storage or service in Miami, Florida (*Id.* ¶ 37).

Moreover, even if we accept as true the allegation that AMP, through Sideral, consigned such engines (which it did not do), such allegations, even if true, do not establish that AMP is "at home" in Florida for purposes of satisfying the federal constitutional requirements of minimum contacts. *See Venetian Salami*, 554 So. 2d at 500. AMP and Sideral are separate companies (Fitzpatrick Aff., at ¶¶ 4-5). A single transaction in Florida does not establish presence in the state for purposes of general jurisdiction, certainly when the United States Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping." *Daimler*, 571 U.S. at 138. Moreover, nothing about these alleged transactions, even if true, would make it foreseeable that AMP's conduct will result in suit in the forum state unrelated to any alleged consignment and establish the purposeful availment by AMP of the privileges and protections of Florida. *See Piazenko*, 314 S. 3d at 445.

As to the allegations regarding lawsuits involving Emirates International Air Cargo, LLC (Complaint, at ¶¶ 75-77) and Goitia Group Capital Partners, LLC (Complaint, at ¶¶ 78-81), neither involved AMP. Moreover, even if it had involved AMP (which it does not), the factual matters at issue in those lawsuits would not make it foreseeable that AMP purposefully availed itself of the privileges and protections of Florida. *See Piazenko*, 314 S. 3d at 445.

Preferred failed to set forth a *prima facie* case of general jurisdiction over AMP in Florida. Because AMP is not "at home" in Florida, and because this is not an exceptional case, this Court lacks general personal jurisdiction over AMP.

### III.     THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER AMP.

#### A.     <u>Standard to Assert Specific Personal Jurisdiction over a Defendant</u>.

"A Florida court may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida." *Piazenko*, 314 So. 3d at 443. "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida.'" *Id.* (citations omitted).

Preferred claims a basis for specific personal jurisdiction over AMP based upon the following provisions of Fla. Stat. 48.193(1)(a):

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself…to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2.  Committing a tortious act within this state.
>
> * * *
>
> 9.  Entering into a contract that complies with § 685.102.

Fla. Stat. § 48.193(1)(a).  Florida courts are required to "strictly construe" the provisions of the long-arm statute. *Estes v. Rodin*, 259 So. 3d 183, 191 (Fla. 3d DCA 2018).

#### B.     <u>The Complaint Fails to Satisfy The Requirements for Specific Jurisdiction in Florida.</u>

The Complaint alleges that this Court has specific jurisdiction over AMP "because this action arises from [AMP] engaging in business and causing tortious acts within Florida, and

because this action relates to a contract designating Florida choice of law and jurisdiction in the courts of Florida." Complaint, at ¶ 22.

As to Fla. Stat. § 48.193(1)(a)(1), AMP is not engaging in any business venture in Florida and does not have any office in Florida (Fitzpatrick Aff., at ¶¶ 7-8). All of AMP's business is transacted out of Dublin, Ireland (*Id.* ¶ 9). AMP does not own, lease, or otherwise occupy any real property in Florida. (*Id.* ¶ 10). AMP does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida. (*Id.* ¶ 11). AMP has not contracted to insure any person, property, or risk located in Florida. (*Id.* ¶ 12). AMP does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida. (*Id.* ¶ 13). Michael Fereirra resides in the State of Florida and .is a two percent (2%) owner of AMP, but does not act as for AMP as an agent or representative. (*Id.* ¶ 27).

It is settled law that specific jurisdiction requires allegations that the defendant did one of the enumerated actions within Florida <u>and</u> that the plaintiff's cause of action arises from such actions – which is "known as the statute's connexity requirement." *Piazenko*, 314 So. 3d at 443-44. The undisputed facts make it clear that Preferred failed to satisfy the requirements of Fla. Stat. § 48.193(1)(a)(1). Preferred failed to demonstrate any "connexity" between any such business venture or office/agency of AMP in Florida and the claim regarding the alleged conspiracy to convert the CFM Engine.

As to Fla. Stat. § 48.193(1)(a)(2), while unclear from the allegations in the Complaint, we presume that the alleged "tortious act" relates to the alleged "conspiracy" to convert the CFM Engine on which Preferred claims to have a security interest. In response to this baseless allegation, AMP first states that it did not enter into any agreement with any person or entity with

regard to the CFM Engine. (Fitzpatrick Aff., at ¶ 20).  Moreover, although specific personal jurisdiction may be extended to a nonresident defendant through a co-conspirator theory, the Third District Court of Appeal declined to utilize the co-conspirator theory to establish personal jurisdiction "if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *Condor v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. 3d DCA 2022) (*citing NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. 4th DCA 2012)). In *Condor* the complaint alleged a conspiracy among other defendants, but "failed to make the requisite clear, positive and specific allegations of Condor's participation in the conspiracy." *Id.* The complaint in that case, at most, alleged a routine business practice to sell product, but failed to contain "any specific allegations detailing Condor's knowledge or, and participation in, the . . . scheme . . . between [the other defendants]." *Id.* The Complaint in this case, at most, alleges actions taken by co-defendants Boyer and Plasco regarding the CFM Engine, but fails to allege any action taken by AMP with regard to any alleged conspiracy to convert the CFM Engine. The allegations in this Complaint are even less than was the case in the *Condor* opinion. As such, Preferred is unable to establish specific personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(2).

As to Fla. Stat. § 48.193(1)(a)(9), the Complaint fails to even attempt to allege any contract AMP entered into with Preferred in which it "agree[d] to submit to the jurisdiction of the courts of this state." Fla. Stat. § 605.102(1). Indeed, there is no such contract AMP entered into with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida. (Fitzpatrick Aff., at ¶ 26).

Accordingly, the Complaint fails to provide a sufficient basis for this Court to conclude the long-arm statute is satisfied and to assert specific personal jurisdiction over AMP.  Because the

facts, as they exist now, would not survive a motion for a directed verdict on personal-jurisdiction grounds, this Court should conclude it lacks specific personal jurisdiction over AMP.

## IV. EXERCISING JURISDICTION OVER AMP WOULD OFFEND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Even if this Court could conclude that AMP's alleged conduct falls within the scope of Florida's long-arm statute (which it does not), it should still decline to assert jurisdiction.

As the United States Supreme Court explained in *Walden v. Fiore*, for a state to exercise jurisdiction consistent with due process, "the *defendant's* suit-related conduct must create a substantial connection with the forum State." 571 U.S. 277, 284 (2014) (emphasis added). The Court in *Walden* articulated two rules for a district court's minimum contacts analysis that are important here.

First, the relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). There are no such allegations in the Complaint and there are no facts which would support such allegations.

Second, the minimum-contacts analysis must look to the defendant's contacts with the forum state itself, "not the defendant's contacts with persons who reside there." *Id.* (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The plaintiff cannot be the only link between the defendant and the forum. *Id.* "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86 (*citing Burger King*, 471 U.S. at 478). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (*citing Burger King*, 471 U.S. at 475). "These same principles apply when

intentional torts are involved." *Id.* In that context, too, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

The allegations in the Complaint concerning AMP's alleged conduct do not satisfy any prong of the minimum-contacts test as established by the United States Supreme Court.

First, Preferred failed to allege any action taken by AMP *in Florida*. Indeed, as to any of the bare-bones allegations with regard to AMP, none of them constitute a purposeful decision to avail itself of the privileges of conducting business in Florida.

Moreover, Preferred fails to satisfy the second test in *Walden* because the connections it attempts to infer between AMP and Florida arise almost entirely out of alleged dealings with individuals or entities who may have some contact with the State of Florida, but not between AMP and the State of Florida itself.

The factors relevant to whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice are: (1) the defendant's burden in defending the case in the forum state, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in resolving disputes in the most efficient way, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476-77.

AMP would face a large financial burden if forced to defend a lawsuit in Florida, an ocean away from its place of incorporation and its principal place of business. Witnesses and documents relating to the business of AMP are located outside of Florida. Moreover, Florida has little interest in resolving a dispute between a California banking corporation and an Irish company regarding

an aircraft engine located in Brazil, to the extent Preferred can come up with factual allegations to even allege a basis for jurisdiction pursuant to the Florida long-arm statute.

## **CONCLUSION**

WHEREFORE, the Defendant AMP Leasing Ltd. respectfully requests that this Court grant the Motion and dismiss the Amended Complaint as to AMP Leasing Ltd. with prejudice, together with granting attorneys' fees and costs to the maximum amount permitted by law, and such other and further relief as to this Court appears just and proper.

Respectfully submitted,

**BROWN ROBERT, LLP**
*Attorneys for AMP Leasing Ltd.*
150 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone:     954-832-9400
Facsimile:     954-832-9430

By:     /s/  *Seth P. Robert*
        Seth P. Robert
        srobert@brownrobert.com
        Florida Bar No. 145696
        Connis O. Brown, III
        cbrown@brownrobert.com
        Florida Bar No. 641960

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was electronically filed with the Court and served by e-mail on this 9th day of June, 2023 upon:

Leyza F. Blanco, Esq.
Caroline Herter, Esq.
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
E-mail: lblanco@sequorlaw.com
E-mail: cherter@sequorlaw.com

Jerry Breslin, Esq.
Schwartz | Breslin PLLC
The DuPont Building
169 East Flagler Street, Suite 700
Miami, Florida 33131
Telephone: 305-577-4626
E-mail: JB@JSJB.Law
E-mail: Eservice@JSJB.Law

/s/ *Seth P. Robert*
Seth P. Robert