**EXHIBIT 2**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-002860-CA-01
SECTION: CA07
JUDGE: Daryl E. Trawick

**PREFERRED BANK**

Plaintiff(s)

vs.

**SIDERAL LINHAS AEREAS LTDA et al**

Defendant(s)

_____/

## ORDER ON (1) AMP LEASING LTD. MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION [DIN 32] AND (2) SIDERAL LINHAS AEREAS LTDA. MOTION TO QUASH SERVICE AND DISMISS BASED ON LACK OF PERSONAL JURISDICTION [DIN 44]

THIS CAUSE, having come before the Court on the (1) AMP Leasing Ltd. ("AMP") Motion to Dismiss Based on Lack of Personal Jurisdiction ("AMP Motion") (DIN 32) and (2) Sideral Linhas Aereas Ltda. ("Sideral") Motion to Quash Service and Dismiss Based on Lack of Personal Jurisdiction ("Sideral Motion") (DIN 44), and the Court having considered the AMP Motion, the Sideral Motion, the Affidavits of Declan Fitzpatrick ("Mr. Fitzpatrick") and Paulo Adorno ("Mr. Adorno"), the testimony of Mr. Fitzpatrick and Christian Pegoraro ("Mr. Pegoraro") at the hearings held on February 12, 2024 and April 10, 2024, the exhibits admitted into evidence at the hearings, the arguments of counsel, and being otherwise duly advised in the premises, the Court rules as follows:

## I. PERSONAL JURISDICTION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

According to the Florida Supreme Court, "[i]nitially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the

statute without pleading the supporting facts." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of the motion." *Id.* Once such affidavits are filed by the defendant, "[t]he burden is then placed on the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." *Id.*

In cases where the affidavits can be harmonized, "the court will be in a position to make a decision based upon facts which are essentially undisputed." *Id.* at 503. However, when the affidavits cannot be reconciled the Florida Supreme Court held that "the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue." *Id.*

In this case, the Plaintiff did not submit any affidavits in opposition to the affidavits of Mr. Fitzpatrick and Mr. Adorno submitted by AMP and Sideral in support of the AMP Motion and Sideral Motion.

### B.    Personal Jurisdiction Analysis

"In Florida, a well-established, two-pronged inquiry is used to determine whether personal jurisdiction is appropriate . . . . 'First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of' Florida's long-arm statute . . . '[I]f it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.'" *Meyer Werft GmbH & Co. v. Humain*, 305 So. 3d 657, 660 (Fla. 3d DCA 2020) (citing *Venetian Salami*, 554 So. 2d at 502); *see also Team Health Holdings, Inc. v. Caceres*, 357 So. 3d 746, 749 (Fla. 3d DCA 2023) (*citing Venetian Salami*¸ 554 So. 2d at 501-02).

## II.    THIS COURT LACKS LONG-ARM GENERAL PERSONAL JURISDICTION OVER AMP AND SIDERAL

### A.    General Personal Jurisdiction

Preferred claims a basis for personal jurisdiction over AMP and Sideral based on Fla. Stat.

48.193(2), which states as follows:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

*Id.* To satisfy the "substantial and not isolated activity within this state" portion of this standard, "the trial court must consider 'whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.'" *Piazenko v. Pier Marine Interiors GmbH*, 314 So. 3d 438, 444-45 (Fla. 3d DCA 2020) (quoting *Venetian* Salami, 554 So. 2d at 502).

Similarly, Preferred claims that AMP and Sideral are subject to general personal jurisdiction pursuant to newly-revised Fla. Stat. § 48.181(5), which provides that:

> Any . . . foreign business entity that sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any individual, corporation, or other business entity in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

*Id.* However, just like the Florida Supreme Court determined with regard to Fla. Stat. § 48.193, the enacting of a statute by the legislature may have "determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned" however "[i]t has not specifically addressed whether the federal constitutional requirements of minimum contacts have been met." *Venetian Salami*, 554 So. 2d at 500. "As a practical matter, it could not do so because each case will depend upon the facts." *Id.*

"Factors that go into determining whether sufficient minimum contacts exist include the

CFN: 20240289355 BOOK 34182 PAGE 1555

foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." *Piazenko*, 314 S. 3d at 445 (quoting *Venetian* Salami, 554 So. 2d at 502); *see also Travel Ins. Facilities, PLC v. Naples Community Hosp., Inc.*, 2023 WL 3668687, at *3 (Fla. 6th DCA May 26, 2023) (same).

In *Daimler AG v. Bauman*, the United States Supreme Court concluded that, in regard to a corporation, the "paradigm bases for general jurisdiction" are its "place of incorporation and principal place of business." 571 U.S. 117, 137 (2014) (citation and quotation marks omitted). The Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping." *Id.* at 138. The Supreme Court stated it will be an "exceptional case" where a corporation's operations in a state other than its formal place of incorporation or principal place of business render it "at home" in that state; that exceptional case occurs only where the defendant's operations are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

### B.   AMP Is Not "At Home" in Florida

AMP is a company incorporated in Ireland with its principal place of business located in Dublin, Ireland (Tr. 10:12-13). AMP is in the business of acquiring, owning, and leasing aircraft engines (Tr. 10:9-11). AMP is independently owned and is not a subsidiary of Sideral, a Brazilian company (Tr. 10:16-20). Sideral is a client of AMP (Tr. 10:21-23).

AMP has only one office and that is located in Dublin, Ireland (Tr. 11:15-19). AMP does not have any office, mailing address, or telephone number in Florida (Tr. 11:20-22). All of AMP's official business is transacted out of Dublin, Ireland (Tr. 11:23-25). AMP does not own, lease, or otherwise occupy any real property in Florida (Tr. 12:1-3). AMP does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident

agent in Florida (Tr. 12:4-17). AMP has not contracted to insure any person, property, or risk located in Florida (Tr. 12:18-20). AMP does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida (Tr. 12:21-24). AMP has not engaged in substantial or significant solicitation or services within Florida (Tr. 12:25 – 13:2). AMP has not entered into any contract to be performed in Florida (Tr. 13:3-6). AMP does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida (Tr. 13:7-11).

In the course of its business AMP acquires engines from sellers in many different countries (Tr. 13:12-14). On a few occasions, AMP acquired engines from a seller based in Florida or had to arrange to pick up an engine in Florida (Tr. 13:15-22). AMP has never sold any engines in Florida (Tr. 13:23-25).

AMP has no record of any purchase, sale, lease, sublease, or similar transaction involving a CFM56-3C1 aircraft engine bearing serial number 856479 (the "CFM Engine") (Tr. 14:5-11). AMP did not consign to the Florida company AeroAcq Partners, LLC, two CFM56-B model engines affixed to a 1991 Boeing 737-300QC model aircraft offered for sale in Miramar, Florida (Tr. 14:12-17).

AMP purchased a CFM56-3C1 aircraft engine bearing serial number 721509 (the "CFM 721509 Engine") from Dvash Aviation Holdings, LLC ("Dvash"), a company based in Maryland (Tr. 14:18-20). AMP paid Dvash in full for the CFM 721509 Engine (Tr. 14:21-23).

AMP had no involvement with the wiring of approximately $1.1 million to Synovus Bank on or about June 23, 2020 in connection with CFM56-3C1 aircraft engine bearing serial number 721509 (the " CFM 721509 Engine") (Tr. 14:24 – 15:4).

AMP never invested in any of the following entities: (i) Odyssey Real Estate Holding, LLC; (ii) Odyssey Engines, LLC; (iii) Savanna Leasing, LLC; (iv) Turbine Engine Center, Inc.; (v)

Miami NDT, Inc.; (vi) JA Aerocell, LLC; (vii) AB Financial Services, LLC; (viii) 8130 Acquisition Corporation, LLC; or (ix) Savanna Leasing, LLC (collectively, the "Odyssey Affiliate Debtors") (Tr. 15:5-24).

AMP has not entered into any contract with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida (Tr. 15:25 – 16:3).

Michael Fereirra ("Mr. Fereirra") resides in the State of Florida and is a two percent (2%) owner of AMP (Tr. 16:4-10).  Mr. Fereirra does not act as for AMP as an agent or representative (Tr. 16:11-13).

AMP has not entered into agreements and transactions with entities owned or affiliated with Alan Boyer ("Boyer"), Joel Plasco ("Plasco"), or the Odyssey Group (Tr. 16:14-17).

AMP purchased three engines from Cross Ocean (Tr. 16:18-20).  AMP paid Cross Ocean in full for the three engines (Tr. 16:21-22).  Neither Boyer nor Plasco negotiated the transactions with AMP relating to the purchase by AMP from Cross Ocean of the three engines (Tr. 16:23-25).  The negotiations regarding the purchase of the three engines from Cross Ocean did not take place in Miami, Florida (Tr. 17:1-4).  After AMP purchased the engines from Cross Ocean, those engines and/or their components were not serviced by in Miami, Florida (Tr. 17:5-7).  AMP did not consign the Former Cross Ocean Engines to Turbine Engine Center ("TEC") or any other entity (Tr., 17:8-11).  AMP was not obligated to make any payment to TEC (Tr. 17:12-14).

These undisputed facts make it clear that sufficient minimum contacts do not exist between AMP and Florida and it would not be foreseeable that this conduct by AMP will result in AMP being subject to personal jurisdiction in Florida.  AMP did not purposefully avail itself of the privileges and protections of the State of Florida. *Piazenko*, 314 S. 3d at 445 (quoting *Venetian Salami*, 554 So. 2d at 502).  The fact that a two percent (2%) owner of AMP resides in the State of

Florida does not create personal jurisdiction over AMP. *See, e.g., Henderson v. Elias*, 56 So. 3d 86, 90 (Fla. 4th DCA 2011) ("The fact that the corporation's two shareholders would be subject to personal jurisdiction in Florida in their individual capacities does not create personal jurisdiction over the corporation."). Even ordering goods from a Florida corporation is insufficient to subject AMP to personal jurisdiction in Florida. *See Alan Richard Textiles, Ltd. V. Vertilux, Inc.,* 627 So. 2d 529, 530 (Fla. 3d DCA 1994) ("fact that Alan Richard ordered goods from a Florida corporation is not sufficient to establish minimum contacts with Florida so as to allow Alan Richard to be sued in Florida").

As to the allegation regarding the consignment of engines to a Florida entity (Complaint, at ¶ 23) in an effort to attempt to assert general long-arm jurisdiction based on Fla. Stat. § 48.181(5), the unrebutted testimony is that AMP did not consign to the Florida company AeroAcq Partners, LLC, two CFM56-B model engines affixed to a 1991 Boeing 737-300QC model aircraft offered for sale in Miramar, Florida. (Tr. 14:12-17).

Nor did AMP consign the Former Cross Ocean Engines to TEC or any other entity affiliated with Boyer or Plasco for storage or service in Miami, Florida (Tr. 17:8-11). Moreover, even if the Court accepts as true the allegation that AMP, through Sideral, consigned such engines (which it did not do), such allegations do not establish that AMP is "at home" in Florida for purposes of satisfying the federal constitutional requirements of minimum contacts. *See Venetian Salami*, 554 So. 2d at 500. AMP and Sideral are separate companies (Tr. 10:16-20; 29:6-9). A single transaction in Florida does not establish presence in the state for purposes of general jurisdiction, certainly when the United States Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping." *Daimler,* 571 U.S. at 138. Moreover, nothing about these alleged transactions, even if true, would make it foreseeable that AMP's conduct will result in suit in the forum state unrelated to any alleged consignment and establish the

purposeful availment by AMP of the privileges and protections of Florida. *See Piazenko*, 314 S. 3d at 445.

Preferred failed to set forth a *prima facie* case of general jurisdiction over AMP in Florida. Because AMP is not "at home" in Florida, and because this is not an exceptional case, this Court lacks general personal jurisdiction over AMP.

### C.      Sideral Is Not "At Home" in Florida

There is no factual basis for Preferred to claim that Sideral is "at home" in Florida. Sideral is a Part 121 airline that flies cargo and passenger flights (Tr. 28:11-13). Sideral is a company incorporated in Brazil with its principal place of business in Brazil (Tr. 28:14-19). The only business relationship between Sideral and AMP is that AMP leases some aeronautical engines to Sideral (Tr. 29:2-5). AMP is not a subsidiary of Sideral (Tr. 29:6-7). Sideral is not a subsidiary of AMP (Tr. 29:8-9).

Sideral has around 12 or 14 offices all located in Brazil (Tr. 28:20-23). Sideral does not have any offices located outside of Brazil (Tr. 28:24 – 29:1). Sideral does not have any office, mailing address, or telephone number in Florida (Tr. 29:10-12). All of Sideral's business is transacted out of Brazil. Although Sideral received approval from the United States Department of Transportation regarding potential future flights into the United States (not specifically Florida), it has not received the other required permission from the Federal Aviation Administration ("FAA"), Transportation Safety Administration ("TSA"), and Customs and Border Protection ("CBP"), necessary to fly into the United States. To date, Sideral has not made any flights into the United States.

Sideral does not own, lease, or otherwise occupy any real property in Florida (Tr. 29:13-15). Sideral does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid

Florida taxes, and does not have a resident agent in Florida (Tr. 29:16 – 30:5). Sideral has not contracted to insure any person, property, or risk located in Florida (Tr. 30:6-8). Sideral does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida (Tr. 30:9-15). Sideral has not engaged in substantial or significant solicitation or services within Florida (Tr. 30:16-19). Sideral has not entered into any contract to be performed in Florida (Tr. 30:20-22). Sideral does not transact substantial business in Florida or otherwise engage in any substantial business activity that targets Florida such that it has availed itself of the laws of Florida (Tr. 30:23 – 31:3).

In the course of its business Sideral purchases parts from sellers in many different places in the world, including Florida (Tr. 31:4-7). All of the parts purchased by Sideral are then delivered for use in Brazil (Tr. 31:8-10). Sideral has never sold any products or performed any of its services in the State of Florida (Tr. 31:11-13).

On or about April 12, 2018 Sideral entered into an Engine Sale and Purchase Agreement (the "Engine Purchase Agreement") with JMD, a Delaware company with an address in New York (Tr. 31:14-17) (Defendant's Exhibit A). JMD is owned by Plasco (Tr. 31:18-20). Pursuant to the Engine Purchase Agreement, Sideral agreed to purchase from JMD the CFM Engine at issue in this case (Tr. 33:10-13). Sideral agreed to pay JMD the total purchase price of $1,253,700 (Tr. 33:17-20). Sideral made all of those payments to JMD (Tr. 33:21-22). All of the payments for the CFM Engine were sent to a bank in New York (Tr. 33:23 -34:8). All of the payments were made for the benefit of JMD (Tr. 34:5-8). The CFM Engine was delivered to Sideral in June 2018 (Tr. 34:9-16). The parties were not permitted to assign the Engine Purchase Agreement to somebody else without the express permission of the other party (Tr. 34:17-21). Sideral never provided its express written consent for JMD to assign the engine purchase agreement (Tr. 34:22-25). The Engine Purchase Agreement stated that it was governed by the laws of the State of Florida (Tr. 35:1-3). If Sideral had a dispute with JMD regarding this transaction, it would be governed by the laws of the

State of Florida (Tr. 35:11-14). The parties agreed that any actions or proceedings initiated by Sideral or JMD arising out of the Engine Purchase Agreement shall be subject to the exclusive jurisdiction of the Florida state courts (Tr. 35:15-17). There has been no dispute initiated by either Sideral or JMD arising out of the Engine Purchase Agreement (Tr. 35:18-21). All of the payments were made to JMD pursuant to this Engine Purchase Agreement (Tr. 35:22-24). Although Sideral entered into an Engine Purchase Agreement with JMD, the contract does not require Sideral to perform acts in Florida which would subject it to jurisdiction (Tr. 31:14-17; 33:10-13; 33:17 – 34:16; 35:22-24; 37:7-8).

On or about June 20, 2020, JMD executed a Bill of Sale transferring title of the CFM Engine to Sideral (Tr. 36:24 – 37:2) (Defendant's Exhibit B).

The Engine is being used by Sideral in Brazil (Tr. 37:7-8).

Sideral had no involvement with the wiring of approximately $1.1 million to Synovus Bank on or about June 23, 2020 in connection with the CFM 721509 Engine (Tr. 37:24 – 38:4).

Sideral never invested in any of the Odyssey Affiliate Debtors (Tr. 38:5-23).

Sideral has not entered into any contract with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida (Tr. 38:24 – 39:2).

Mr. Fereirra does not own any portion of Sideral and does not act for Sideral as an agent or representative (Tr. 39:3-8).

Sideral did not have aircraft engines serviced at TEC in Miami, Florida (Tr. 39:9-11).

Sideral did not consign two CFM56 engines on a Boeing 737 aircraft to a Florida company, AeroAcq (Tr. 39:12-16).

These undisputed facts make it clear that sufficient minimum contacts do not exist between

Sideral and Florida and it would not be foreseeable that this conduct by Sideral will result in Sideral being subject to personal jurisdiction in Florida. Sideral did not purposefully avail itself of the privileges and protections of the State of Florida. *Piazenko*, 314 S. 3d at 445 (quoting *Venetian Salami*, 554 So. 2d at 502); *see also Travel Ins. Facilities, PLC*, 2023 WL 3668687, at *3 (no purposeful availment of conducting activities in Florida because defendant had no offices, employees, or property in Florida).

Ordering goods from a Florida corporation is insufficient to subject Sideral to personal jurisdiction in Florida. *See Alan Richard Textiles, Ltd.,* 627 So. 2d at 530. "[P]urchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those transactions." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 418.

Further, Sideral has not consigned any engine to any Florida entity (Tr. 39:12-16). Even if we accept as true the allegation that Sideral consigned such engines (which it did not do), such allegations, if true, do not establish that Sideral is "at home" in Florida for purposes of satisfying the federal constitutional requirements of minimum contacts. *See Venetian Salami*, 554 So. 2d at 500. A single transaction in Florida does not establish presence in the state for purposes of general jurisdiction, certainly when the United States Supreme Court in *Daimler* rejected the argument that a corporation is "at home" in every state in which it engages in a substantial, continuous, and systematic course of business as "unacceptably grasping." *Daimler,* 571 U.S. at 138. Moreover, nothing about these alleged transactions would make it foreseeable that Sideral's conduct will result in suit in the forum state unrelated to any alleged consignment and establish the purposeful availment by Sideral of the privileges and protections of Florida. *See Piazenko*, 314 S. 3d at 445.

Preferred failed to set forth a *prima facie* case of general jurisdiction over Sideral in Florida. Because Sideral is not "at home" in Florida, and because this is not an exceptional case, this Court lacks general personal jurisdiction over Sideral.

### III.   THIS COURT LACKS LONG-ARM SPECIFIC PERSONAL JURISDICTION OVER AMP AND SIDERAL

#### A.   Specific Personal Jurisdiction

"A Florida court may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida." *Piazenko*, 314 So. 3d at 443. "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida.'" *Id.* (citations omitted).

Preferred claims a basis for specific personal jurisdiction based upon the following provisions of Fla. Stat. 48.193(1)(a):

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself…to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2.  Committing a tortious act within this state.
>
>           \* \* \*
>
> 9.  Entering into a contract that complies with § 685.102.

Fla. Stat. § 48.193(1)(a). Florida courts are required to "strictly construe" the provisions of the long-arm statute. *Estes v. Rodin*, 259 So. 3d 183, 191 (Fla. 3d DCA 2018). The facts demonstrating the lack of specific personal jurisdiction were set forth above in discussing the lack of general jurisdiction over Sideral and AMP. *See* Points II(B) and II(C).

#### B.   The Court Lacks Specific Jurisdiction Over AMP in Florida

As to Fla. Stat. § 48.193(1)(a)(1), AMP is not engaging in any business venture in Florida and does not have any office in Florida (Tr. 11:15-22).  All of AMP's official business is transacted out of Dublin, Ireland (Tr. 11:23-25).  AMP does not own, lease, or otherwise occupy any real property in Florida.  (Tr. 12:1-3). AMP does not have any offices in Florida, is not licensed or authorized to do business in Florida, does not maintain any records, bank accounts, or other accounts in Florida, has never paid Florida taxes, and does not have a resident agent in Florida. (Tr. 12:4-17). AMP has not contracted to insure any person, property, or risk located in Florida. (Tr 12:18-20). AMP does not own, use, possess, or hold a mortgage or other lien on any real property located in Florida. (Tr. 12:21-24).  Michael Fereirra resides in the State of Florida and .is a two percent (2%) owner of AMP, but does not act as for AMP as an agent or representative. (Tr. 16:4-13).  All of the allegations of Preferred with regard to the Engine Purchase Agreement have nothing to do with AMP – because AMP has nothing to do with that engine (Tr. 14:5-11).

It is settled law that specific jurisdiction requires allegations that the defendant did one of the enumerated actions within Florida <u>and</u> that the plaintiff's cause of action arises from such actions – which is "known as the statute's connexity requirement." *Piazenko*, 314 So. 3d at 443-44. The undisputed facts make it clear that Preferred failed to satisfy the requirements of Fla. Stat. § 48.193(1)(a)(1).  Preferred failed to demonstrate any "connexity" between any such business venture or office/agency of AMP in Florida and the claim regarding the alleged conspiracy to convert the CFM Engine.

As to Fla. Stat. § 48.193(1)(a)(2), although the Amended Complaint is unclear about the alleged "tortious act" of AMP in connection with the "conspiracy" to convert the CFM Engine on which Preferred claims to have a security interest, the testimony is clear that AMP did not enter into any agreement with any person or entity with regard to the CFM Engine. (Tr. 14:5-11). Moreover, although specific personal jurisdiction may be extended to a nonresident defendant

through a co-conspirator theory, the Third District Court of Appeal declined to utilize the co-conspirator theory to establish personal jurisdiction "if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *Condor v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. 3d DCA 2022) (*citing NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. 4th DCA 2012)). In *Condor* the complaint alleged a conspiracy among other defendants, but "failed to make the requisite clear, positive and specific allegations of Condor's participation in the conspiracy." *Id.* The complaint in that case, at most, alleged a routine business practice to sell product, but failed to contain "any specific allegations detailing Condor's knowledge or, and participation in, the . . . scheme . . . between [the other defendants]." *Id.* The Amended Complaint in this case, at most, alleges actions taken by co-defendants Boyer and Plasco regarding the CFM Engine, but fails to allege any action taken by AMP with regard to any alleged conspiracy to convert the CFM Engine. The fact that Sideral is the sole customer of AMP at this time and that a director of AMP is the son of the president of Sideral is insufficient to demonstrate that Sideral and AMP entered into some conspiracy with Boyer and Plasco. The allegations in this Complaint are even less than was the case in the *Condor* opinion. As such, Preferred is unable to establish specific personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(2).

As to Fla. Stat. § 48.193(1)(a)(9), the Complaint fails to even attempt to allege any contract AMP entered into with Preferred in which it "agree[d] to submit to the jurisdiction of the courts of this state." Fla. Stat. § 605.102(1). Indeed, there is no such contract AMP entered into with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida. (Tr. 15:25 – 16:3).

Accordingly, this Court lacks specific personal jurisdiction over AMP.

## C.    The Court Lacks Specific Jurisdiction Over Sideral in Florida

As to Fla. Stat. § 48.193(1)(a)(1), Sideral is not engaging in any business venture in Florida and does not have any office in Florida (Tr. 29:13 – 31:13). All of Sideral's business is transacted out of Brazil (Tr. 28:14 - 29:1; 37:7-8).

It is settled law that specific jurisdiction requires allegations that the defendant did one of the enumerated actions within Florida <u>and</u> that the plaintiff's cause of action arises from such actions – which is "known as the statute's connexity requirement." *Piazenko*, 314 So. 3d at 443-44. The undisputed facts make it clear that Preferred failed to satisfy the requirements of Fla. Stat. § 48.193(1)(a)(1). Preferred failed to demonstrate any "connexity" between any such business venture or office/agency of Sideral in Florida and the claim asserted by Preferred regarding the alleged conspiracy to convert the CFM Engine.

As to Fla. Stat. § 48.193(1)(a)(2), the Amended Complaint is unclear about the alleged "tortious act" of Sideral in connection with the "conspiracy" to convert the CFM Engine on which Preferred claims to have a security interest. Although specific personal jurisdiction may be extended to a nonresident defendant through a co-conspirator, the Third District Court of Appeal declined to utilize the co-conspirator theory to establish personal jurisdiction "if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *Condor*, 352 So. 3d at 927. As discussed in the context of AMP, the Complaint in this case, at most, alleges actions taken by co-defendants Boyer and Plasco regarding the CFM Engine, but fails to allege any action taken by Sideral with regard to any alleged conspiracy to convert the CFM Engine. The allegations in this Complaint are even less than was the case in the *Condor* opinion. Moreover, the facts presented by Sideral establish that it entered into the Engine Purchase Agreement to acquire the CFM Engine and made full payment in connection with that acquisition (Tr. 31:14-7; 33:17-22) and that the payments were sent to a bank in New York for the benefit of JMD (Tr. 33:23 – 34:8). As such, Preferred is unable to establish specific personal jurisdiction

pursuant to Fla. Stat. § 48.193(1)(a)(2). These were, at most, routine business actions taken by Sideral. *Condor*, 352 So. 3d at 927.

As to Fla. Stat. § 48.193(1)(a)(9), the Complaint fails to even attempt to allege any contract Sideral entered into with Preferred in which it "agree[d] to submit to the jurisdiction of the courts of this state." Fla. Stat. § 605.102(1). Indeed, there is no such contract Sideral entered into with Preferred in which it agreed to submit to the jurisdiction of the courts of Florida. (Tr. 38:24 – 39:2).

The Engine Purchase Agreement (Defendant's Exhibit A) was entered between Sideral and JMD and it stated that it was governed by the laws of the State of Florida and those parties agreed that any actions or proceedings initiated by Sideral or JMD arising out of the Engine Purchase Agreement shall be subject to the exclusive jurisdiction of the Florida state courts (Tr. 35:15-17; Defendant's Exhibit A, at § 13.4). However, there has been no dispute initiated by either Sideral or JMD arising out of the Engine Purchase Agreement. (Tr. 35:18-21). Preferred would not be entitled to assert a claim pursuant to the Engine Purchase Agreement because JMD could not assign the Engine Purchase Agreement without the express without the written permission of Sideral, which was not given (Tr. 34:17-25; Defendant's Exhibit A, at § 13.12). Moreover, Preferred could never become an owner of the CFM Engine because the Engine Purchase Agreement prohibited JMD from transferring ownership absent the express written permission of Sideral, which was never given (Defendant's Exhibit A, at § 3.2).

Preferred argued to the Court that the forum selection clause in the Engine Purchase Agreement covers "third party actions just like Preferred's claims" (Response, at 4). However, that sentence in the Engine Purchase Agreement starts with the language "[t]he parties hereto [JMD and Sideral] hereby agree that all actions or proceedings initiated by either of them and arising directly or indirectly out of the Agreement will be subject to the exclusive jurisdiction of the Florida state courts . . . ." (Defendants Exhibit A, at § 13.4) (emphasis added). The final sentence of that same section reiterates that consent to jurisdiction only applies "in any action or proceeding commenced

by Lessor [JMD] or Lessee [Sideral] in any of such courts." *Id.* (emphasis added). Here, since this action was neither commenced by JMD nor Sideral, the "third party action" language does not provide a basis for jurisdiction over Sideral in an action commenced by Preferred.

The alleged claims do not arise from or relates to the Engine Purchase Agreement signed by Sideral, but rather from loan documents between Preferred and Odyssey, having nothing to do with Sideral. The Engine Purchase Agreement is neither incorporated in nor attached to the Amended Complaint as is required by Fla. R. Civ. P. 1.130. The cases cited by Preferred for the proposition that jurisdiction exists when separate "tort claims" relate to an agreement are inapplicable because in all of those cases the agreement was between the same parties involved with the tort claim and it was "foreseeable" to the contracting parties (Response, at 6-7). Here, Preferred is not a party to the Engine Purchase Agreement, and by the very terms of the Engine Purchase Agreement it would not have been foreseeable for Preferred to be an assignee, because the agreement was not assignable without "prior express written consent of the other party" (Defendants' Exhibit A, at § 13.12).

Accordingly, this Court lacks specific personal jurisdiction over Sideral.

## IV.     EXERCISING JURISDICTION OVER SIDERAL AND AMP OFFENDS THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

As the United States Supreme Court explained in *Walden v. Fiore*, for a state to exercise jurisdiction consistent with due process, "the *defendant's* suit-related conduct must create a substantial connection with the forum State." 571 U.S. 277, 284 (2014) (emphasis added). The Court in *Walden* articulated two rules for a district court's minimum contacts analysis that are important here.

First, the relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (*quoting*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). There are no such allegations in the Complaint and there are no facts which would support such allegations.

Second, the minimum-contacts analysis must look to the defendant's contacts with the forum state itself, "not the defendant's contacts with persons who reside there." *Id.* (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The plaintiff cannot be the only link between the defendant and the forum. *Id.* "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86 (*citing Burger King*, 471 U.S. at 478). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (*citing Burger King*, 471 U.S. at 475). "These same principles apply when intentional torts are involved." *Id.* In that context, too, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

In this case, Preferred failed to allege any action taken by Sideral or AMP to transact business *in Florida*. Indeed, as to any of the bare-bones allegations with regard to Sideral and AMP, none of them constitute a purposeful decision to avail itself of the privileges of conducting business in Florida.

Moreover, Preferred fails to satisfy the second test in *Walden* because the connections it attempts to infer between Sideral or AMP and Florida arise almost entirely out of alleged dealings with individuals or entities who may have some contact with the State of Florida, but not between Sideral or AMP and the State of Florida itself.

The factors relevant to whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice are: (1) the defendant's burden in defending the case in the

forum state, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in resolving disputes in the most efficient way, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476-77.

Sideral and AMP would face a large financial burden if forced to defend a lawsuit in Florida, an ocean (in the case of AMP) and a continent (in the case of Sideral) away from its place of incorporation and its principal place of business. Witnesses and documents relating to the business of Sideral and AMP are located outside of Florida. Moreover, Florida has little interest in resolving a dispute between a California banking corporation and Irish and Brazilian companies regarding an aircraft engine located in Brazil, to the extent Preferred can come up with factual allegations to even allege a basis for jurisdiction pursuant to the Florida long-arm statute.

## V.      THE COURT LACKS JURISDICTION OVER THE CFM ENGINE

Finally, the Court also lacks jurisdiction over the CFM Engine. As noted above, the CFM Engine is located in Brazil (Tr. 37:7-8). Count IV of the Amended Complaint asks the Court, among other things, to foreclose its alleged liens against the CFM Engine, to enter an order entitling Preferred to take immediate possession of the CFM Engine, to sell the CFM Engine at public or private sale, and to deliver the sale proceeds to Preferred. However, because the CFM Engine is located outside the State of Florida, the Court does not possess *in rem* jurisdiction over the CFM Engine and it cannot order the relief requested in Count IV of the Amended Complaint. Therefore, because the Court lacks personal jurisdiction over Sideral, and it also does not possess *in rem* jurisdiction over the CFM Engine, Count IV of the Amended Complaint should also be dismissed.

## VI.     CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. The AMP Leasing Ltd. Motion to Dismiss Based on Lack of Personal Jurisdiction (DIN 32) is GRANTED;

2. The Sideral Linhas Aereas Ltda. ("Sideral") Motion to Quash Service and Dismiss Based on Lack of Personal Jurisdiction (DIN 44) is GRANTED, in part, and Sideral is dismissed for lack of personal jurisdiction. The Defendant Sideral withdrew that portion of the motion relating to quashing service of process, based on the Notice of Filing Return of Service on April 8, 2024 indicating service on Sideral in Brazil pursuant to the Hague Convention.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>15th day of April, 2024</u>.

2023-002860-CA-01 04-15-2024 10:23 PM
Hon. Daryl E. Trawick

**CIRCUIT COURT JUDGE**
Electronically Signed

---

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS
FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

---

**Electronically Served:**
Alan Boyer, aboyer8721@gmail.com
Jerrell Andrew Breslin, jb@jsjb.law
Jerrell Andrew Breslin, eservice@jsjb.law
Jerrell Andrew Breslin, jerrellbreslin@gmail.com
Joel Plasco, joel@joelplasco.com
Jonathan Schwartz, Esq., JS@JSJB.Law
Joseph Benjamin Rome, jrome@sequorlaw.com
Joseph Benjamin Rome, joseph.b.rome@gmail.com
Joseph Benjamin Rome, mrivera@sequorlaw.com
Leyza F. Blanco, lblanco@sequorlaw.com
Leyza F. Blanco, jdiaz@sequorlaw.com

Seth P Robert, srobert@brownrobert.com
Seth P Robert, cbrown@brownrobert.com


**Physically Served:**