IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| DVASH AVIATION HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 0:24-cv-60312-AHS |
| | ) |
| AMP LEASING LIMITED | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR SUMMARY JUDGMENT**

Comes now Dvash Aviation Holdings, LLC ("Dvash" or the "Plaintiff"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(a), and moves for summary judgment against AMP Leasing Limited ("AMP" or the "Defendant"), and in support thereof states as follows:

**I.      Introduction**

This is neither a novel case nor one where there has seemingly existed any genuine dispute of material fact from the outset. Dvash sold AMP an airplane engine, for which AMP was bound to tender (i) an initial payment; and (ii) several subsequent payments. The subsequent payments were made. The initial payment appears to have been paid to an unscrupulous third party who presented AMP with a phony invoice. The only question in this case is whether AMP, having fallen victim to a third party's illicit activities, is nonetheless bound to pay Dvash for the airplane engine. Applicable law makes clear that question is answered in the affirmative. AMP may well have an excellent cause of action against the malevolent actor, and AMP may be well advised to pursue indemnity from the malevolent actor. But AMP's falling victim to a third party's malfeasance does not excuse performance of a valid contractual obligation owed to Dvash.

1

This hornbook reality is bolstered by the fact the at-issue contract contains express wire instructions for where payment is to be sent and a clause prohibiting amendment or waiver sans a formal writing signed by the contracting parties themselves. These clauses are not happenstance; these clauses exist to protect Dvash against precisely what has happened in this case.

That AMP appears to have fallen victim to a predatory ruse is deeply unfortunate. And there is no suggestion that AMP did so knowingly or with any intent of harming Dvash. But the sole cause of action in this case is for breach of contract; this is not a tort case where intent is to be assessed, nor are punitive damages sought by Dvash. The sole issue before this Honorable Court is whether AMP breached its contract with Dvash when, in express contravention of that written agreement, AMP wired $408,016.00 to a company other than Dvash, using wire instructions other than the ones set forth in the contract. None of these facts are in dispute. As a result, governing law makes clear that AMP's actions constitute a breach of contract and Dvash is entitled to entry of summary judgment in its favor.

**II.     Standard**

Familiarly, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As recently observed by the United States Court of Appeals for the Eleventh Circuit:

> Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. . . . When factual conflicts arise, we "must credit the non-moving party's version." But summary judgment may be proper when the question before the district court is purely a question of law.

*Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024) (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244,

1252 (11th Cir. 2013); citing *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011)).

### III. Relevant Facts

Pursuant to Local Rule 56.1(a) and this Honorable Court's Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge, DE #27, a separate statement of material facts not subject to genuine dispute is being filed herewith.

### IV. Argument

#### a. Judgment of Liability is Appropriate

AMP had a contractual obligation to pay Dvash the sum of $408,016.00 by transmitting the funds in accord with very specific wire instructions set forth in the body of the agreement itself. AMP did not do so.  Instead, it paid the monies to a third party (via transmission to a bank account AMP knew to be the third party's). Whether AMP was duped, and whether AMP acted in good faith, are immaterial inquiries; AMP failed to adhere to the plain terms of the subject agreement and thereby breached the contract. While the situation no doubt elicits some sympathy, the law is clear and, on these undisputed facts, summary judgment is properly granted on Dvash's claim for breach of contract.

Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *People's Tr. Ins. Co. v. Valentin*, 305 So. 3d 324, 326-27 (Fla. 3d DCA 2020) (quoting *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094-95 (Fla. 3d DCA 2014) (citing *Schiffman v. Schiffman*, 47 So. 3d 925, 927 (Fla. 3d DCA 2010))). *See also Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352 (S.D. Fla. 2016) ("The elements of breach of contract are: '(1) a valid contract; (2) a material breach; and (3)

damages.'") (quoting *Sulkin v. All Fla. Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. 4th DCA 2006) (quoting *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003))).

Here, the Engine Lease-Purchase Agreement (the "Agreement") constitutes a valid contract. There is no dispute as to the existence of bilateral consideration (Dvash is providing an airplane engine; AMP is paying for the airplane engine), there is no allegation of unconscionability, there is no assertion of illegality, and none of the other standard defenses to the validity of a contract have been plead. *See* Answer, DE #17, at pp. 6-7 (setting forth the affirmative defenses asserted by AMP herein, none of which attack the validity of the Agreement).

As to the second element of a claim for breach of contract, the record is similarly plain that there has been a material breach by AMP. The Agreement very clearly states that the initial payment of $408,016.00 (the "Initial Payment") is to be made directly to Dvash, utilizing the wire instructions set forth in the Agreement. AMP did not send the payment to the indicated bank account using the indicated routing number; in fact, AMP did not even send the payment to Dvash. AMP, rather, sent the payment to Savanna Leasing, LLC ("SLL").

The Agreement is clear that any amendment to it must be in a writing signed by the parties. There actually is an amendment (concerning an immaterial alteration to the terms of the original contract), signed by the parties, that shows AMP and Dvash both knew how to comply with this provision.  AMP does not claim that any such amendment was made to change the wire instructions for payment or change that payment is to be made to Dvash directly. Instead, AMP relies on a bogus invoice, submitted by a third party. That misplaced reliance by AMP does not excuse AMP from the breach that occurred.

The final criterion is damages. This element of the breach claim invites similarly simple analysis: Dvash is without the $408,016.00 it was supposed to be paid under its Agreement with AMP. Those damages are a direct result of AMP's breach.

To be sure, AMP is free to pursue a claim against SLL for indemnity, contribution, fraud, or any number of other causes of action. But those claims are immaterial to this case. And the fact that AMP was apparently victimized by an unscrupulous third party does not shift the burden of that loss to Dvash. Rather, the only issue is whether AMP breached its contractual obligation to pay $408,016.00 to Dvash. There is no dispute, on this record, that AMP has done so.

### b. Judgment May be Entered in a Sum Certain, Reserving Only for Legal Fees and Costs

There are three components to a judgment to be entered in this case: (i) principal; (ii) interest; and (iii) attorneys' fees. As noted *passim*, the principal is plain from the face of the Agreement, being the sum of $408,016.00. And attorneys' fees and suit costs will be addressed in due course, pursuant to the rigors of Local Rule 7.3. So only the second factor—interest—remains to be liquidated.

As noted in the statement of material facts filed herewith, the Agreement provides for interest at the rate of 1.5% per month (which equals 18% per annum) for any late payments under the Agreement.  AMP has owed Dvash $408,016.00 since January 15, 2020.  Interest has continued to accrue at a monthly rate of $6,120.24. As of the filing of this motion, the accumulated interest owed by AMP to Dvash is $361,094.16.  That amount owed by AMP in interest will increase by $6,120.24 with each month until the entry of judgment.

## V. Conclusion

WHEREFORE, Dvash respectfully prays this Honorable Court (i) enter judgment in favor of Dvash, and against AMP, on Count I of the Complaint, with said judgment being in the principal

sum of $408,016.00; (ii) enter judgment in favor of Dvash, and against AMP, for interest at the contractual rate of 1.5% per month, commencing January 15, 2020; and (iii) afford such other and further relief as may be just and proper.

          Respectfully Submitted,

          THE VERSTANDIG LAW FIRM, LLC

          /s/ Maurice B. VerStandig
          Maurice B. VerStandig
          Bar No. 76723
          1452 W. Horizon Ridge Pkwy., #665
          Henderson, Nevada 89012
          Telephone: (301) 444-4600
          E-mail: mac@mbvesq.com
          *Counsel for Dvash Aviation Holdings, LLC*