DVASH – AMP
ELPA 721509 – R31DEC19



### AMP LEASING LIMITED ("LESSEE")

No. 1 Grants Row, Second Floor
Lower Mount Street
Dublin 2, Ireland
Email: anderson@ampleasing.com; fa@ampleasing.com; paulojunior@ampleasing.com

**And**

### DVASH AVIATION HOLDINGS, LLC (LESSOR)

**501 Hermleigh Road**

**Silver Spring, MD 20902**

djbutler501@gmail.com

**Attn:  David Butler**

**ENGINE LEASE-PURCHASE AGREEMENT**

**ONE (1) CFM56- 3C-1  ENGINE ESN 721509**



Initials: DVASH ____ AMP ____

AMP00004

DVASH – AMP
ELPA 721509 – R31DEC19

## ENGINE LEASE-PURCHASE AGREEMENT

**THIS ENGINE LEASE-PURCHASE AND PURCHASE AGREEMENT**, dated as of December 31, 2019 (the "Agreement"), by and between AMP Leasing Limited, with offices at No. 1 Grants Row, Second Floor Lower Mount Street Dublin 2, Ireland (the "Lessee") and DVASH AVIATION HOLDINGS, LLC, a (Maryland) company with an address of 501 Hermleigh Road Silver Spring, MD 20902 (the "Lessor").

### WITNESSETH

WHEREAS, Lessor is the owner of one (1) used CFM56-3C-1 aircraft Engine (as more fully described in this Agreement); and

WHEREAS, pursuant to the terms and conditions of this Agreement, Lessor desires to sell to Lessee, and Lessee desires to purchase from Lessor, the Engine; and

NOW, THEREFORE, in consideration of the mutual covenants and premises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## SECTION 1.    DEFINITIONS

The following terms, when capitalized, shall have the following meanings for all purposes of this Agreement, except where the context otherwise requires:

Affiliate means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under common control with such Person. For the purposes of this definition, "control," when used with respect to any specified Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

ANAC means, the Brazilian Civilian Aviation Authority.

Delivery Date means, with respect to the Engine, the date on which the Lessor transfers title to the Engine to Lessee and Lessee accepts delivery of the Engine from Lessor, in each case, pursuant to the terms of this Agreement upon satisfaction of the conditions precedent set forth in Section 5 hereof, or such other date as is mutually acceptable to Lessee and Lessor.

Delivery Location has the meaning ascribed to that term in Section 3.7.

Delivery Receipt means the Delivery Receipt substantially in the form attached hereto as Exhibit A.

Initials: DV ASH                    AMP

AMP00005

DVASH – AMP
ELPA 721509 – R31DEC19

Dollars or $ means United States Dollars.

EASA means: European Aviation Safety Agency

**Engine means**: one (1) serviceable and airworthy by EASA standards and regulations for Export to Brazil as current bilateral agreements in place, CFM International model CFM56-3C1 aircraft Engine bearing manufacturer's serial number 721509 in QEC configuration with Engine transportation stand and including all available Engine Documents as such are delivered by Lessor to Lessee on the Delivery Date and transported in accordance with the terms of this Agreement.

Engine will have 5 Celsius Degrees of EGT margin remaining in Category C of Thrust Power (23,500 lbs) per Thousand Cycle Remaining in the lowest LLP limit according to the Engine Life Limited Parts List herein attached as Exhibit J, with a 10% allowable different higher of below this EGT target. Vibrations will not be more than 1 unit, as set forth below:

**ESN:** 721509
**EGT Remaining at Category "C" of thrust power (23,500 lbs.):** 30 Celsius degrees (10% more or less)
**Vibration:** Less than 1 unit at any given interval of AMM Test No. 07
**Flight Cycles Remaining at First Limiter:** 6,947

Engine Documents means each and all of the available documents, certificates, status summaries, maintenance records, and other data pertaining to the Engine.

Event of Loss means, with respect to the Engine, any of the following events: (i) loss of the Engine, or of the use thereof, due to theft or disappearance, which loss is continuing as of the Delivery Date; (ii) destruction or damage to the Engine in whole or in part beyond repair; (iii) requisition or taking of title to, or use of, the Engine by a governmental authority under the power of eminent domain or otherwise or (iv) any event which constitutes a total loss or a constructive or compromised total loss under any policy of insurance covering such property.

**Inspection** means the process of Lessee's Engine and Records inspections, that is, the inspections to determine if the technical condition of the Engine are acceptable to Lessee, which Lessee shall determine in Lessee's sole discretion, including, but not limited to, a Record inspection, Engine test cell or an AMM (Aircraft Maintenance Manual Test No. 05) maximum power assurance "MPA Test 5" and borescope inspection.

Lien means any mortgage, pledge, lien, charge, encumbrance, lease, exercise of rights, security interest or claim of any kind whatsoever.

Operative Documents means this Agreement, the Delivery Receipt, applicable Exhibits duly-completed and the Warranty Bill of Lease-Purchase.

Parts means all appliances, parts, avionics, instruments, modules, appurtenances, accessories, furnishings and other equipment of whatever nature which are incorporated or installed in, or attached to, the Engine, that for avoidance of any doubt must be serviceable and in good

Initials: DVASH _____ AMP _____

DVASH – AMP
ELPA 721509 – R31DEC19

maintenance condition.

Person means and includes any individual person, corporation, limited company, limited liability company, partnership, business trust, firm, joint stock company, joint venture, trust, estate, unincorporated organization, association, sovereign state or government entity.

Purchase Price shall have the meaning set forth in Section 3.2.

Records means, in addition to the Engine Documents and the Operative Documents, all available historical records, logs, manuals, books and film/borescope video relating to the use, operation, performance and maintenance of the Engine.

Lease-Purchases Tax shall have the meaning set forth in Section 11 hereof.

Scheduled Delivery Date means the scheduled delivery date of the Engine set forth in Section 3.7.

Technical Acceptance Notice means written notice delivered to Lessor and evidencing satisfactory completion of the Inspection indicating Lessee's irrevocable acceptance of the Engine and the Engine Documents substantially in the form attached hereto as Exhibit B.

Warranty Bill of Lease-Purchase means the Warranty Bill of Lease-Purchase substantially in the form attached hereto as Exhibit C.

Statement by Ultimate Consignee and Purchaser means the End User Statement in the form attached in Exhibit E.

**SECTION 2.    CONSTRUCTION**

Except to the extent that the context requires otherwise, any reference in the Agreement to:

2.1     each of "Lessor", "Lessee" or any other person includes, without prejudice to the provisions of this Agreement restricting transfer or assignment, any successor and any assignee;

2.2     a statutory or legislative provision, shall be construed, at any particular time, as including a reference to any modification, extension or re-enactment thereof then in force and all instruments, orders and regulations then in force and made under or deriving validity from the relevant provision;

2.3     any other agreement or document shall be construed as a reference to such other agreement or document as the same may have been, or may from time to time be, amended, varied, novated or supplemented;

2.4     a "Section" or "Schedule" is a reference to a Section of, or Schedule to, the Agreement;

Initials: DVASH _____   AMP _____

AMP00007

DVASH – AMP
ELPA 721509 – R31DEC19

2.5     "law" includes common, customary or civil law and any constitution, decree, judgment, legislation, order, ordinance, regulation, statute, treaty or other legislative measure in any jurisdiction or any present or future directive, regulation, request or requirement or any judicial or administrative decision, ruling, judgment, order, (or interpretation or application of any of the same) whether or not having the force of law, but if not having the force of law, only if compliance with that law is in accordance with the general practice of persons to whom it is intended to apply; and

2.6     the Table of Contents and Section and Schedule headings are for convenience only and are to be ignored in construing this Agreement.

## SECTION 3.   LEASE-PURCHASE OF ENGINE; PURCHASE PRICE; PAYMENTS AND DELIVERY

3.1     **Lease-Purchase of Engine**

Subject to the terms of this Agreement, on the Delivery Date, Lessor hereby agrees to sell to Lessee, and Lessee hereby agrees to purchase and accept the Engine from Lessor.

3.2     **Purchase Price and Payment Terms**

The Purchase Price payable for in respect to the Engine accepted and delivered in accordance with the provisions of this Agreement shall be One Million Three Hundred Sixty Thousand US Dollars (**US$1,360,000.00**) (the "Purchase Price"), payable by wire transfer to Lessor's bank account provided in <u>Section 3.6</u>.  <u>Payments accepted for the Purchase Price shall be made</u> as follows:

   (i)   On closing, an initial payment of Four Hundred and Eight Thousand and Sixteen US Dollars (**US$408,016**), and

   (ii)  **Eighteen (18) equal** monthly installments of Fifty-Two Thousand Eight Hundred and Eighty-Eight US Dollars (**US$ 52,888.00**) each with the first instalment beginning five (5) business days from the Delivery Date (the "First Instalment Date") and thereafter, the date corresponding to the First Instalment Date in each subsequent month. Payment terms provided under this Agreement are subject to the Lessee's acceptance of the following terms and conditions:

a)  The Lessor shall retain title to the Engine sold until the Purchase Price has been paid in full by the Lessee. In the event of default by Lessee, Lessor shall have all the rights and remedies of a secured creditor under the applicable law. Lessee authorizes Lessor to prepare any such financing statement and other documents as Lessor may require in order to perfect Lessor's security interest.

Lessor shall enter into a Security Agreement attached as <u>Exhibit F</u> which shall be filed on the FAA and/or International Registry as applicable. Subject to the performance of all Lessee's obligation in this Agreement, Lessor shall file a Release of Security Interest Certificate in the form attached as <u>Exhibit I</u>.  At Lease Delivery Date, Lessee shall execute

Initials: DVASH _____   AMP _____

DVASH – AMP
ELPA 721509 – R31DEC19

and deliver to Lessor a completed Release of Security Interest Certificate which Lessor shall be held in escrow and release to Lessee at the end of term of this Agreement.

b)  The Parties agrees to (i) safely keep the Engine free from other liens and encumbrances and not to sell, lease or exchange the Engine without the other parties written consent; and (ii) maintain the Engine adequately insured, naming Lessor loss-payee.

c)  Lessee shall obtain from any owner, other than itself, of any aircraft to which the Engine is installed a (Release of Security Interest) in the form attached as <u>Exhibit I</u>.

d)  Reserved.

e)  The full balance of the Purchase Price shall become due immediately upon any default; and the Lessee shall pay all reasonable attorney's fees and costs of collection. Upon default, Lessor may reclaim the Engine, hold and dispose of same, and collect expenses, together with any deficiency due from Lessee. For avoidance of any doubt, if the Purchase Price is paid in full, from Lessee to Lessor after an event of Default Lessor Shall Transfer the Engine Title to Lessee according to the terms of this Agreement (item 3.4).

f)  If payment is overdue, Lessor may charge the Lessee interest at the rate of 1.5% per month from the date of the default until Lessor receives payment in full, or if such amount exceeds the amount permitted by applicable usury laws, the maximum lesser amount permitted by applicable usury laws. Lessor may apportion any part payments made by the Lessee against any outstanding principal or interest as it may decide.

g)  Any overhaul or repair of the Engine subject to reservation of title shall always be carried out by the Lessee on Lessor's behalf. If the Engine which is subject to reservation of title is overhauled or repair, Lessor shall acquire joint ownership in the proportion of the invoice value of the components or materials installed in the Engine.

3.3     **Deposit**

The Deposit will be paid in to Seller bank account after the Engine is Technically Accepted by Lessee, Lessee shall have the right to witness  an Aircraft Maintenance Manual Test 10, Test 5, Vibration Monitoring Test, , and witness process a full gas-path video Boroscope of the Engine the "Lessee Inspection", providing that no discrepancies where found during these tests / inspections, Within Three (3) days from the  Lessee Inspection t, Lessee shall wire transfer into Lessor's bank account provided, the sum of Four Hundred and Eight Thousand and Sixteen U.S Dollars (**US$408,016.00**), in the form of cash (the "Deposit").  The Deposit shall be held as surety of the Lessee's obligations hereunder.  Upon receipt of the Deposit, Lessor shall remove the Engine from the market until the time allowed Lessee to inspect the Engine. (Lessor acknowledges receipt of as Deposit to be held as surety of the Lessee's obligations hereunder.) Following acceptance of the Engine following Lessee's inspection, the Deposit shall be considered as advance monies against the Purchase Price, subject to the occurrence of the conditions precedent set forth herein. If the Lessee rejects the Engine following its inspection or this transaction fails to close by the Delivery

Initials: DVASH_____   AMP_____

AMP00009

DVASH – AMP
ELPA 721509 – R31DEC19

Date deadline due the non-occurrence of any of the Lessee's conditions precedent, Lessor shall within Five (5) business days return the Deposit to an account furnished by Lessee.

### 3.4   Transfer of Title

Subject to the provisions of this Agreement and expressly the satisfaction of the payments made in <u>Section 3.2</u>, Lessor shall transfer to Lessee, by delivery of the Warranty Bill of Lease-Purchase, all of Lessor's right, title and interest in and to the Engine, including legal, beneficial, good and marketable title to the Engine, free and clear of any and all Liens and encumbrances.

### 3.5   Security Interests

The Engine shall upon delivery on the Delivery Date, be free and clear of any Liens and encumbrances except that created by Lessor arising out of the payment terms in <u>Section 3.2</u>.

### 3.6   Payments

All payments to be made by Lessee to Lessor hereunder shall be made in United States Dollars by wire transfer of immediately available funds to:

| | |
|---|---|
| Bank Name: | Bank Of America, N.A. |
| Bank ABA Routing Number: | 026009593 |
| Swift Code – BIC code (if foreign bank) | BOFAUS3N |
| Account Holder Name: | Dvash Aviation Holdings, LLC |
| Account Number: | 226005960246 |

### 3.7   Delivery Date and Location

The Delivery Date shall occur on or before _____ _____, 20_____, unless mutually extended and agreed between the parties.

Delivery of the Engine shall be FOB Miami NDT facility in Miami, Florida, (the "Delivery Location") on the Delivery Date and shall include delivery of all Records, including but not limited to, the Engine Documents and Operative Documents, pertaining to the Engine.  Lessee shall bear the cost of transport from the delivery location.

## SECTION 4.  CONDITION OF THE ENGINE ON THE DELIVERY DATE

### 4.1   Condition of Engine

On the Delivery Date, the Engine will be delivered by Lessor to Lessee in "AS IS, WHERE IS" condition with all faults, but otherwise Serviceable and Airworthy according to EASA and ANAC standards, with all items raised by Lessee during QEC, BSI and MPA inspection and tests

Initials: DVASH _____   AMP _____

AMP00010

DVASH – AMP
ELPA 721509 – R31DEC19

rectified, if in any case is observed that any of the items raised by Lessee was not performed Lessor will have 10 business day to rectify it, in case Lessor fail to rectify the items Lessee shall have the right to rectify and discount the rectification cost for the next installment.

### 4.2    Lessee Inspection – Inspection Period

Lessee shall have the right to (a) physically inspect the Engine for any discrepancies, shortages or damage, (b) Witness a Full Gas-Path borescope of the Engine (c) review the technical records (d) witness the Engine test cell or maximum power assurance (according to the Manufacture Aircraft Maintenance Manual Test 10 and Test No.5, The MPA). Throughout the Inspection Period, Lessor shall reasonably assist Lessee as required and otherwise make the Engine and the technical records available to Lessee and/or its agents for inspection during normal business hours. All inspections costs shall be Lessee's responsibility, when applicable, and Lessee shall determine, in its sole opinion, the condition of the Engine.

On or before 5:00 PM (local time, Miami, Florida) on the last day of the Inspection, Lessee shall notify Lessor in writing as to whether it accepts or rejects the Engine. If Lessee notifies Lessor that it accepts the Engine through the completion and execution of a Technical Acceptance Notice, Lessee shall pay the Deposit and the same shall be considered as partial payment against the Purchase Price, subject to the conditions precedent to Lease Delivery Date. If Lessee notifies the Lessor that it rejects the Engine on or before the expiration of the Inspection Period, this Lease-Purchase and Purchase Agreement shall become null and void with neither party having any further obligations or liability to the other with regard to this transaction other than Lessor to return 100% any and all deposits made from Lessee to Lessor in a time no longer than five (05) business days. If Lessee fails to provide Lessor written notice prior to the expiration of the Inspection Period that it accept the Engine, it shall be deemed the Lessee shall have technically rejected the Engine.

### 4.3    Loss Before Delivery, Warranties and Waivers and Limitation

If before the Lease Delivery Date of the Engine an Event of Loss occurs or an event occurs that with the passage of time and/or a relevant determination could constitute an Event of Loss, then with effect from the date of such damage (i) this Agreement shall without further act terminate and (ii) the rights and obligations of the parties under this Agreement, other than the responsibility of Lessor to return 100% of any and all deposits, but not limited to the Deposit, made from Lessee to Lessor in period no longer than five (05) business days, and Lessor's and Lessee's respective rights and obligations shall without further act terminate, cease and be discharged.

To the extent allowable, Lessor hereby assigns to Lessee all available manufacturer and MRO warranties.

The Engine have not operated nor accumulated any hours or cycles since a repair, Lessor hereby assigns provides a workmanship warranty as provided for in Exhibit D.

Initials: DVASH _____    AMP _____

AMP00011

DVASH – AMP
ELPA 721509 – R31DEC19

EXCEPT AS OTHERWISE STATED HEREIN AND IN THE WARRANTY BILL OF LEASE-PURCHASE ONCE EXECUTED AND DELIVERED TO LESSEE, THE ENGINE, INCLUDING THE COMPONENT PARTS THEREOF, BEING SOLD BY LESSOR TO LESSEE WILL BE SOLD "AS IS, WHERE IS, WITH ALL FAULTS" AND LESSOR MAKES NO WARRANTIES, GUARANTEES OR REPRESENSATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, THAT SHALL SURVIVE DELIVERY AS TO THE ENGINE AND THE COMPONENT PARTS THEREOF, INCLUDING BUT NOT LIMITED TO THE CONDITION OR AIRWORTHINESS THEREOF; AND LESSEE HEREBY WAIVES ALL OTHER WARRANTIES, REMEDIES OR LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, AND LESSOR SHALL HAVE NO LIABILITY TO LESSEE WITH RESPECT TO FITNESS FOR ANY INTENDED PURPOSE AND MERCHANTABILITY, ANY OBLIGATION OF LESSOR ARISING FROM TORT OR STRICT LIABILITY FOR CLAIMS, OR FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR FOR ANY EXPENSE DIRECTLY OR INDIRECTLY ARISING FROM THIS TRANSACTION AND THE USE OF THE ENGINE OR ANY INABILITY TO USE THE ENGINE EITHER SEPARATELY OR IN COMBINATION WITH OTHER PARTS OR APPARATUS OR FROM ANY OTHER CAUSE.

## SECTION 5.   CONDITIONS PRECEDENT TO THE LEASE-PURCHASE OF THE ENGINE BY LESSOR

Lessor's obligation to sell and deliver to Lessee the Engine under the terms of this Agreement is subject to the satisfaction by Lessee, or waiver by Lessor, of the following conditions on or prior to the Engine Delivery Date:

(a)     The representations and warranties of Lessee contained herein shall be true and correct as of the Delivery Date;

(b)     Lessee shall have delivered to Lessor an executed Delivery Receipt for the Engine and all other Operative Documents to which it is a party;

(c)     Lessee shall not have breached any of its material obligations under the Operative Documents;

(d)     Lessee shall have delivered original (a) Security Agreement, (b) Owner's Acknowledgement and Release of Security Interest (as required in this Agreement).

(e)     No Event of Loss shall have occurred with respect to the Engine;

(f)     No change will have occurred after the date of this Agreement in any applicable law which would make it illegal for Lessor to perform any of its obligations under this Agreement (and any other documents to be entered into pursuant hereto); provided that if any such change has occurred the parties shall use all reasonable cooperative endeavors to restructure the transaction contemplated by such documents so as to avoid the aforementioned illegality;

and

Initials: DVASH _____   AMP _____

AMP00012

DVASH – AMP
ELPA 721509 – R31DEC19

(g)   Lessee shall have provided to Lessor the insurance certificate in <u>Section 12</u> of this Agreement.

## SECTION 6.  CONDITIONS PRECEDENT TO THE PURCHASE OF THE ENGINE BY LESSEE

Lessee's obligation to purchase the Engine from the Lessor under the terms of this Agreement is subject to the satisfaction by Lessor of, or waiver by the Lessee of, the following conditions on or prior to the Sale Delivery Date:

(a)   The representations and warranties of Lessor contained herein shall be true and correct as of the Delivery Date;

(b)   Lessor shall have delivered to Lessee two oiginals executed and notarized Warranty Bill of Lease-Purchase and all other Operative Documents to which it is a party, executed, notarized and Apostille under the Hague International Convention, *together with two originals of the executed and notarized Release of Security Interest*

(c)   Lessor shall not have breached any of its material obligations under the Operative Documents;

(d)   The Engine shall be in the Delivery Location;

(e)   No Event of Loss shall have occurred with respect to the Engine;

(f)   No change will have occurred after the date of this Agreement in any applicable law which would make it illegal for Lessee to perform any of its obligations under this Agreement (and any other documents to be entered into pursuant hereto); provided that if any such change has occurred the parties shall use all reasonable cooperative endeavors to restructure the transaction contemplated by such documents so as to avoid the aforementioned illegality;

(g)   Lessor shall have delivered all of the Records, including but not limited to the Operative Documents and the Engine Documents; and

(h)   The Engine shall be free and clear of all Liens and other encumbrances of any sort; and

(i)   No material adverse change in the condition of the Engine shall have occurred since the date of Lessee's technical inspection and acceptance of the Engine.

(j)   On or before the Sale Delivery Date Lessee shall have paid in full the Purchase Price to the account specified in <u>Section 3.6</u> hereof,

## SECTION 7.   REPRESENTATIONS, WARRANTIES, AND COVENANTS

### 7.1   Representations and Warranties of Lessor

Lessor hereby represents and warrants to Lessee that as of Lease Delivery Date:

(a)   Lessor is a company duly organized and validly existing under the laws of Maryland

Initials: DVASH_____   AMP_____

AMP00013

DVASH – AMP
ELPA 721509 – R31DEC19

and has the power and authority to execute, deliver and perform its obligations under this Agreement and the other Operative Documents to which it is a party;

(b)      the execution, delivery and performance by Lessor of this Agreement and the other Operative Documents to which it is a party (i) do not require the approval or consent of, the giving of notice to, the registration with, or the taking of any other action in respect of, any governmental authority, court, trustee or holder of any indebtedness or obligation on the part of Lessor other than those that have been obtained, made, done or taken, (ii) do not and will not contravene any law, rule, regulation, order, writ, injunction or decree applicable to Lessor or Lessor's organizational documents, and (ii) do not and will not result in any breach of or conflict with the terms and provisions of any agreement or instrument to which Lessor is a party or by which Lessor or its properties or assets may be bound or affected;

(c)      the execution, delivery and performance by Lessor of this Agreement and each of the other Operative Documents to which it is a signatory have been duly authorized by all necessary corporate action on the part of Lessor, which a copy of such authorization (s) will be sent to Lessee, and each of this Agreement and the other Operative Documents to which it is a signatory have been duly entered into and delivered by Lessor and constitute the legal, valid and binding obligations of Lessor, enforceable against Lessor in accordance with their terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditor's rights generally and subject to equitable principles of general application);

(d)      Lessor shall convey to Lessee good, marketable and legal title to the Engine, free and clear of all Liens and any and all other encumbrances; and

(e)      Lessor has not received notice of any Event of Loss with respect to the Engine.

(e)      Neither Lessor nor any of its affiliates is identified in the "Specially Designated Nationals List" (as defined on the website of The United States Office of Foreign Assets Control ("OFAC") and/or "Blocked Person List" (as defined on the website of OFAC) or other similar lists maintained by the OFAC, the United States Department of the Treasury or included in any Executive Orders and the purchase and Lease-Purchase of the Engine hereunder does not violate any of the foreign asset control regulations of OFAC or any enabling statue or Executive Order relating thereto, and such Lessor and its affiliates otherwise complies with all applicable U.S. laws and regulations in respect of the Engine.

(f)      Seller represents and warrant that it is the sole and beneficial owner of the engine

7.2      **Representations and Warranties of Lessee**

Lessee hereby represents and warrants to Lessor that the following statements at the date hereof are, and on the Delivery Date will be, true and accurate:

Initials: DVASH _____ AMP _____

AMP00014

DVASH – AMP
ELPA 721509   R31DEC19

(a)     Lessee is an entity duly organized and validly existing under the laws of Ireland and has the power and authority to execute, deliver and perform its obligations under this Agreement and the other Operative Documents to which it is a party, pending the ROF "Register of Financial Operations" subject to this Agreement required an Executed, Notarized and Apostilled original agreement in order to be filled and obtained;

(b)     the execution, delivery and performance by Lessee of this Agreement and the other Operative Documents to which it is a party (i) do not require the approval or consent of, the giving of notice to, the registration with, or the taking of any other action in respect of, any governmental authority, court, trustee or holder of any indebtedness or obligations on the part of Lessee other than those that have been obtained, made, done or taken, (ii) do not and will not contravene any law, rule, regulation, order, writ, injunction or decree applicable to Lessee or Lessee's organizational documents, and (iii) do not and will not result in any breach of or conflict with the terms and provisions of any agreement or instrument to which Lessee is a party or by which Lessee or its properties or assets may be bound or affected, pending the ROF "Register of Financial Operations" subject to this Agreement required an Executed, Notarized and Apostilled original agreement in order to be filled and obtained; and

(c)     the execution, delivery and performance by Lessee of this Agreement and each of the other Operative Documents to which it is a party have been duly authorized by all necessary limited liability action on the part of Lessee and each of this Agreement and the other Operative Documents to which it is a signatory have been duly entered into and delivered by Lessee and constitute the legal, valid and binding obligation of Lessee, enforceable against Lessee in accordance with their terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject to equitable principles of general application).

(d)     Lessee shall not transfer physical possession or convey title to any entity organized in or affiliated with any country or jurisdiction with sanctions levied against such country or jurisdiction by the United States, European Union or the United Nations unless permitted to do so under appropriate licenses and/or permits.

(e)     Neither Lessee nor any of its Affiliates or any of its respective agents acting or benefiting in any capacity in connection with the transactions contemplated by this Agreement or with respect to the Engine is (i) in violation of any Anti-Terrorism Law, (ii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law, or (iii) a Blocked Person.  Neither Purchaser nor any of its Affiliates or any of its agents acting or benefiting in any capacity in connection with the transactions contemplated by this Agreement or with respect to the Engine (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person in violation of any Anti-Terrorism Law, or (ii) deals in, or otherwise engages in any transaction relating to, any property or interest in property blocked pursuant to Executive Order No. 13224, any similar executive order or other Anti-Terrorism Law.

For purposes of the foregoing:

Initials: DVASH                    AMP

AMP00015

DVASH – AMP
ELPA 721509 – R31DEC19

"**Anti-Terrorism Laws**" means any of the Laws relating to terrorism or money laundering, including Executive Order No. 13224, the PATRIOT Act, the Bank Secrecy Act, the Money Laundering Control Act of 1986 (i.e., 18 U.S.C. §§ 1956 and 1957), the Laws administered by OFAC, and all Laws comprising or implementing these Laws.

"**Blocked Person**" means a Person (i) listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224; (ii) owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224; (iii) with which any Purchaser is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law; (iv) that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224; or (v) that is named a "specially designated national" or "blocked person" on the most current list published by OFAC or other similar list.

"**Executive Order No. 13224**" means that certain Executive Order No. 13224, effective September 24, 2001, as the same has been, or shall hereafter be, renewed, extended, amended or replaced.

"**OFAC**" means the U.S. Department of Treasury Office of Foreign Assets Control, or any successor thereto.

"**OFAC Lists**" means, collectively, the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to any of the rules and regulations of OFAC or pursuant to any applicable executive orders, including Executive Order No. 13224, as that list may be amended from time to time.

(f)     Lessee agrees not to export, re-export or use the products, technology, or products manufactured from the technology that are subject of this Agreement in violation with the export laws of the United States, unless permitted to do so under appropriate OFAC licenses and/or permits.

(g)     Certain export restrictions apply in the kind of goods subject of this agreement. Lessor requires the completion of an End User Statement in the form attached as <u>Exhibit E</u> prior to delivery of the Engine, for determination of ultimate consignee and final destination of products. Lessor may, in its sole discretion, deny the delivery of the Engine, based on Lessor's assessment of documentation or information provided by Lessee. If Lessee fail to comply with this requirement, this agreement, upon return of the Deposit to Lessee, shall be null and void with neither party having further obligations or liability to the other with regard to the transaction other than Lessors obligation to return 100% of any and all deposits made from Lessee to Lessor in a period no longer than five (05) business days.

## SECTION 8.  NO BROKERS

Both parties acknowledge that there are no brokerage commissions to be paid with respect

Initials: DVASH _____  AMP _____

AMP00013

DVASH – AMP
ELPA 721509 – R31DEC19

to the purchase and Lease-Purchase of the Engine, and each party agrees to indemnify and hold the other harmless from and against any and all claims, suits, damages, costs, expenses, including attorneys' fees, asserted by agents or other third parties for any commission or compensation based on the Lease-Purchase of the Engine, if such claim, suit, damage, costs or expense arises out of any action or alleged actions by the indemnifying party, its employees, officers or agents.

### 8.1 Sublease

Lessor hereby accept the Engine to be subleased by Sideral Linhas Aéreas Ltda. a Brazilian Certified 121 Airline.

## SECTION 9.   INDEMNIFICATION

### 9.1   Lessee Indemnity

Lessee hereby covenants and agrees to indemnify Lessor, Previous Owners  their  officers and Affiliates ("Lessor Indemnities"), in full on demand from and against any and all liabilities, losses, costs and expenses which may be imposed upon, incurred by or asserted against the Lessor Indemnities resulting directly or indirectly from (i) any breach of any representation or warranty or covenant made by Lessee herein or in any Operative Document, (ii) the willful misconduct or recklessness of  the Lessee or any of its agents, officers or representatives, or (iii) any claims (including, but not limited to, claims for cargo, baggage or other property damage, mail liability, death, bodily injury or other passenger liability, in each case) arising out of the Lease-Purchase, ownership, use, operation, maintenance, repair, management or control of the Engine or other part of the Engine after the Lease Delivery Date.

### 9.2   Lessor Indemnity

Lessor hereby covenants and agrees to indemnify Lessee, its officers and Affiliates ("Lessee Indemnities"), in full on demand from and against any and all liabilities, losses, costs and expenses which may be imposed upon, incurred by or asserted against Lessee Indemnities resulting directly or indirectly from (i) any breach of any representation or warranty or covenant made by Lessor herein or in any Operative Document; (ii) the misconduct or negligence of  the Lessor or any of its agents, officers or representatives; or (iii) any claims (including, but not limited to, claims for cargo, baggage or other property damage, mail liability, death, bodily injury or other passenger liability, in each case) arising out of the ownership, use, operation, maintenance, repair, management or control of the Engine or other part of the Engine before the Lease Delivery Date.

## SECTION 10.   FEES AND EXPENSES

Any costs and expenses by Lessee, including, but not limited to, those relating to Inspections (except as expressly set forth otherwise herein), document review and the fees and expenses of any filings to be made by Lessee or Lessee's counsel in connection with the negotiation, documentation and Lease Delivery Date of the transactions contemplated hereby, shall be for the account of Lessee.

Initials: DVASH ____   AMP ____

AMP00017

All fees, costs and expenses of Lessor and its counsel shall be for the account of Lessor.

Lessee and Lessor will each be responsible for its own costs and expenses incurred in connection herewith, including legal fees and expenses.

## SECTION 11.    TAXES

All transfer, Lease-Purchases and similar taxes arising from this transaction shall be for the account of Lessee, excluding any tax that is based on or measured by the gross or net income, gross receipts, capital, net worth, or accumulated earnings of Lessor.  Lessor shall cooperate with Lessee such that the structure and timing of the transfer can be arranged to avoid all Lease-Purchases, use, or other similar taxes.

## SECTION 12.    RISK OF LOSS OR DAMAGE; INSURANCE

Lessee shall secure appropriate policies of insurance written in English common to the aviation industry, from any insurer which is internationally recognized as responsible and in good standing and that specializes in aviation insurance.  Such insurance policies include the coverages, terms and provisions as set forth in Exhibit H in a form and scope as is generally available from the aviation insurance industry.

Prior to delivery of the Engine to Lessee, Lessee shall provide Lessor with certificates of insurance written in English from such Insurers or reinsurers reasonably satisfactory to Lessor indicating that all provisions of this Agreement are insured as a contractual assumption by Lessee and its insurers and/or reinsurers and showing that all insurance coverages required by this Agreement have been provided.  At least five (05) days prior to the renewal of any policy, Lessee shall provide Lessor with a certificate of insurance evidencing the renewal of such insurance.

Lessee shall not operate the Engine leased hereunder within or into any area which the aforesaid insurance does not then cover.

Lessor shall bear the risk of loss of, or damage to, the Engine prior to execution and delivery of the Delivery Receipt by Lessee, and Lessee shall bear the risk of loss of, or damage to, the Engine thereafter.

## SECTION 13.    MISCELLANEOUS

### 13.1    Excusable Delay

Lessor shall not be responsible for, nor be deemed to be in default or breach of this Agreement as a result of any delay in delivery of the Engine due to injunction against Lease-Purchase or any causes beyond its control and not occasioned by its negligence, including, but not limited to, acts of God or the public enemy, acts of government, civil wars, insurrection or riots,

Initials: DVASH _____  AMP _____

DVASH – AMP
ELPA 721509 – R31DEC19

fires, floods, explosions, earthquakes or other casualties, inability to obtain or delays in delivery of necessary Parts or material, strikes or labor troubles causing cessation, slowdown or interruption of work.

13.2   **Notice**

All notices required or permitted hereunder shall be in writing and sent by internationally recognized overnight courier service, addressed as follows:

| | |
|---|---|
| If to Lessee: | AMP Leasing Limited |
| | No. 1 Grants Row, Second Floor Lower Mount Street Dublin 2, Ireland |
| | Attn: Anderson Amorim |
| | Phone: + 353 1 642 4220 |
| | Email: anderson@ampleasing.com |
| | |
| If to Lessor: | Dvash Aviation Holdings, LLC |
| | 501 Hermleigh Road |
| | Silver Spring, MD 20902 |
| | Attn: David Butler |
| | Phone: +1 (202) 365-1314 |
| | E-mail: djbutler501@gmail.com |

or to such other address as either party advises the other from time to time through a notice given in accordance with the provisions of this Section 13.2. Any such notice shall be effective and shall be deemed to have been given when received at the address set forth above, or as such address is modified by advance notice given as set forth above to the other party.

13.3   **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which counterparts collectively shall constitute one and the same document. Signatures may be exchanged electronically (fax and/or e-mail), with original signatures to follow. Each party hereto agrees that it will be bound by the transmitted copy of its own signature and that it accepts the signature of the other party hereto.
Lessor agreed to send 02 executed, notarized and apostille originals of the Agreement to Lessee.

13.4   **Applicable Law; Jurisdiction**

The laws of the state of Florida shall govern the obligations of Lessor and Lessee under this Agreement. The parties hereto hereby agree that all actions or proceedings initiated by either of them and arising directly or indirectly out of this Agreement will be subject to the exclusive jurisdiction of the Florida State or Federal courts, which shall have sole jurisdiction there over even in the event of interlocutory proceedings, third-party proceedings or multiple defendants. Lessor and Lessee hereby expressly submit and consent in advance to such jurisdiction and venue in any

Initials: DVASH            AMP

AMP00019

DVASH – AMP
ELPA 721509 – R31DEC19

action or proceeding commenced by Lessor or Lessee in any of such courts.

13.5    **Limitation on Remedies**

EXCEPT AS PROVIDED HEREIN, NEITHER LESSOR NOR LESSEE MAY BE HELD LIABLE UNDER OR IN CONNECTION WITH THIS AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER CAUSE OR THEORY OF ACTION, FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFIT OR REVENUE.

13.6    **Captions and Paragraph Headings**

Captions and paragraph headings used herein are for convenience only and are not a part of this Agreement and shall not be used in construing it.

13.7    **Severability**

In the event that any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of the remaining provisions contained herein or of the same provisions in any other jurisdiction shall not, in any way, be affected or impaired thereby.

13.8    **Further Assurances**

Lessor and Lessee will promptly, at any time and from time to time, execute and deliver to each other such further instruments and documents and take such further action as they may each deem reasonably necessary to carry out the intent of the parties under this Agreement.

13.9    **Written Changes Only**

No term or provision of this Agreement may be changed or waived orally, but only by an instrument in writing signed by the parties hereto.

13.10   **Exclusiveness; Interpretation**

This Agreement is the complete and exclusive statement of the parties hereto with respect to the subject matter hereof and supersedes all prior oral and written communications, proposals, agreements, representations, statements, negotiations and undertakings, whether express or implied, between the parties hereto with respect to the subject matter hereof.

13.11   **Terms and Definitions**

The terms and definitions, as herein contained, shall include the singular and/or plural, masculine, feminine and/or neuter, successors and/or permitted assigns wherever the context so requires or admits.

13.12   **Assignment**

Initials: DVASH_____ AMP_____

AMP00020

DVASH – AMP
ELPA 721509 – R31DEC19

This Agreement and the rights and obligations created hereunder, shall not be assignable or delegable by either party without the prior express written consent of the other party, which consent shall not be unreasonably withheld, and in no event shall such assignment relieve either party of its obligations hereunder unless expressly agreed by the other party. This Agreement shall be binding upon the successors and permitted assigns of each party.

13.13   **Attorneys' Fees; Costs**

In the event a party is required to enforce any obligation of the other party hereunder or to bring, or defend against, any claim, demand, action or proceeding by reason of the other party's failure to perform any obligation imposed by this Agreement, the prevailing party shall be entitled to recover the amount of all reasonable attorney's fees of such counsel and all other expenses incurred in enforcing such obligation or in defending against such claim, demand, action or proceeding including trial and appellate courts.

13.14   **WAIVER OF JURY TRIAL**

EACH PARTY, KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY CONTEMPLATED TRANSACTION, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.

13.15   **Confidentiality**

This Agreement and the terms and conditions hereof contain commercially sensitive information and information proprietary to Lessor and Lessee.  Each party hereto will treat as confidential, and will not disclose to any third party, the existence of this Agreement or the information herein other than (a) to its directors, officers, employees and professional advisors, if any, advising in connection with the transactions contemplated by this Agreement or (b) as may be required by any governmental, judicial or regulatory authority having jurisdiction. Neither party hereto will make any public announcement regarding the transactions contemplated by this Agreement without the written consent of the other party.

13.16   **Recordation**

The Parties hereby agree to record this Lease with the Federal Aviation Administration or any appropriate registry and agrees to execute such documents, if any, as may be necessary for such recordation

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement through their respective duly authorized officers, all as of the day and year first above written.

Initials: DVASH _____   AMP _____

AMP00021

DVASH – AMP
ELPA 721509 – R31DEC19

**AMP LEASING LIMITED**

**DVASH AVIATION HOLDINGS, LLC**

By: _____

By: _____

Name:  Larry McDonagh

Name: David J Butler

Title:   Director

Title: President

My commission expires
11-22-2022

Initials: DVASH_____  AMP_____

AMP00022

DVASH – AMP
ELPA 721509 – R31DEC19

## EXHIBIT A

## FORM OF DELIVERY RECEIPT

IN ACCORDANCE WITH that certain Aircraft Engine Purchase Agreement, dated as of _____ _____, 20_____ (the "Purchase Agreement"), by and between DVASH AVIATION HOLDINGS, LLC ("Lessor") and AMP LEASING LIMITED. ("Lessee"), the undersigned hereby accepts delivery of the below-described items (the "Engine") on behalf of Lessee and agrees that the Engine has been unconditionally and irrevocably accepted by Lessor in accordance with and subject to the conditions set forth in the Purchase Agreement:

One (1) CFM International model CFM56-3C1 Engine bearing manufacturer's serial number 721509 with Full QEC configuration and with Engine transportation stand and including all available logbooks, records and manuals relating thereto in Lessor's possession).

EXECUTED by duly authorized representative of Lessor at ___:_____ local time this _____ day of _____ _____ 20_____.

AMP LEASING LIMITED.

By: _____

Name: Anderson Amorim

Title: Financial Vice-President

Initials: DVASH_____ AMP_____

AMP00023

DVASH – AMP
ELPA 721509

## EXHIBIT B

## FORM OF TECHNICAL ACCEPTANCE NOTICE

THE UNDERSIGNED hereby acknowledges that on the _____ day of _____, 20_____ DVASH AVIATION HOLDINGS, LLC ("Lessor") did present to AMP LEASING LIMITED. ("Lessee") for inspection and acceptance as to delivery condition set forth in the Lease-Purchase agreement (as defined below) one (1) CFM International model CFM56-3C1 Engine bearing manufacturer's serial number 721509 with Full QEC configuration and with Engine transportation stand (Base PN:_____Base SN:_____ Cradle PN:_____ Cradle SN:_____) and all available logbooks, records and manuals relating thereto in Lessor's possession (the "Engine") in accordance with the Aircraft Engine Purchase Agreement between Dvash Aviation Holdings, LLC, and AMP Leasing Limited dated as of December 26, 2019 (the "Purchase Agreement").

The undersigned hereby further acknowledges that it did conduct an inspection of the aforementioned Engine as contemplated in the Purchase Agreement and does hereby acknowledge that such Engine are irrevocably technically acceptable to it and are in the condition contemplated for delivery to it under the Purchase Agreement. Lessor agrees that it will not reject the Engine when tendered for delivery on the grounds that they do not comply with the delivery conditions set forth in the Purchase Agreement.

Nothing in this Technical Acceptance shall act as a waiver of any rights with respect to that certain Limited Warranty provided to Lessee and to Sideral Aereas Linhas Ltda., by Miami NDT, Inc., for the Engine, and it is understood that any warranties or representations made herein are made solely to Lessor and solely for the purposes of the Purchase Agreement.

EXECUTED THIS _____ DAY OF _____, 20_____.

AMP LEASING LIMITED

By: _____

Name: Anderson Amorim

Title: Financial Vice-President

AMP00024

DVASH – AMP
ELPA 721509

**EXHIBIT C**

**FORM OF WARRANTY BILL OF LEASE-PURCHASE**

KNOW ALL MEN BY THESE PRESENTS:

THAT for and in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, DVASH AVIATION HOLDINGS, LLC, a (Maryland) company with an address of 501 Hermleigh Road Silver Spring, MD 20902 (the "Lessor"),, does, on the date hereof, grant, convey, transfer, bargain, sell, deliver and set over to AMP LEASING LIMITED. (the "**Lessee**"), its successors and assigns, all of Lessor's right, title and interest in and to one (1) CFM International model CFM56-3C1 Engine bearing manufacturer's **serial number 721509** with Full QEC and with Engine stand (Base PN:_____Base SN:_____Cradle PN:_____Cradle SN:_____) and all available logbooks, records and manuals relating thereto in Lessor's possession (the "Engine"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in that certain Engine Lease-Purchase and Purchase Agreement dated as of _____ _____, 20_____, as from time to time may have been amended, modified or supplemented (the "**Agreement**").

TO HAVE AND TO HOLD said Engine unto Lessee, its successors and assigns, for its and their own use forever.

THAT Lessor hereby warrants to Lessee, its successors and assigns, that it is the holder of good and marketable title to the Engine and has the right to sell the same as aforesaid and that this Warranty Bill of Lease-Purchase conveys to Lessee on the date hereof, good and marketable title to the Engine, free and clear of all liens, encumbrances, security interests, leases, mortgages and rights of others of any kind.

THAT Lessor will warrant and defend the title warranted hereby forever against all claims and demands whatsoever.

EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN THE AGREEMENT THE ENGINE IS SOLD TO LESSEE IN "AS IS, WHERE IS" CONDITION.

This Warranty Bill of Lease-Purchase shall be governed by the laws of the State of Florida, without giving effect to its conflicts-of-laws principles.

IN WITNESS WHEREOF, Lessor has caused this instrument to be executed by its duly authorized officers or managers this _____ day of _____, 20,

DVASH AVIATION HOLDINGS, LLC
By: _____

Name: _____

AMP00025

DVASH – AMP
ELPA 721509

Title: _____

AMP00026

DVASH – AMP
ELPA 721509

# EXHIBIT D

## RESERVED

AMP00027

DVASH – AMP
ELPA 721509

## EXHIBIT E

## EXPORT COMPLIANCE: END-USE / END-USER CERTIFICATION

It is Dvash AVIATION HOLDINGS, LLC ("Lessor") policy to verify the end-use and end-user in all Lease-Purchases of all Products to ensure compliance with U.S. export control laws and regulations.  As the Products you are purchasing or leasing are or may be for export outside the United States please certify the following:

1) AMP LEASING LIMITED. (the "Customer") understands that all Products provided by Lessor are subject to export controls under the U.S. Export Administration Regulations, 15 C.F.R. Parts 730-774, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130, and other export control laws and regulations of the United States.

2) Customer understands that U.S.-origin commodities, equipment, parts, software, or technology; foreign-manufactured products incorporating U.S.-origin products or technology; as well as commodities, software, or technology (collectively referred to as "Products") of any origin physically located in the U.S. are subject to U.S. export laws, and the export, re-export or retransfer of these Products may require authorization from the U.S. Government.  Customer certifies that it will obtain any necessary export authorizations from the U.S. Government prior to exporting the Products or transferring the Products to a foreign person (regardless of where the foreign person is located).

3) Customer warrants that the Products will <u>not</u> be used on a military aircraft without proper authorization from the U.S. Government, or for operations permitting the aircraft to fly to any restricted country or for transfer (or transfer of possession or operational control) to any restricted country without prior authorization from the U.S. Government.  Customer further certifies that the Products will <u>not</u> be sold, re-exported or deployed for use by a military unit in China, without prior authorization from the U.S. Government.

4) Customer will not sell, transfer, export or re-export any of these Products for use in activities which involve the development, production, use or stockpiling of nuclear, chemical or biological weapons or missiles, nor use these Products in any facilities which are engaged in activities related to such weapons, without proper authorization from the U.S. Government.

5) Customer will not sell, export or re-export any Products acquired directly or indirectly from Lessor to CUBA, IRAN, NORTH KOREA, SUDAN, or SYRIA, or to any other country to which shipment is prohibited by U.S. export laws or regulations, nor to individuals or companies listed on the U.S. Commerce Department's Table of Denial Orders, Entity List, Denied Persons List, Unverified List, the U.S. Treasury Department's List of Specially Designed National (SDNs), and the U.S. Department of State's Debarred Parties List without prior authorization from the U.S Government.

6) Customer will abide by applicable U.S. export laws and regulations with respect to any Products purchased from Lessor and will obtain any necessary licenses or prior approvals required by the U.S. Government prior to export or re-export of U.S. supplied Products.  If the Products are defense articles to be exported to a foreign end-user, Customer certifies that it is

AMP00028

DVASH – AMP
ELPA 721509

registered with the Directorate of Defense Trade Controls and will obtain all proper licenses under the ITAR.

7) Customer acknowledges that Lessor is subject to U.S. export laws and regulations and agrees not to act in any transaction with Lessor in any manner that would place Lessor in violation of U.S. export laws or regulations.

8) Customer agrees that the requirements in Number 1-7 above shall survive the completion, early termination, cancellation or expiration of any purchase order, agreement or contract with Lessor. Should Customer become aware of any violation or suspected violation of the terms of this certification, Customer shall notify Lessor's Executive team of such violation and will fully cooperate with Lessor's investigation of the same.

9) End-Use:

| (a) | Name and address of [1]End-User (if the Customer is not the End-User): | Sideral Linhas Aéreas Ltda. Rodovia do Contorno Leste, 9119, Costeira São José dos Pinhais-PR, CEP: 83015-162 |
|---|---|---|
| (b) | Intended end-use of Product | ____ Used by Customer and will not be re-exported. __X___ Sublease by Customer to the End-User listed above. _____ Held as inventory by Customer for future Lease-Purchase or lease to an unidentified End-User _____ Other (please describe) |
| (c) | Description of Customer's & End-User's business: | AMP is a trading Leasing Company End user in an Airline (Under RBAC 121/ BRAZIL) |
| (d) | Customer's and the End-User's place of incorporation: | Customer: Ireland End User: Brazil |
| (e) | Number of years Customer has done business with End-User (if the Customer | 1 year |

---

[1] The "End-User" is the person or entity that will ultimately use the product or service being purchased. If the Customer is purchasing the product for resale to an identified person/entity then Customer must the name of the End-User in Section 9(a) above.



AMP00029

DVASH – AMP
ELPA 721509

|     | is not the End-User): | |
| --- | --- | --- |
| (f) | Does the Customer have a license from the U.S. government authorizing the export of the Products to CUBA, IRAN, NORTH KOREA, SUDAN, or SYRIA? | No: _____ Customer will not export the Products to any of these countries. <br><br> Yes: _____ <br><br> License Expiration Date: _____ <br><br> License No.: _____ <br><br> Authorized County: _____ |

10) Description of Product being purchased

| Make: | CFM International |
| --- | --- |
| Model or Part Number: | CFM56-3C-1 |
| Serial Number: | 721509 |

11).      Customer certifies that all of the facts contained in this statement are true and correct to the best of its knowledge, and it does not know of any additional facts which are inconsistent with the above statement. Customer agrees that confirmation of the above will not expire unless expressly rescinded in writing to Lessor.


_____      _____
Signature (Company Official)      Date

Declan Fitzpatrick
Print Name:      _____
     Company Name

Director    _____
Title      Address



AMP00030

DVASH – AMP
ELPA 721509

## EXHIBIT F

## AIRCRAFT ENGINE SECURITY AGREEMENT

**THIS AIRCRAFT ENGINE SECURITY AGREEMENT** (this "Agreement") is entered into as of _____ _____, 20_____, among AMP LEASING LIMITED., a Brazilian company with an address No. 1 Grants Row, Second Floor Lower Mount Street Dublin 2, Ireland, (the "Lessee") and DVASH AVIATION HOLDINGS, LLC a Maryland company with an address of 501 Hermleigh Road, Silver Spring, MD 20902 (the Lessor").

### RECITALS:

**WHEREAS:** Pursuant to that certain Engine Lease-Purchase and Purchase Agreement dated as of _____ _____ ,20_____ , (the " Purchase Agreement") Lessee and Lessor has agree to make financial accommodations upon the terms and subject to the conditions set forth therein; and

**WHEREAS:** This Agreement is required by the terms of the Purchase Agreement.

**NOW, THEREFORE**, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### 1. Secured Property Description

To secure the payment on the following described  property, however created, arising or evidenced, whether direct or indirect, absolute or contingent, not existing or hereafter acquired, and future advances, and all cost and expenses incurred by the Lessor to obtain, preserve, perfect and enforce the security interest grander therein and to maintain, preserve and collect the property subject to the security interest, Lessee grants to Lessor a continuing first priority security interest in and lien upon the following described property (the "Secured Property") whether now owned or hereafter acquired, which consists of:

A.      One (1) CFM56-3C1 aircraft Engine bearing manufacturer's serial number 721509 with      QEC      and      Engine      transportation      stand      serial      number _____ ; and

B.      all right, title and interest of Lessee in and to any purchase agreement, rental agreement, or other agreement( s) respecting the Secured Property, included but not limited to, Lessee's right to receive, either directly or indirectly, from any party or person, any rents or other payments due under such agreement (s); spare parts identified, equipment and accessories attached thereto or used in connection therewith, any and all substitutions, replacements and proceeds of any of the foregoing items, including but  not limited to proceeds of insurance covering the Secured Property discounting the amounts already paid


AMP00031

DVASH – AMP
ELPA 721509

from Lessee to Lessor.

2. **Security for Engine Lease-Purchase and Purchase Agreement**

Lessee is granting this continuing first priority security interest to secure performance of the Purchase Agreement for the acquisition of the Secured Property. The Purchase Agreement obligates Lessee to pay Lessor the amount of One Million Three Hundred and Sixty Thousand US Dollars (**US$1,360,000.00**), payable as an initial payment of Four Hundred and Eight Thousand and Sixteen US Dollars (**US$408,016**), and Eighteen (18) equal monthly installments of Fifty-Two Thousand Eight Hundred and Eighty-Eight U.S. Dollars (**US$52,888.00**) each beginning (5) Business day" by "with the first instalment beginning five (5) business days from the Delivery Date (the "First Instalment Date") and thereafter, the date corresponding to the First Instalment Date in each subsequent month        . The last payment of US$ 52,888.00 is due on the _____day of_____, 20_____.

3. **Financing Statement and Other Documents**

Concurrently with the execution of this Security Agreement, Lessor will have the right to file a UCC Financing Statement and register Lessor's interest with the FAA and or International Registry. Lessee will sign any other documents that Lessor reasonably requests to protect Lessor's security interest in the Secured Property.

4. **Use and Care of the Secured Property**

Until the Purchase Price is fully paid, Lessee agrees to:

A.   Operate, maintain and repair the Secured Property and retain actual control and possession thereof in accordance with the following provisions:

(i)   The Lessee shall have complete use of the Secured Property until an event of default, and the Lessee shall use, operate, maintain and store the property (if applicable), or any part hereof, properly, carefully and in compliance with all applicable statutes, ordinance, regulations, policies of insurance and manufacturer's recommendations, including the recommendations or requirements set forth in manufacturer's operating and maintenance manuals. If explicitly permitted by Lessor, Lessee may install Secured Property on an aircraft not completely-owned by Lessee if Lessee provides to Lessor a waiver of interest from any party (such as lender or lessor) subject to the form and language of such waiver of interest.

(ii)   The Lessee shall be responsible for and pay for all expenses of owning and operating the Secured Property, including but not limited to, storage, fuel,

AMP00032

DVASH – AMP
ELPA 721509

lubricants, service, inspections, overhauls, replacements, maintenance and repairs, all in compliance with the manufacturer's operating and maintenance manuals and with the Federal Aviation Administration rules and regulations. The Lessee shall properly maintain all records pertaining to the maintenance and operation of the Secured Property.

B.    Lessee shall not sell, transfer, or encumber the Secured Property, or any interest therein, or offer to do so or remove or attempt to remove the Secured Property from Dvash Aviation Holdings, LLC (except in the normal operation of Lessee's business) unless Lessor consents in writing.

C.    Pay all taxes on the purchase or related to the Secured Property as taxes become due.

D.    The Lessee will, at its own expense, keep the Secured Property insured at all the times against loss, damage, theft and such other casualties at the Agreed Value, less the amount accurately paid from Lessee to Lessor in such date,  under such forms of policies, upon such terms, for such periods and which such companies or underwriters as the Lessor may ( but has no obligation to) approve. Such insurance policies shall name the Lessor as additional insured on hull and liability coverage and as loss payees on all-risk coverage. Losses or refunds in all cases shall be payable to the Lessor and the Lessee as their interests may appear.  In no event shall the amount of such physical damage insurance be less than the greater of the full replacement value or the fair market value of the Secured Property. All policies of insurance shall provide for at least thirty (30) days' prior written consent notice of cancellation to Lessee, and shall contain a breach of warranty endorsement in favor of Lessor.  The Lessor may obtain such insurance if the Lessee do not provide such insurance. The Lessee shall furnish to the Lessor proof satisfactory to the Lessee of compliance with the provisions on this Section. The Lessor, and its assigns, are each hereby irrevocably appointed attorneys-in fact for the Lessee coupled with an interest in the Secured Property to endorse for any Lessee checks, drafts or other instruments whatsoever payable to such Lessee as proceeds or refunds for any such insurance and to make claims for loss and to sign proofs of loss against any insurance company and to receive all payments. The Lessee will pay any deductible portion of such insurance. All risk of loss, damage, destruction or confiscation shall at all times be with the Lessee.   Lessee shall deliver to Lessor a copy of the insurance policy insuring the Secured Property and provide to Lessor annual proof that Lessee has paid the premiums on the policy.

E.    During the existence of an event of default, the Lessor may require the Lessee to assemble the Secured Property and make it available to the Lessor at a place to be designated by the Lessor which is reasonable convenient to both parties.

AMP00033

DVASH – AMP
ELPA 721509

    F.     Lessee shall allow Lessor to inspect the Secured Property at any reasonable time as long as the inspection does not disrupt Lessee operations

## 5. Lessee's Default

Time is of the essence of this security agreement. It is hereby agreed that, if default be made in the payment of any part of the Purchase Price secured hereby, or if any breach be made of any obligation or promise of the Lessee herein contained or secured hereby, or if any or all of the Secured Property covered hereby be hereafter sold, leased, transferred, mortgaged or otherwise encumbered without the written consent of the Lessor may deem itself insecure, then the whole Purchase Price unpaid upon said Agreement, with the interest accrued thereon, or secured thereby, and the interest thereon shall immediately become due and payable at the option of Lessor in which case will transfer the title of the Engine to Lessee, free and clear or any and all Liens or encumbrances

It is hereby specially agreed that the Buyer shall pay all reasonable attorney's fees and costs of collection; and upon default, provided that the Buyer has not paid the Purchase Price in full to the Seller, Seller may reclaim the Engine, hold and dispose of same, and collect expenses, together with any deficiency due from Buyer. For avoidance of any doubt, if the Buyer has paid the Purchase Price in full to the Seller, after an event of default, Seller shall immediately transfer the title to the Engine to Buyer according to the terms of the Purchase Agreement (section 3.4).

If payment is overdue, Lessor may charge the Lessee interest at the rate of 1.5% per month from the date of the default until Lessor receives payment in full, or if such amount exceeds the amount permitted by applicable usury laws, the maximum lesser amount permitted by applicable usury laws. Lessor may apportion any part payments made by the Lessee against any outstanding principal or interest as it may decide.

Lessor hereby grant a 07 business days remedy period to rectify any default under the agreement, which will count from the notice given from Lessor's notifying Lessee of the existence of the Default.

## 6. Lessor's Rights

If Lessee is in default, Lessor may exercise the remedies legally available to Lessor. Lessor may, for example:

    A.     Remove the Secured Property from the place where it is located.

    B.     Require Lessee to assemble the Secured Property and make it available to Lessor at a place designated by Lessor that is reasonably convenient to Lessee and Lessor.

AMP00034

DVASH – AMP
ELPA 721509

C.      Sell or lease the Secured Property, or otherwise dispose of it.

For avoidance of any doubt, the measures stated in this clause can only take place after the expiration of the remedy period stated on the Agreement and provided that the Buyer has not paid the Purchase Price in full to the Seller and Clause 5 of this Security Agreement.

7.      **Notice to Lessee**

Lessor will give Lessee at least five (05) business days' notice of when and where the Secured Property will be sold, leased, or otherwise disposed of. Any notice required here or by statute will be deemed given to Lessee if sent by first-class mail to Lessee at the following address: AMP Leasing Limited, No.1 Grant's Row, Lower Mount Street, Dublin 2, D02 HX96 Ireland - DX132, Dublin, Ireland.

8.      **Entire Agreement**

This is the entire agreement between the parties concerning Lessor's security interest in the Secured Property. It replaces and supersedes any and all oral agreements between the parties, as well as any prior writings on that subject.

9.      **Successors and Assignees**

This agreement binds and benefits the heirs, successors, and assignees of the parties.

10.     **Governing Law**

This agreement will be governed by and construed in accordance with the laws of the State of Florida.

11.     **Modification**

No term or provision of this Agreement may be changed or waived orally, but only by an instrument in writing signed by both parties hereto.

12.     **Waiver**



AMP00035

DVASH – AMP
ELPA 721509

If either party waives any provision of this agreement at any time, that waiver will only be effective for the specific instance and purpose for which that waiver was given. If either party fails to exercise or delays exercising any of its rights or remedies under this agreement, that party retains the right to enforce that term or provision at a later time.

13.     **Enforceability**

The unenforceability of any provision hereof shall not affect the validity of any other provision hereof.

14.     **No Fiduciary Relationship**

The granting of any power of attorney in this Agreement shall not create any fiduciary obligations or relationship on the part of the Lessor for the benefit of the Lessee.

15. **Warranties**

Lessor herein authorizes Lessee to claim any warranty related to the Engine in behalf of Lessor, workshop an any other warranty the Engine may have. All and any warranty related to the Engine will automatically by assigned and by Lessor to Lessee at the Engine title transfer.

16.     **Rights Cumulative**.

The rights, powers and remedies of Lessor hereunder shall be in addition to all rights, powers and remedies given by statute, rule of law or any other document and are cumulative. The exercise of any one or more of the rights, powers and remedies provided herein shall not be construed as a waiver of any of the other rights, powers and remedies of Lender. Furthermore, regardless of whether or not the Uniform Commercial Code is in effect in the jurisdiction where such rights, powers and remedies are asserted, Lessor shall have the rights, powers and remedies of a secured party under the Uniform Commercial Code, as amended from time to time.

17. **Notices.**

All notices and other communications hereunder shall be in writing and shall be mailed by first-class mail, postage prepaid, sent via recognized overnight courier service, or sent by telecopier, addressed if to the Lender, as the following addresses:

If to Lessee:     AMP LEASING LIMITED
                  No.1 Grant's Row, Lower Mount Street, 



AMP00036

DVASH – AMP
ELPA 721509

Dublin 2, D02 HX96 Ireland - DX132
Attn: Anderson Amorim
Phone: +353 1 642 4220
Fax: Not Applicable
Email: anderson@ampleasing.com

If to Lessor:  DVASH AVIATION HOLDINGS, LLC
501 Hermleigh Road
Silver Spring, MD 20902
Email: djbutler501@gmail.com
Attn:  David Butler

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement in duplicate originals by their duly authorized officers or representatives.

AMP LEASING LIMITED                     DVASH AVIATION HOLDINGS, LLC

Signed: _____      Signed: _____

Name:                                Name: _____

Title: Director                      Title: _____

Date: _____        Date: _____



AMP00037

DVASH – AMP
ELPA 721509

# EXHIBIT G

## ACKNOWLEDGMENT OF LESSOR'S RIGHTS

*A SEPARATE ONE TO BE SIGNED BY <u>EACH</u> OWNER, LESSOR, MORTGAGEE AND SECURED PARTY OF*

*THE AIRFRAME ON WHICH THE ENGINE IS INSTALLED*

Reference is made to the Aircraft Engine Lease-Purchase Agreement dated as of _____ _____, 20_____ (as amended, the "Lease-Purchase Agreement") by and between DVASH AVIATION HOLDINGS, LLC ("LESSOR") and AMP LEASING LIMITED. ("LESSEE") pursuant to which the LESSOR has agreed to sell to LESSEE a jet aircraft Engine manufactured by CFM International, model CFM56-3C1 bearing serial number 721509 (with Full QEC and with Engine transportation stand (the "Engine") on the terms and conditions set forth in the Lease-Purchase Agreement.

The undersigned is the _____ [list those applicable to you: owner/lessor/mortgagee/secured party] of the airframe (the "Airframe") on which the Engine is installed. The undersigned understands that under the laws of the country where the airframe is registered ("Registration Country"), the laws of the country where the LESSEE is certificated ("Certification Country"), and laws of other countries, (i) the mortgagee or owner of an airframe may be deemed to have certain rights to deal with any Engine installed on such airframe in order to enforce its rights as mortgagee or owner of such airframe, (ii) liens and encumbrances on an airframe may attach and extend to Engine installed on such airframe, and/or (iii) Engine installed on an airframe may not be subject to any liens and encumbrances other than those to which such airframe is subject. The undersigned understands that the Engine is owned by the LESSOR until all installment payments are made under the Lease-Purchase Agreement.

The undersigned hereby agrees and acknowledges that, notwithstanding any provision to the contrary of the laws of the Registration Country, the Certification Country or any other law or any agreement including, without limitation, any conditional Lease-Purchases, security or lease agreement with the LESSEE, the installation of the Engine on the Airframe shall not affect title to or liens on the Engine. The undersigned agrees that the LESSOR is and shall continue to be the owner of the Engine and the Engine is and shall continue to be subject to the liens of the LESSOR's creditors, if any. The undersigned covenants and agrees that it shall not assert, and hereby waives, any claim against the LESSOR or the LESSOR's creditors in respect of any right, title or interest in the Engine which is inconsistent with the agreements in this instrument. The undersigned covenants and agrees that it shall not seek to enforce any rights against the Engine under any agreement solely as a result of the Engine being installed on the Airframe.

This Acknowledgment is entered into by the undersigned for the benefit of the LESSOR.

This Acknowledgment shall in all respects be governed by, and construed in accordance with, the laws of the State of Florida, USA, including all matters of construction,

AMP00038

DVASH – AMP
ELPA 721509

validity and performance.

This Acknowledgment is duly signed and dated as of _____ _____, 20____.

_____,

By:_____

Name: _____

Title: _____

AS THE _____
        [OWNER, LESSOR, MORTGAGEE, OR
            SECURED PARTY]

AMP00039

DVASH – AMP
ELPA 721509

## EXHIBIT H

### INSURANCE REQUIREMENTS

1.   All Risk Ground and Flight Hull Insurance, Hull War Risk and Allied Perils Insurance including but not limited to Hijack and Confiscation, Aircraft All Risks Spare Parts, including transit exposures (collectively "Hull Insurance") which shall be endorsed to include the following provisions.

   (a)   <u>Engine Valuation</u>. The **agreed insured value** of the Engine shall be One Million Three-Hundred and Sixty Thousand U.S. Dollars (**$1,360,000.00**) ("Agreed Value"). In the event the Engine is lost or destroyed while attached to an airframe, the Agreed Value of the Engine will be paid to Lessor without regard and in addition to the agreed value applicable to the hull insurance for such aircraft.

   (b)   <u>Deductibles</u>. Such Hull Insurance shall provide for no deductible in the event of total loss, constructive total loss or arranged total loss occurring while the Engine is attached to an airframe. In the event of loss or damage which is less than a total loss, constructive total loss or arranged total loss, it is agreed that the deductible for Hull Insurance shall not exceed $100,000.00 for each loss. It is further agreed that no deductible shall apply to a loss covered by the Hull War Risks Insurance. While insured under the Spare Parts Insurance, the deductible shall not exceed $10,000 for each loss.

   (c)   <u>Loss Payee</u>. Proceeds of Hull Insurance shall be payable to Lessor or as directed by Lessor for claims for loss of or damage to the Engine. All payments by Insurers for loss of or damage to the Engine shall be made in United States Dollars in the United States.

   (d)   <u>Missing And Unreported</u>. The Engine shall be considered a total loss if it is missing and unreported for sixty (60) days.

   (e)   <u>Additional Insured.</u> The Hull Insurance policies shall be endorsed to include Lessor and any other party designated in writing by Lessor as an additional insured. Each additional insured shall have the right but not the obligation to present a claim for loss of or damage to the Engine in the event Lessee fails to do so.

   (f)   <u>50/50 Clause</u>. a 50/50 settlement clause in accordance with aviation insurance industry practices.

2.   Comprehensive Aviation Liability Insurance including War Risk and Allied Perils, Cargo, Passenger Baggage and Mail Liability, including but not limited to coverage for bodily injury, passenger bodily injury, property damage, personal injury and losses, claims and damages against which Lessee has agreed to indemnify Lessor as set out in the indemnity in Article 9 of this Agreement (collectively "Liability Insurance") which shall be endorsed to include the following provisions.

AMP00040

DVASH   AMP
ELPA 721509

(a)   <u>Additional Insured</u>.  The Indemnitees and any other party designated by Lessor in writing shall be additional insureds.

(b)   <u>Minimum Limits of Liability</u>. A combined single limit of not less than (or a combination of primary and excess coverage, with no limitation as to any one claim, except as respects any applicable aggregate limitation for products and completed operations liability insurance or aggregated sublimits with respect to non-passenger personal injury liability coverage as is customarily available from the worldwide aviation insurance marketplace) of $300,000,000.00 (Three Hundred Million U.S. Dollars) on any one aircraft and any one occurrence, covering bodily injury, including passenger bodily injury, property damage, personal injury. Notwithstanding the foregoing, to the extent available, War Risk and Allied Perils Liability Coverage shall be provided at a sub-limit of not less than Fifty Million U.S. Dollars ($50,000,000.00) in the annual aggregate for third-party, bodily injury and property damage (as part of and not in addition to the combined single limit specified above).

(c)   <u>Primary Insurance</u>.  Such insurance shall be primary insurance without the right of contribution from any other insurance available to any Indemnitee.

(d)   <u>Cross Liability</u>.  A clause shall be included providing that in the event claims are filed or suit is brought alleging bodily injury or property damage for which any other insured is or may be liable, then the policy shall cover such insured or insureds against whom claim is filed, or suit is brought, in the same manner as though separate coverage has been issued to each insured under the policy.

(e)   <u>Severability Of Interest</u>.  A clause shall be included providing that the inclusion of more than one corporation, person, organization, firm or entity as insured under the policy shall not in any way affect the rights of any such corporation, person, organization, firm or entity either as respects any claim, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured.  The policy shall protect each corporation, person, organization, firm, or entity in the same manner as though a separate policy had been issued to each; but nothing therein shall operate to increase the insurance carrier's liability beyond the amount or amounts for which the insurance carrier would have been liable if only one person or interest had been named as insured.

3.   With respect to all Hull and Liability Insurances referred to in Sections 1 and 2 above.

(a)   <u>Breach Of Warranty</u>.  Such policies of insurance shall be endorsed to include a breach of warranty provision for the benefit of the Indemnitees.

(b)   <u>Waiver Of Subrogation</u>. Such policies shall be endorsed to waive such insurer's rights of subrogation, set-off, counterclaim or any other deduction, whether by attachment or otherwise against any Indemnitee.

AMP00041

(c)     Cut-through Clause.  To the extent required by Lessor in writing, if any portion of the Hull Insurance of this Lease is reinsured, then such reinsurance will (i) be on the same terms as the original insurance and will include the provisions of Hull Insurance, (ii) provide that notwithstanding any bankruptcy, insolvency, liquidation, dissolution or similar proceedings of or affecting the reinsured that the reinsurers' liability will be to make such payments as would have fallen due under the relevant policy of reinsurance if the reinsured had (immediately before such bankruptcy, insolvency, liquidation, dissolution or similar proceedings) discharged its obligations in full under the original insurance policies in respect of which the then relevant policy of reinsurance has been effected; and (iii) contain a "cut-through" clause in the following form (or otherwise satisfactory to Lessor);

> "the Reinsurers and the Reinsured hereby mutually agree that in the event of any claim arising under the reinsurances in respect of a total loss or other claim where as provided by the Aircraft Engine Purchase Agreement dated _____ _____, 20____ and made between Dvash Aviation Holdings, LLC and AMP Leasing Limited such claim is to be paid to the person named as sole loss payee under the primary insurance, the reinsurers will in lieu of payment to the Reinsured, its successors in interest and assigns pay to the person named as sole loss payee under the primary insurance effected by the Reinsured that portion of any loss due for which the Reinsurers would otherwise be liable to pay the Reinsured (subject to proof of loss), it being understood and agreed that any such payment by the Reinsurers will (to the extent of such payment) fully discharge and release the reinsurers from any and all further liability in connection therewith."

(d)     Date Recognition Exclusion Clause. If such insurance is subject to a Date Change Recognition Exclusion Clause, the Lessee shall secure from its insurers all available Date Change Recognition Exclusion Limited Write-Back Provision Endorsement(s) which shall be in such form and scope as is generally available from the aviation insurance industry.

(e)     Notice. All insurance policies shall contain a thirty (30) day (seven (7) days or such lesser period as is customarily available in the case of any war risk and allied perils insurance) notice to Lessor or to any other party designated by Lessor in writing of cancellation or adverse material change in coverage, subject to a ten (10) day notice of cancellation due to the non-payment of premiums. All insurance is to remain in force during the term of this Lease.

(f)     Premiums.  The Indemnitees shall not have any responsibility for premiums due under any such insurance.

(g)     Territory.   Such insurance shall include a coverage territory which provides insurance required herein for the aircraft or it operation at any time or anywhere it

AMP00042

DVASH – AMP
ELPA 721509

may be located or flying.

4.    Lessee shall secure insurance coverage for liability for any workers' compensation laws or any other national or local laws pertaining to liability to employees due to the operation and/or existence of the Engine and the aircraft to which it may be attached. Such policy shall be endorsed to waive any rights of subrogation such insurer may have against any Indemnitee and shall contain a thirty (30) day notice to Lessor of cancellation or adverse material change in coverage, subject to a ten (10) day notice for cancellation due to the non-payment of premiums. All insurance is to remain in force during the term of the Agreement.

AMP00043

DVASH – AMP
ELPA 721509

## EXHIBIT I

## RELEASE OF SECURITY INTEREST

The undersigned hereby certify and acknowledge that the Aircraft Engine Security Agreement on the following collateral is hereby terminated as of _____, 20__, and that the collateral is no longer subject to the terms and provisions thereof.

| | |
|---|---|
| Engine Manufacturer: | CFMI |
| Model: | CFM56-3C1 |
| Serial Number: | 721509 |
| Date of Aircraft Engine Security Agreement: | _____ |
| Date of FAA filing: | _____ |
| Date of FAA Recordation: | _____ |
| FAA Document number assigned: | _____ |

DVASH AVIATION HOLDINGS, LLC
("LESSOR")

By: _____

Name: _____

Title: _____

AMP LEASING LIMITED
("LESSEE")

By: _____

Name:

Title: Director


AMP00044

**EXHIBIT J**
**Engine Life Limited Parts Sheet "LLP Sheet"**



8050 NW 90th Street.
Medley, FL 33166
(P) 305-477-7771 | (F) 305-477-7779
FAA Approved Repair Station FT9R645X

### CFM56 Life Limited Parts Status

Work Order: J70082    Engine Model: CFM56-3C1    Engine S/N: 721509    Engine Total Time: 58,265.22    Engine Total Cycles: 40,266

| Disk Stage | Part Number | Serial Number | Life Used Hours | Life Used Cycles | Cycles Used by Category A | B | C | Category A (Cycles) Limit | Remaining | Category B (Cycles) Limit | Remaining | Category C (Cycles) Limit | Remaining | Removed From ESN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FAN MODULE** | | | | | | | | | | | | | | |
| Fan Disk | 335-014-511-0 | BB950970 | 17,230.00 | 12,395 | 3,064 | 6,025 | 3,306 | 30,000 | 14,743 | 24,900 | 12,236 | 20,190 | 9,878 | ORIGINAL |
| Fan Booster Spool | 335-009-306-0 | DD937144 | 11,547.00 | 9,243 | 0 | 9,243 | 0 | 30,000 | 20,757 | 30,000 | 20,757 | 30,000 | 20,757 | 720725 |
| Fan Shaft | 335-006-414-0 | DE172533 | 11,547.00 | 9,243 | 0 | 9,243 | 0 | 30,000 | 20,757 | 30,000 | 20,757 | 30,000 | 20,757 | 720725 |
| **HPC MODULE** | | | | | | | | | | | | | | |
| HPC Rotor Shaft | 1275M37P02 | GWN0EK9F | 13,924.00 | 9,110 | 3,486 | 2,318 | 3,306 | 20,000 | 10,890 | 20,000 | 10,890 | 20,000 | 10,890 | ORIGINAL |
| HPC 1to2 Spool | 1588M66G02 | GWN0FWRK | 11,547.00 | 9,243 | 0 | 9,243 | 0 | 20,000 | 10,757 | 20,000 | 10,757 | 20,000 | 10,757 | 720725 |
| HPC 3 Stage Disk | 1590M59P01 | XAEH4929 | 13,924.00 | 9,110 | 3,486 | 2,318 | 3,306 | 20,000 | 10,890 | 20,000 | 10,890 | 20,000 | 10,890 | ORIGINAL |
| HPC 4to9 Spool | 1588M89G03 | GWN0HC77 | 11,547.00 | 9,243 | 0 | 9,243 | 0 | 20,000 | 10,757 | 15,800 | 8,498 | 20,000 | 10,757 | 720725 |
| HPC CDP Air Seal | 1319M25P02 | GFF5DHDM | 13,924.00 | 9,110 | 3,486 | 2,318 | 3,306 | 20,000 | 9,530 | 18,000 | 8,577 | 15,000 | 7,148 | ORIGINAL |
| **HPT MODULE** | | | | | | | | | | | | | | |
| HPT Front Shaft | 1385M90P04 | XAEJ3836 | 11,547.00 | 9,243 | 0 | 9,243 | 0 | 20,000 | 9,314 | 17,300 | 8,057 | 17,000 | 7,917 | 720725 |
| HPT Front Air Seal | 1282M72P05 | XAEI4988 | 13,924.00 | 9,110 | 3,486 | 2,318 | 3,306 | 20,000 | 9,201 | 15,800 | 7,269 | 15,100 | 6,947 | ORIGINAL |
| HPT 1 Stage Disk | 1475M29P03 | XAELA087 | 8,199.00 | 5,686 | 62 | 2,318 | 3,306 | 20,000 | 13,449 | 18,500 | 12,440 | 16,600 | 11,163 | ORIGINAL |
| HPT Rear Shaft | 1864M91P02 | TMT1AR17 | 8,199.00 | 5,686 | 62 | 2,318 | 3,306 | 20,000 | 14,314 | 20,000 | 14,314 | 20,000 | 14,314 | ORIGINAL |
| **LPT MODULE** | | | | | | | | | | | | | | |
| LPT 1 Stage Disk | 301-331-126-0 | BC324958 | 19,100.00 | 14,436 | 0 | 11,291 | 3,145 | 25,000 | 10,564 | 25,000 | 10,564 | 25,000 | 10,564 | 725685 |
| LPT 2 Stage Disk | 301-331-227-0 | BC825219 | 9,024.10 | 8,899 | 7,450 | 1,449 | 0 | 25,000 | 16,101 | 25,000 | 16,101 | 25,000 | 16,101 | 723228 |
| LPT 3 Stage Disk | 301-331-322-0 | BA760655 | 17,809.10 | 17,684 | 9,325 | 8,359 | 0 | 25,000 | 7,316 | 25,000 | 7,316 | 25,000 | 7,316 | 723228 |
| LPT 4 Stage Disk | 301-331-429-0 | BC516109 | 16,401.00 | 9,957 | 4,333 | 2,318 | 3,306 | 25,000 | 15,043 | 25,000 | 15,043 | 25,000 | 15,043 | ORIGINAL |
| LPT Conical Support | 305-056-116-0 | BA220563 | 19,505.10 | 17,684 | 9,325 | 8,359 | 0 | 25,000 | 7,316 | 25,000 | 7,316 | 25,000 | 7,316 | 723228 |
| LPT Shaft | 301-330-067-0 | LA077743 | 18,970.90 | 12,088 | 567 | 11,521 | 0 | 30,000 | 17,912 | 30,000 | 17,912 | 30,000 | 17,912 | 723228 |
| LPT Stub Shaft | 301-330-656-0 | DA608417 | 19,505.10 | 17,684 | 9,325 | 8,359 | 0 | 25,000 | 7,316 | 25,000 | 7,316 | 25,000 | 7,316 | 723228 |

FIRST CYCLE LIMITER: HPC CDP SEAL

AUTHORIZED SIGNATURE: _____

Martin Cordero, Chief Inspector

November 16, 2017

Date

AMP000045

DVASH - AMP
ELPA 721509

MICHAEL MORRISSEY
Dip Not L
NOTARY PUBLIC
COMMISSIONED FOR LIFE

TELEPHONE: 01-2986388
MOBILE: 086 827 8030
E: INFO@MORRISSEYSOLS.IE
W. WWW.MORRISSEYSOLS.IE

"LARCHFILLO"
DUNDRUM ROAD DUBLIN 14,
IRELAND
D14 X056

## APOSTILLE
### (Convention de La Haye du 5 octobre 1961)

| 1. Country:<br>Pays/País: | IRELAND |
|---|---|
| **This public document**<br>Le présent acte public / El presente documento público | |
| 2. has been signed by<br>a été signé par<br>ha sido firmado por | Michael Morrisey |
| 3. acting in the capacity of<br>agissant en qualité de<br>quien actúa en calidad de | Notary Public |
| 4. bears the seal / stamp of<br>est revêtu du sceau / timbre de<br>y está revestido del sello / timbre de | Notary Public |

**Certified**
Attesté / Certificado

| 5. at<br>à / en | Dublin | 6. the<br>le / el día | 24/02/2020 |
|---|---|---|---|
| 7. by<br>par / por | Department of Foreign Affairs and Trade | | |
| 8. No<br>sous no<br>bajo el número | 9018482020 | | |
| 9. Seal / stamp:<br>Sceau / timbre:<br>Sello / timbre: | 10. Signature:<br>Signature:<br>Firma: | *Aisling Moore* | |

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued. To verify the issuance of this Apostille, see www.asilentications.dfat.ie

3 4581

---

❀❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀

MICHAEL MORRISSEY - NOTARY PUBLIC
Comissioned for Life
### NOTARIAL CERTIFICATE

I, Michael Morrisey, Notary Public hereby certify
that the within document(s) was signed in my presence
by the signatory(s) _Laurent McHugh_

On the 24 day of _February_ 2020
Whose identity(s) has been established to
my satisfaction.
IN FAITH AND TESTIMONY, I have hereunto
subscribed my name and affixed my
Official Seal of office.

_Michael Morrissey_

Michael Morrissey
Mmorrissey1@gmail.com
Tel: 00 353 868278030
For the county and the City of Dublin and
Counties Kildare, Wicklow and Meath, IRELAND

Please note That
AMP Leasing Limited is
a company having its
Registered office at
1 Grands Row, Dublin 2
with Company No- 592830.
_Michael Morrissey_

MICHAEL MORRISSEY
Dip Not L
NOTARY PUBLIC
COMMISSIONED FOR LIFE

TELEPHONE: 01-2986388
MOBILE: 086 827 8030
E: INFO@MORRISSEYSOLS.IE
W. WWW.MORRISSEYSOLS.IE

"LARCHFILLO"
DUNDRUM ROAD DUBLIN 14,
IRELAND
D14 X056

AMP00046